IN WITNESS WHEREOF, the Purchaser and the Seller have caused their names to be signed by their respective officers thereunto duly authorized as of the date first above written.

ASSET BACKED SECURITIES
CORPORATION

By:_____
   Name:
   Title:

LONG BEACH MORTGAGE COMPANY

By:_____
   Name: JEFFERY A SORENSON
   Title: VICE PRESIDENT



# EXHIBIT 1

Pool Characteristics of the Home Equity Loans as delivered on the Closing Date:

All percentages set forth herein are based upon the aggregate unpaid principal balances of the Home Equity Loans as of the Cut-off Date.

(1)    No Home Equity Loan in Loan Group 1 and Loan Group 2 had a Loan-to-Value Ratio at origination in excess of 90% and 90% respectively;

(2)    No more than 1.655% and 0.669% respectively, of the Home Equity Loans in Loan Group 1 and Loan Group 2 (measured by the Cut-off Date Principal Balance), are related to Mortgaged Properties located in any one zip code area;

(3)    Each Mortgaged Property in Loan Group 1 and Loan Group 2 is located in one of the states listed in the chart entitled "Geographic Distribution by Mortgaged Properties" in the Prospectus Supplement;

(4)    No more than approximately 3.360% and 5.373% respectively, of the Home Equity Loans in Loan Group 1 and Loan Group 2 (measured by the Cut-off Date Principal Balance) are secured by condominium units and all condominium Home Equity Loans have been originated on a form acceptable to Fannie Mae or Freddie Mac with such riders as have been acceptable to Fannie Mae or Freddie Mac, as the case may be;

(5)    No more than 4.883% and 3.449% respectively, of the Home Equity Loans in Loan Group 1 and Loan Group 2 (measured by the Cut-off Date Principal Balance) are secured by two- to four-family dwellings. No more than 0.083% and 0.110% respectively, of the Home Equity Loans in Loan Group 1 and Loan Group 2 (measured by the Cut-off Date Principal Balance) are secured by Town Houses. No more than 5.603% and 5.624% respectively, of the Home Equity Loans in Loan Group 1 and Loan Group 2 (measured by the Cut-off Date Principal Balance) are secured by Manufactured Housing. No more than 4.680% and 9.130% respectively, of the Home Equity Loans in Loan Group 1 and Loan Group 2 (measured by the Cut-off Date Principal Balance) are secured by dwelling units in PUDs;

(6)    No Home Equity Loan in Loan Group 1 and Loan Group 2 had a principal balance in excess of $600,000 and $1,000,000 respectively, at origination;

(7)    Each Home Equity Loan in Loan Group 1 and Loan Group 2 was originated on or after April 1999 and October 1997 respectively, and each

Adjustable Rate Home Equity Loan has a next Adjustment Date no later than October 2005 and August 2005 respectively;

(8)     On the basis of representations made by the Mortgagors in their loan applications, no more than 8.806% and 3.951% respectively, of the Home Equity Loans in Loan Group 1 and Loan Group 2 are secured by investor properties and at least 90.629% and 95.434% respectively of the Home Equity Loans in Loan Group 1 and Loan Group 2 are owner-occupied Mortgaged Properties (in each case measured by the Cut-off Date Principal Balance);

(9)     The Mortgage Rates borne by the Home Equity Loans in Loan Group 1 and Loan Group 2 as of the Cut-off Date ranged from 6.94% and 7.99% respectively, per annum to 15.45% and 14.90% respectively, per annum and the weighted average Mortgage Interest Rate as of the Cut-off Date was 10.703% and 10.676% respectively, per annum;

(10)    As of the Cut-off Date, approximately 22.195% and 18.37% respectively of the Home Equity Loans in Loan Group 1 and Loan Group 2 were rate/term refinancings, approximately 49.935% and 33.928% respectively of the Home Equity Loans were cash out refinancings and approximately 27.870% and 47.701% respectively of the Home Equity Loans in Loan Group 1 and Loan Group 2 were made to purchase the related Mortgaged Properties;

(11)    The Gross Margins on the Home Equity Loans in Loan Group 1 and Loan Group 2 range from 5.25% to 7.5% and 4.00% to 9.063% respectively and the weighted average Gross Margin as of the Cut-off Date was approximately 6.2205% and 6.320% respectively;

(12)    No less than 82.371% and 80.187% respectively of the Home Equity Loans in Loan Group 1 and Loan Group 2 (measured by the Cut-off Date Principal Balance) were originated under the Seller under the Seller's "Full Documentation" home equity loan program, no more than 3.016% and 4.645% respectively, of the Home Equity Loans in Loan Group 1 and Loan Group 2 (measured by the Cut-off Date Principal Balance) were originated by the Seller under the Seller's "Limited Doc" Home Equity Loan programs and no more than 13.530% and 15.168% respectively of the Home Equity Loans in Loan Group 1 and Loan Group 2 (measured by the Cut-off Date Principal Balance) were originated by the Seller under the Seller's "Stated Income Documentation" home equity loan program; and

(13)    With respect to the Seller's underwriting risk categories, 54.832%, 16.105%, 12.488%, 13.404% and 3.171% of the Home Equity Loans in Loan Group 1 constitute A- Risk Home Equity Loans, B Risk Home

Equity Loans, B- Risk Home Equity Loans, C Risk Home Equity Loans and D Risk Home Equity Loans, respectively, in each case measured by the Cut-off Date Principal Balance and with respect to the Seller's underwriting risk categories 50.212%, 14.893%, 15.781%, 15.299 and 3.815% of Home Equity Loan in Loan Group 2 constitute A-1 Risk Home Equity Loans, B Risk Home Equity Loans B- Risk Home Equity Loans, C Risk Home Equity Loans and D Risk Home Equity Loans, respectively, in each case measured by the Cut-off Date Principal Balance.

# EXHIBIT 2

## [FORM OF OFFICER'S CERTIFICATE OF THE SELLER]

## LONG BEACH MORTGAGE COMPANY

### Officer's Certificate

I, _____, hereby certify that I am the duly appointed _____ of Long Beach Mortgage Company, a Delaware corporation (the "Company"), and further certify, on behalf of the Company, as follows:

       1.     Attached hereto as Exhibit A is a true and correct copy of the Certificate of Incorporation and By-laws of the Company, both of which are in full force and effect on the date hereof. There has been no amendment or other document filed affecting the Certificate of Incorporation of the Company since April 29, 1997, and no such amendment has been authorized. There has been no amendment or other document filed affecting the By-laws of the Company since April 12, 1996, and no such amendment has been authorized. Attached hereto as Exhibit B is a certificate of good standing, dated August 1, 2000 issued by the State of Delaware with respect to the Company. No event has occurred since the date thereof that has affected the good standing of the Company under the laws of the State of Delaware.

       2.     There are no actions, suits or proceedings pending or, to the best of my knowledge, threatened against or affecting the Company that, if adversely determined, individually or in the aggregate, would adversely affect the Company's ability to perform its obligations under (ii) the Mortgage Loan Purchase Agreement, dated August 1, 2000 (the "Mortgage Loan Purchase Agreement"), between the Company and Asset Backed Securities Corporation (the "Depositor") or (ii) the Pooling and Servicing Agreement, dated as of August ___, 2000 (the "Pooling and Servicing Agreement"; together with the Mortgage Loan Purchase Agreement, (the "Agreements"), among the Depositor, the Company as master servicer and Bankers Trust Company as trustee. No proceedings looking toward merger, consolidation or liquidation, dissolution or bankruptcy of the Company are pending or contemplated.

       3.     Each person who, as an officer or representative of the Company signed the Agreements and any other document delivered prior hereto or on the date hereof in connection with the transactions described in the Agreements was, at the respective times of such signing and delivery, and is now, duly elected or appointed, qualified and acting as such officer or representative, and the signatures of such persons appearing on such documents are their genuine signatures.

       4.     All of the representations and warranties of the Company under the Agreements are true and correct in all material respects as of the Closing Date and no

event has occurred which, with notice or the passage of time or both, would constitute a default under the Agreements.

5.      The information set forth in the Home Equity Loan Schedule attached as an exhibit to each of the Agreements is true and correct in all material respects.

6.      The information regarding the Company, its financial condition and its home equity loan delinquency, foreclosure and loss experience, underwriting standards, lending activities and loan sales, production and servicing and collection practices, as set forth in the Prospectus Supplement, is accurate in all material respects.

7.      Capitalized terms used but not defined herein shall have the meanings assigned in the Pooling and Servicing Agreement.

IN WITNESS WHEREOF, I have hereunto signed my name and affixed the seal of the Company.

Dated: August ___, 2000

(Seal)                              LONG BEACH MORTGAGE COMPANY


                                    By:_____
                                        Name:
                                        Title:


I, _____, [Assistant] Secretary of _____
_____, hereby certify that _____ is the
duly elected, qualified and acting _____ of
_____ and that the signature appearing above is his genuine
signature.

IN WITNESS WHEREOF, I have hereunto signed my name.

Dated: August ___, 2000

                                    LONG BEACH MORTGAGE COMPANY


                                    By:_____
                                        Name:
                                        Title:

# EXHIBIT 3

## [FORM OF OFFICER'S CERTIFICATE OF THE SELLER]

Asset Backed Securities Corporation Long Beach Home Equity Loan Trust 2000-LB1
Home Equity Loan Pass-Through Certificates
Series 2000-LB1

### Certificate of
### Long Beach Mortgage Company

Reference is made to the sale of home equity loans (the "Home Equity Loans") by Long Beach Mortgage Company (the "Seller") to Asset Backed Securities Corporation (the "Depositor") pursuant to a Mortgage Loan Purchase Agreement, dated August 1, 2000 (the "Purchase Agreement") and the simultaneous issuance of Home Equity Loan Pass-Through Certificates, Series 2000-LB1, (the "Certificates"), pursuant to a Pooling and Servicing Agreement, dated as of August 1, 2000 (the "Pooling and Servicing Agreement") among the Depositor as depositor, the Seller as master servicer (in such capacity, the "Master Servicer") and Bankers Trust Company as trustee (the "Trustee"). In consideration for its purchase of the Home Equity Loans, the Depositor will (i) pay to or upon the order of the Seller in immediately available funds an amount equal to the net sale proceeds of the Offered Certificates, and (ii) deliver to Long Beach Asset Holdings Corp. upon the order of the Seller the Class X Certificates, the Class P Certificates, the Class B-IO Certificates and the Residual Certificates. The Depositor will sell the Offered Certificates to Credit Suisse First Boston Corporation, as representative of the underwriters (the "Representative") for offer and sale pursuant to the terms of an Underwriting Agreement, dated August 28, 2000 (the "Underwriting Agreement"), between the Depositor and the Representative. The Purchase Agreement, the Pooling and Servicing Agreement and the Underwriting Agreement together, are hereinafter collectively referred to as the "Agreements." Capitalized terms not otherwise defined herein shall have the meanings set forth in the Agreements.

1.  The transfer of the Home Equity Loans by the undersigned pursuant to the Agreements was intended to be a sale and to be reported as such under generally accepted accounting principles ("GAAP") and for federal income tax purposes.

2.  In connection with the sale of the Home Equity Loans by the undersigned pursuant to the Agreements, the undersigned (i) was solvent at all relevant times prior thereto and was not rendered insolvent thereby, (ii) after giving effect thereto, is able to pay its debts as they mature, (iii) was not left with unreasonably small capital for the business in which engaged and proposed to be engaged, (iv) had and has no intention of commencing any bankruptcy, insolvency or similar proceeding, (v) did not and does not have any intent to hinder, delay or defraud any of the undersigned's creditors, (vi) had a valid business reason therefor and (vii) received new value and consideration constituting reasonably equivalent value and fair consideration.

1011959v10

3.    The undersigned has not acquired, and will not acquire at any time, any direct or indirect ownership or other economic interest in, or other right or obligation with respect to, any Home Equity Loan or Certificate, except as described in the Agreements.

IN WITNESS WHEREOF, the undersigned has executed this Certificate as of August __, 2000.

LONG BEACH MORTGAGE COMPANY

By:_____
    Name:
    Title:

**EXHIBIT 4**

[FORM OF OPINION OF COUNSEL TO THE SELLER]

1011959v10

Two World Trade Center
New York, New York 10048
(212) 912-7400

Facsimile: (212) 912-7751
www.thacherproffitt.com

| | | |
|---|---|---|
| Kofi Appenteng | Joseph Philip Forte | Lauris G. L. Rall |
| Oliver J. Armas | Ellen M. Goodwin | Richard A. Schaberg |
| Robert C. Azarow | Christopher F. Graham | Malcolm R. Schade |
| Tricia K. Bonner | Joseph G. Grasso | James R. Shorter, Jr. |
| W. Edward Bright | Joel B. Harris | Robert Sidorsky |
| Robert F. Brodegaard | Richard M. Horowitz | Donald F. Simone |
| Diana G. Browne | Thomas J. Infurna | Mark I. Sokolow |
| Jean E. Burke | Jeffrey H. Koppele | Jeffrey Stern |
| Albert J. Cardinali | Stephen S. Kudenholdt | Francis X. Sulger |
| V. Gerard Comizio | Thomas M. Leslie | Thomas N. Talley |
| A. James Cotins | Robert E. McCarthy | Paul D. Tvetenstrand |
| Mason L. Crocker | Douglas J. McClintock | Stephen T. Whelan |
| Kathryn Cruze | Michael C. McGrath | Mitchell G. Williams |
| Charles A. Dietzgen | Jeffrey J. Murphy | Omer S. J. Williams |
| Gerald J. Ferguson | Stephen F.J. Ornstein* | John M. Woods |
| Jonathan D. Forstot | Kevin J. Plunkett | *Not Admitted in New York |

August 31, 2000

TO: Addressees on Schedule A

> Asset Backed Securities Corporation, Long Beach
> Home Equity Loan Trust 2000-LB1
> Home Equity Loan Pass-Through Certificates
> Series 2000-LB1

Ladies and Gentlemen:

We have acted as counsel to Long Beach Mortgage Company (the "Company") in connection with (i) the Pooling and Servicing Agreement, dated as of August 1, 2000 (the "Pooling Agreement"), among the Company as master servicer (the "Master Servicer"), Asset Backed Securities Corporation as depositor (the "Depositor") and Bankers Trust Company of California, N.A. as trustee (the "Trustee") and (ii) the Mortgage Loan Purchase Agreement, dated August 1, 2000, (the "Purchase Agreement"; together with the Pooling Agreement, the "Agreements"), between the Company and the Depositor. Capitalized terms not defined herein have the meanings set forth in the Agreements.

In rendering this opinion letter, as to relevant factual matters we have examined the documents described above and such other documents as we have deemed necessary including, where we have deemed appropriate, representations or certifications of officers of parties thereto or public officials. In rendering this opinion letter, except for the matters that are specifically addressed in the opinions expressed below, we have assumed (i) the authenticity of all documents submitted to us as originals or as copies thereof, and the conformity to the originals of all documents submitted to us as copies, (ii) the necessary entity formation and continuing existence in the jurisdiction of formation, and the necessary licensing and qualification in all jurisdictions, of all parties to all documents, (iii) the necessary authorization, execution, delivery and enforceability of all documents, and the necessary entity power with respect thereto, and (iv) that there is not any other agreement that modifies or supplements the agreements expressed in any document to which this opinion letter relates and that renders any of the opinions expressed below inconsistent with such document as so

modified or supplemented. In rendering this opinion letter, we have made no inquiry, have conducted no investigation and assume no responsibility with respect to (a) the accuracy of and compliance by the parties thereto with the representations, warranties and covenants as to factual matters contained in any document or (b) the conformity of the underlying assets and related documents to the requirements of any agreement to which this opinion letter relates.

The opinions expressed below with respect to the enforceability of any right or obligation under any agreement are subject to (i) general principles of equity, including concepts of materiality, reasonableness, good faith and fair dealing and the possible unavailability of specific performance and injunctive relief, regardless of whether considered in a proceeding in equity or at law, (ii) the effect of certain laws, regulations and judicial and other decisions upon the availability and enforceability of certain remedies including the remedies of specific performance and self-help and provisions purporting to waive the obligation of good faith, materiality, fair dealing, diligence, reasonableness or objection to venue or forum, to confer subject matter jurisdiction on a federal court located within the State of New York to adjudicate any controversy in any situation in which such court would not otherwise have subject matter jurisdiction, to waive the right to jury trial, to impose a penalty or forfeiture, to release, exculpate or exempt a party from or require indemnification of a party for liability for its own action or inaction to the extent that the action or inaction includes negligence, recklessness or willful or unlawful conduct, to sever any provision of any agreement, to restrict access to legal or equitable remedies, to establish evidentiary standards, to appoint any person or entity as the attorney-in-fact of any other person or entity, to require that any agreement may only be amended, modified or waived in writing, to provide that all rights or remedies of any party are cumulative and may be enforced in addition to any other right or remedy, to provide that the election of a particular remedy does not preclude recourse to one or more remedies, to provide that the failure to exercise or the delay in exercising rights or remedies will not operate as a waiver of any such rights or remedies, to waive rights or remedies which can not be waived as a matter of law, to provide for set-off unless there is mutuality between the parties or to provide that any agreement is to be governed by or construed in accordance with the laws of any jurisdiction other than the State of New York, (iii) bankruptcy, insolvency, receivership, reorganization, liquidation, voidable preference, fraudulent conveyance and transfer, moratorium and other similar laws affecting the rights of creditors or secured parties and (iv) public policy considerations underlying the securities laws, to the extent that such public policy considerations limit the enforceability of any provision of any agreement which purports or is construed to provide indemnification with respect to securities law violations. We do not express any opinion herein with respect to any law the violation of which would not have any material adverse effect on the ability of any party to perform its obligations under any agreement. However, the non-enforceability of any such provisions will not, taken as a whole, materially interfere with the practical realization of the benefits of the rights and remedies included in any such agreement which is the subject of any opinion expressed below, except for the considerations referred to in foregoing clause (iv) and the consequences of any judicial, administrative, procedural or other delay which may be imposed by, relate to or arise from applicable laws, equitable principles and interpretations thereof. Wherever we indicate that our opinion with respect to the existence or absence of facts is based on our knowledge, our opinion is based solely on the actual present knowledge of the attorneys in this firm who are directly involved in the representation of parties to the transactions described herein in connection

therewith. In that regard we have conducted no special or independent investigation of factual matters in connection with this opinion letter.

In rendering this opinion letter, we do not express any opinion concerning any law other than the federal laws of the United State, the laws of the State of New York and the General Corporation Law of the State of Delaware. We do not express any opinion with respect to the securities laws of any jurisdiction or any other matter not specifically addressed in the opinions expressed below.

Based upon and subject to the foregoing, it is our opinion that:

1.      The Company has been legally incorporated under the laws of the State of Delaware and, based upon a certificate of good standing issued by that State, is validly existing as a corporation in good standing under the laws of that State, and has the requisite entity power and authority to execute and deliver the Agreements and to perform its obligations thereunder.

2.      Each of the Agreements to which the Company is a party, assuming the necessary authorization, execution and delivery thereof by the parties thereto, is a valid and legally binding agreement under the laws of the State of New York, enforceable thereunder in accordance with its terms.

This opinion letter is rendered for the sole benefit of each addressee hereof, and no other person or entity is entitled to rely hereon. Copies of this opinion letter may not be made available, and this opinion letter may not be quoted or referred to in any other document made available, to any other person or entity except to (i) any applicable rating agency, institution providing credit enhancement or liquidity support or governmental authority, (ii) any accountant or attorney for any person or entity entitled hereunder to rely hereon or to whom or which this opinion letter may be made available as provided herein and (iii) as otherwise required by law.

Very truly yours,

THACHER PROFFITT & WOOD

By

# SCHEDULE A

Asset Backed Securities Corporation
Eleven Madison Avenue
New York, New York 10010

Lehman Brothers Inc.
Three World Financial Center
New York, New York 10285-1200

Morgan Stanley Dean Witter & Co.
1585 Broadway
New York, New York 10036

Prudential Securities Incorporated
One New York Plaza
New York, New York 10292

Moody's Investors Service Inc.
99 Church Street
New York, NY 10007

Fitch, Inc.
One State Street Plaza
New York, New York 10004

Bankers Trust Company of California, N.A.
1761 East St. Andrew Place
Santa Ana, California 92705

Credit Suisse First Boston Corporation
Eleven Madison Avenue
New York, New York 10010

Salomon Smith Barney Inc.
390 Greenwich Street
New York, New York 10013

R.V.I. Guaranty Co., Ltd.
20 Reid Street, 3rd Floor
Williams House
Hamilton HM HX, Bermuda

# EXHIBIT 5

## FORM OF SUBSEQUENT TRANSFER AGREEMENT

See Exhibit H to Pooling and Servicing Agreement.

1011959v10

# EXHIBIT 6

## FORM OF MORTGAGE NOTE AND MORTGAGE DEED OF TRUST

[ON FILE WITH TRUSTEE]