LONG BEACH SECURITIES CORP.,
Depositor

LONG BEACH MORTGAGE COMPANY,
Master Servicer

and

BANKERS TRUST COMPANY OF CALIFORNIA, N.A.
Trustee

POOLING AND SERVICING AGREEMENT

Dated as of March 1, 2001

Long Beach Mortgage Loan Trust 2001-1

Asset-Backed Certificates, Series 2001-1

## Table of Contents

Page

## ARTICLE I

## DEFINITIONS

Section 1.01. Defined Terms. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Section 1.02. Accounting. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
Section 1.03. Allocation of Certain Interest Shortfalls. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

## ARTICLE II

## CONVEYANCE OF MORTGAGE LOANS;
## ORIGINAL ISSUANCE OF CERTIFICATES

Section 2.01. Conveyance of Mortgage Loans. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
Section 2.02. Acceptance of REMIC 1 by the Trustee. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
Section 2.03. Cure, Repurchase or Substitution of Mortgage Loans by the Seller;
             Remedies for Breaches by Depositor or Master Servicer; Remedies
             for Breaches Relating to Prepayment Charges. . . . . . . . . . . . . . . . . . . . . . . . . . 49
Section 2.04. Representations, Warranties and Covenants of the Master Servicer. . . . . . . . . . 52
Section 2.05. Representations and Warranties of the Depositor. . . . . . . . . . . . . . . . . . . . . . . . . 54
Section 2.06. Issuance of Certificates. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56
Section 2.07. Conveyance of REMIC Regular Interests and Acceptance of
             REMIC 1 by the Trustee; Issuance of Certificates. . . . . . . . . . . . . . . . . . . . . . . 56

## ARTICLE III

## ADMINISTRATION AND SERVICING
## OF THE MORTGAGE LOANS

Section 3.01. Master Servicer to Act as Master Servicer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58
Section 3.02. Sub-Servicing Agreements Between the Master Servicer and Sub-Servicers. . . 59
Section 3.03. Successor Sub-Servicers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61
Section 3.04. Liability of the Master Servicer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61
Section 3.05. No Contractual Relationship Between Sub-Servicers and
             the Trustee or Certificateholders. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62
Section 3.06. Assumption or Termination of Sub-Servicing Agreements by Trustee. . . . . . . . 62
Section 3.07. Collection of Certain Mortgage Loan Payments. . . . . . . . . . . . . . . . . . . . . . . . . . 62
Section 3.08. Sub-Servicing Accounts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63
Section 3.09. Collection of Taxes, Assessments and Similar Items; Servicing Accounts. . . . 63
Section 3.10. Collection Account and Distribution Account. . . . . . . . . . . . . . . . . . . . . . . . . . . . 64
Section 3.11. Withdrawals from the Collection Account and Distribution Account. . . . . . . . . 67

Section 3.12.  Investment of Funds in the Collection Account and the
              Distribution Account. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68
Section 3.13.  [Reserved]. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70
Section 3.14.  Maintenance of Hazard Insurance and Errors and Omissions and
              Fidelity Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70
Section 3.15.  Enforcement of Due-On-Sale Clauses; Assumption Agreements. . . . . . . . . . . 71
Section 3.16.  Realization Upon Defaulted Mortgage Loans. . . . . . . . . . . . . . . . . . . . . . . . . 72
Section 3.17.  Trustee to Cooperate; Release of Mortgage Files. . . . . . . . . . . . . . . . . . . . . . 74
Section 3.18.  Servicing Compensation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75
Section 3.19.  Reports to the Trustee; Collection Account Statements. . . . . . . . . . . . . . . . . 76
Section 3.20.  Statement as to Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76
Section 3.21.  Independent Public Accountants' Servicing Report. . . . . . . . . . . . . . . . . . . . . 77
Section 3.22.  Access to Certain Documentation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77
Section 3.23.  Title, Management and Disposition of REO Property. . . . . . . . . . . . . . . . . . . 77
Section 3.24.  Obligations of the Master Servicer in Respect of Prepayment
              Interest Shortfalls. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 81
Section 3.25.  Obligations of the Master Servicer in Respect of Mortgage Rates
              and Monthly Payments. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 81
Section 3.26.  Reserve Fund. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 81
Section 3.27.  Advance Facility. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83
Section 3.28.  PMI Policy; Claims Under the PMI Policy . . . . . . . . . . . . . . . . . . . . . . . . . . 83

## ARTICLE IV

### FLOW OF FUNDS

Section 4.01.  Distributions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 85
Section 4.02.  Preference Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 90
Section 4.03.  Statements. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 91
Section 4.04.  Remittance Reports; Advances. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 94
Section 4.05.  Distributions on the REMIC Regular Interests. . . . . . . . . . . . . . . . . . . . . . . 96
Section 4.06.  Allocation of Realized Losses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 98
Section 4.07.  Compliance with Withholding Requirements. . . . . . . . . . . . . . . . . . . . . . . . 99
Section 4.08.  Commission Reporting. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 100

## ARTICLE V

### THE CERTIFICATES

Section 5.01.  The Certificates. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 101
Section 5.02.  Registration of Transfer and Exchange of Certificates. . . . . . . . . . . . . . . . . 103
Section 5.03.  Mutilated, Destroyed, Lost or Stolen Certificates. . . . . . . . . . . . . . . . . . . . 107
Section 5.04.  Persons Deemed Owners. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 107

## ARTICLE VI

THE MASTER SERVICER AND THE DEPOSITOR

Section 6.01.   Liability of the Master Servicer and the Depositor. . . . . . . . . . . . . . . . . . . . . . . 108
Section 6.02.   Merger or Consolidation of the Depositor or the Master Servicer. . . . . . . . . . 108
Section 6.03.   Limitation on Liability of the Depositor, the Master Servicer and Others. . . . 108
Section 6.04.   Limitation on Resignation of Master Servicer. . . . . . . . . . . . . . . . . . . . . . . . 109
Section 6.05.   Rights of the Depositor in Respect of the Master Servicer. . . . . . . . . . . . . . . 110

ARTICLE VII

DEFAULT

Section 7.01.   Master Servicer Events of Default. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 112
Section 7.02.   Trustee to Act; Appointment of Successor. . . . . . . . . . . . . . . . . . . . . . . . . . . 114
Section 7.03.   Notification to Certificateholders. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 116
Section 7.04.   Waiver of Master Servicer Events of Default. . . . . . . . . . . . . . . . . . . . . . . . . 116

ARTICLE VIII

THE TRUSTEE

Section 8.01.   Duties of Trustee. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 117
Section 8.02.   Certain Matters Affecting the Trustee. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 118
Section 8.03.   Trustee not Liable for Certificates or Mortgage Loans. . . . . . . . . . . . . . . . . . 119
Section 8.04.   Trustee May Own Certificates. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 119
Section 8.05.   Trustee's Fees and Expenses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 120
Section 8.06.   Eligibility Requirements for Trustee. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 121
Section 8.07.   Resignation or Removal of Trustee. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 121
Section 8.08.   Successor Trustee. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 122
Section 8.09.   Merger or Consolidation of Trustee. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 122
Section 8.10.   Appointment of Co-Trustee or Separate Trustee. . . . . . . . . . . . . . . . . . . . . . 123
Section 8.11.   Appointment of Custodians. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 124
Section 8.12.   Appointment of Office or Agency. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 124
Section 8.13.   Representations and Warranties of the Trustee. . . . . . . . . . . . . . . . . . . . . . . 124

ARTICLE IX

TERMINATION

Section 9.01.   Termination Upon Purchase or Liquidation of All Mortgage Loans. . . . . . . . 126
Section 9.02.   Additional Termination Requirements. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 128

ARTICLE X

REMIC PROVISIONS

Section 10.01. REMIC Administration. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 129
Section 10.02. Prohibited Transactions and Activities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 132
Section 10.03. Trustee, Master Servicer and Depositor Indemnification. . . . . . . . . . . . . . . . . 132

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

Section 11.01. Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 133
Section 11.02. Recordation of Agreement; Counterparts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 134
Section 11.03. Limitation on Rights of Certificateholders. . . . . . . . . . . . . . . . . . . . . . . . . . . . 134
Section 11.04. Governing Law; Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 135
Section 11.05. Notices. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 135
Section 11.06. Severability of Provisions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 136
Section 11.07. Notice to the Rating Agencies and the NIMs Insurer. . . . . . . . . . . . . . . . . . . . 136
Section 11.08. Article and Section References. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 137
Section 11.09. NIMs Insurer's Rights. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 137
Section 11.10. Grant of Security Interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 137
Section 11.11. No Petition. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 138

EXHIBITS:

Exhibit A-1    Form of Class A-1 Certificates
Exhibit A-2    Form of Class A-2 Certificates
Exhibit A-3    Form of Class S Certificates
Exhibit A-4    Form of Class M-1 Certificates
Exhibit A-5    Form of Class M-2 Certificates
Exhibit A-6    Form of Class M-3 Certificates
Exhibit A-7    Form of Class C Certificates
Exhibit A-8    Form of Class P Certificates
Exhibit A-9    Form of Class R Certificates
Exhibit B      [Reserved]
Exhibit C      Form of Mortgage Loan Purchase Agreement
Exhibit D      Mortgage Loan Schedule
Exhibit E-1    Request for Release
Exhibit E-2    Request for Release for Mortgage Loans paid in full
Exhibit F-1    Form of Trustee's Initial Certification
Exhibit F-2    Form of Trustee's Final Certification
Exhibit G      [Reserved]
Exhibit H      Form of Lost Note Affidavit
Exhibit I      Form of ERISA Representation
Exhibit J      Form of Investment Letter
Exhibit K      Form of Class R Certificate Transfer Affidavit
Exhibit L      Form of Transferor Certificate

Schedule I     Prepayment Charge Schedule
Schedule II    PMI Mortgage Loans

This Pooling and Servicing Agreement is dated as of March 1, 2001 (the "Agreement"), among LONG BEACH SECURITIES CORP., as depositor (the "Depositor"), LONG BEACH MORTGAGE COMPANY, as master servicer (the "Master Servicer"), and BANKERS TRUST COMPANY OF CALIFORNIA, N.A., as trustee (the "Trustee").

## PRELIMINARY STATEMENT:

The Depositor intends to sell pass-through certificates (collectively, the "Certificates"), to be issued hereunder in multiple classes, which in the aggregate will evidence the entire beneficial ownership interest in the Trust Fund created hereunder. The Certificates will consist of eight classes of certificates, designated as (i) the Class A-1 Certificates, (ii) the Class A-2 Certificates, (iii) the Class S Certificates, (iv) the Class M-1 Certificates, (v) the Class M-2 Certificates, (vi) the Class M-3 Certificates, (vii) the Class P Certificates, (viii) the Class C Certificates and (ix) the Class R Certificates.

## REMIC 1

As provided herein, the Trustee will make an election to treat the segregated pool of assets consisting of the Mortgage Loans and certain other related assets subject to this Agreement (exclusive of the Reserve Fund) as a real estate mortgage investment conduit (a "REMIC") for federal income tax purposes, and such segregated pool of assets will be designated as "REMIC 1." The Class R-1 Interest will represent the sole class of "residual interests" in REMIC 1 for purposes of the REMIC Provisions (as defined herein) under federal income tax law. The following table irrevocably sets forth the designation, the Uncertificated REMIC 1 Pass-Through Rate, the initial Uncertificated Principal Balance, and solely for purposes of satisfying Treasury regulation Section 1.860G-1(a)(4)(iii), the "latest possible maturity date" for each of the REMIC 1 Regular Interests. None of the REMIC 1 Regular Interests will be certificated.

| Designation | Uncertificated REMIC 1 Pass-Through Rate | Initial Uncertificated Principal Balance | Assumed Final Maturity Date (1) |
|---|---|---|---|
| LT1A | Variable(2) | $652,919,788.78 | April 2031 |
| LT1B | Variable(2) | $72,546,600.00 | April 2031 |
| LT1P | Variable(2) | $100.00 | April 2031 |

(1)   Solely for purposes of Section 1.860G-1(a)(4)(iii) of the Treasury regulations, the Distribution Date in the month following the maturity date for the Mortgage Loan with the latest maturity date has been designated as the "latest possible maturity date" for each REMIC 1 Regular Interest.

(2)   Calculated in accordance with the definition of "Uncertificated REMIC 1 Pass-Through Rate" herein.

## REMIC 2

As provided herein, the Trustee shall make an election to treat the segregated pool of assets consisting of the REMIC 1 Regular Interests as a REMIC for federal income tax purposes, and such segregated pool of assets will be designated as "REMIC 2". The Class R-2 Interest represents the sole class of "residual interests" in REMIC 2 for purposes of the REMIC Provisions. The following table irrevocably sets forth the designation, the Uncertificated REMIC 2 Pass-Through Rate, the initial Uncertificated Principal Balance, and solely for purposes of satisfying Treasury regulation Section 1.860G-1(a)(4)(iii), the "latest possible maturity date" for each of the REMIC 2 Regular Interests. None of the REMIC 2 Regular Interests will be certificated.

| Designation | Uncertificated REMIC 2 Pass-Through Rate | Initial Uncertificated Principal Balance | Assumed Final Maturity Date (1) |
|---|---|---|---|
| LT2A | Variable(2) | $ 710,957,061.00 | April 2031 |
| LT2B | Variable(2) | $ 4,845,420.00 | April 2031 |
| LT2C | Variable(2) | $ 1,484,260.00 | April 2031 |
| LT2D | Variable(2) | $ 308,330.00 | April 2031 |
| LT2E | Variable(2) | $ 308,330.00 | April 2031 |
| LT2F | Variable(2) | $ 163,230.00 | April 2031 |
| LT2G | Variable(2) | $ 7,399,757.78 | April 2031 |
| LT2SA | Variable(3) | N/A(6) | April 2031 |
| LT2SB | Variable(4) | N/A(6) | April 2031 |
| LT2SC | Variable(5) | N/A(6) | April 2031 |
| LT2P | Variable(2) | $ 100.00 | April 2031 |

(1)  Solely for purposes of Section 1.860G-1(a)(4)(iii) of the Treasury regulations, the Distribution Date in the month following the maturity date for the Mortgage Loan with the latest maturity date has been designated as the "latest possible maturity date" for each REMIC 2 Regular Interest.

(2)  Calculated in accordance with the definition of "Uncertificated REMIC 2 Pass-Through Rate" herein.

(3)  1.50% per annum for the first 36 Distribution Dates and 0.00% per annum thereafter.

(4)  1.00% per annum for the first 24 Distribution Dates and 0.00% per annum thereafter.

(5)  1.00% per annum for the first 12 Distribution Dates and 0.00% per annum thereafter.

(6)  REMIC 2 Regular Interest LT2SA, REMIC 2 Regular Interest LT2SB and REMIC 2 Regular Interest LT2SC will not have Uncertificated Principal Balances, but will accrue interest on their respective Uncertificated Notional Amounts outstanding from time to time which in each case shall equal the Uncertificated Principal Balance of REMIC 1 Regular Interest LT1B.

<u>REMIC 3</u>

As provided herein, the Trustee shall make an election to treat the segregated pool of assets consisting of the REMIC 2 Regular Interests as a REMIC for federal income tax purposes, and such segregated pool of assets will be designated as "REMIC 3." The Class R-3 Interest represents the sole class of "residual interests" in REMIC 3 for purposes of the REMIC Provisions.

The following table sets forth (or describes) the Class designation, Pass-Through Rate and Original Class Certificate Principal Balance for each Class of Certificates that represents one or more of the "regular interests" in REMIC 3 created hereunder:

| Class Designation | Original Class Certificate Principal Balance | Pass-Through Rate | Assumed Final Maturity Date(1) |
|---|---|---|---|
| Class A-1 . . . . . . . | $484,542,000.00 | Variable(2) | April 2031 |
| Class A-2 . . . . . . . | $148,426,000.00 | Variable(2) | April 2031 |
| Class M-1 . . . . . . . | $ 30,833,000.00 | Variable(2) | April 2031 |
| Class M-2 . . . . . . . | $ 30,833,000.00 | Variable(2) | April 2031 |
| Class M-3 . . . . . . . | $ 16,323,000.00 | Variable(2) | April 2031 |
| Class S . . . . . . . . . | N/A(3) | N/A(3) | April 2031 |
| Class C . . . . . . . . . | $ 14,509,388.78(4) | Variable(2) | April 2031 |
| Class P . . . . . . . . . | $100.00 | N/A(5) | April 2031 |

(1)     Solely for purposes of Section 1.860G-1(a)(4)(iii) of the Treasury regulations, the Distribution Date in the month following the maturity date for the Mortgage Loan with the latest maturity date has been designated as the "latest possible maturity date" for each Class of Certificates that represents one or more of the "regular interests" in REMIC 3.

(2)     Calculated in accordance with the definition of "Pass-Through Rate" herein.

(3)     The Class S Certificates will receive all amounts distributed to REMIC 2 Regular Interest LT2SA, REMIC 2 Regular Interest LT3SB and REMIC 2 Regular Interest LT2SC.

(4)     The Class C Certificates will accrue interest at their variable Pass-Through Rate on the Notional Amount of the Class C Certificates outstanding from time to time which shall equal the aggregate of the Uncertificated Principal Balances of the REMIC 2 Regular Interests. The Class C Certificates will not accrue interest on their Class Certificate Principal Balance.

(5)     The Class P Certificates will not accrue interest.

ARTICLE I

DEFINITIONS

Section 1.01.  Defined Terms.

Whenever used in this Agreement or in the Preliminary Statement, the following words and phrases, unless the context otherwise requires, shall have the meanings specified in this Article. Unless otherwise specified, all calculations in respect of interest on the Class A Certificates and the Mezzanine Certificates shall be made on the basis of the actual number of days elapsed on the basis of a 360-day year and all other calculations of interest described herein shall be made on the basis of a 360-day year consisting of twelve 30-day months. The Class P Certificates and the Class R Certificates are not entitled to distributions in respect of interest and, accordingly, will not accrue interest.

"1933 Act":  The Securities Act of 1933, as amended.

"Account":  Either of the Collection Account and Distribution Account.

"Accrual Period":  With respect to the Class S Certificates and the Class C Certificates and each Distribution Date, the calendar month prior to the month of such Distribution Date.  With respect to the Class A Certificates and the Mezzanine Certificates and each Distribution Date, the period commencing on the preceding Distribution Date (or in the case of the first such Accrual Period, commencing on the Closing Date) and ending on the day preceding the current Distribution Date.

"Adjustable Rate Mortgage Loan":  A Mortgage Loan which provides for an adjustable Mortgage Rate payable with respect thereto.

"Adjusted Net Maximum Mortgage Rate":  With respect to any Mortgage Loan (or the related REO Property), as of any date of determination, a per annum rate of interest equal to the Maximum Mortgage Rate for such Mortgage Loan (if such Mortgage Loan is an Adjustable Rate Mortgage Loan) or the Mortgage Rate for such Mortgage Loan (if such Mortgage Loan is a Fixed Rate Mortgage Loan), in either such case as of the first day of the month preceding the month in which the Distribution Date occurs, minus the sum of (i) the Servicing Fee Rate and (ii) the PMI Insurer Fee Rate, if applicable.

"Adjusted Net Mortgage Rate":  With respect to any Mortgage Loan (or the related REO Property), as of any date of determination, a per annum rate of interest equal to the Mortgage Rate for such Mortgage Loan as of the first day of the month preceding the month in which the Distribution Date occurs, minus the sum of (i) the Servicing Fee Rate and (ii) the PMI Insurer Fee Rate, if applicable.

"Adjustment Date":  With respect to each Adjustable Rate Mortgage Loan, each adjustment date, on which the Mortgage Rate of such Mortgage Loan changes pursuant to the related Mortgage

Note. The first Adjustment Date following the Cut-off Date as to each Adjustable Rate Mortgage Loan is set forth in the Mortgage Loan Schedule.

"Advance": As to any Mortgage Loan or REO Property, any advance made by the Master Servicer in respect of any Distribution Date pursuant to Section 4.04.

"Advancing Person": As defined in Section 3.27 hereof.

"Adverse REMIC Event": As defined in Section 10.01(f) hereof.

"Affiliate": With respect to any Person, any other Person controlling, controlled by or under common control with such Person. For purposes of this definition, "control" means the power to direct the management and policies of a Person, directly or indirectly, whether through ownership of voting securities, by contract or otherwise and "controlling" and "controlled" shall have meanings correlative to the foregoing.

"Agreement": This Pooling and Servicing Agreement and all amendments hereof and supplements hereto.

"Allocated Realized Loss Amount": With respect to any Distribution Date and the Class A-2 Certificates or any Class of Mezzanine Certificates, the sum of (i) any Realized Losses allocated to such Class of Certificates on any Distribution Date and (ii) the amount of any Allocated Realized Loss Amount for such Class of Certificates remaining unpaid from the previous Distribution Date.

"Assignment": An assignment of Mortgage, notice of transfer or equivalent instrument, in recordable form (excepting therefrom, if applicable, the mortgage recordation information which has not been required pursuant to Section 2.01 hereof or returned by the applicable recorder's office), which is sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to reflect or record the sale of the Mortgage.

"Available Funds": With respect to any Distribution Date, an amount equal to the excess of (i) the sum of (a) the aggregate of the Monthly Payments on the Mortgage Loans received on or prior to the related Determination Date, (b) Liquidation Proceeds, Insurance Proceeds, Principal Prepayments and other unscheduled recoveries of principal and interest in respect of the Mortgage Loans during the related Prepayment Period, (c) the aggregate of any amounts received in respect of an REO Property acquired in respect of a Mortgage Loan withdrawn from any REO Account and deposited in the Collection Account for such Distribution Date, (d) the aggregate of any amounts deposited in the Collection Account by the Master Servicer in respect of related Prepayment Interest Shortfalls on the Mortgage Loans for such Distribution Date, (e) the aggregate of any Advances made by the Master Servicer for such Distribution Date with respect to the Mortgage Loans, (f) the aggregate of any related advances made by the Trustee for such Distribution Date with respect to the Mortgage Loans pursuant to Section 7.02(b) and (g) the amount of any Prepayment Charges collected by the Master Servicer on the Mortgage Loans in connection with the full or partial prepayment of any of the Mortgage Loans and any Master Servicer Prepayment Charge Payment Amount over (ii) the sum of (a) amounts reimbursable or payable to the Depositor, the Master Servicer, the Trustee, the Seller, the NIMs Insurer or any Sub-Servicer pursuant to Section 3.11 or

Section 3.12 in respect of the Mortgage Loans or otherwise payable in respect of Extraordinary Trust Fund Expenses, (b) amounts deposited in the Collection Account or the Distribution Account pursuant to clauses (i)(a) through (g) above, as the case may be, in error, (c) the amount of any Prepayment Charges collected by the Master Servicer in connection with the full or partial prepayment of any of the Mortgage Loans and any Master Servicer Prepayment Charge Payment Amount, (d) Stayed Funds, (e) the PMI Insurer Fee payable from the Distribution Account, (f) any indemnification payments or expense reimbursements made by the Trust Fund pursuant to Section 8.05 and (h) amounts reimbursable to the Trustee for an advance made pursuant to Section 7.02(b) which advance the Trustee has determined to be nonrecoverable from the Stayed Funds in respect of which it was made.

"Balloon Mortgage Loan": A Mortgage Loan that provides for a Balloon Payment.

"Balloon Payment": With respect to any Balloon Mortgage Loan, the payment of the unamortized principal balance of a Mortgage Loan in a single payment at the maturity of such Mortgage Loan.

"Bankruptcy Code": The Bankruptcy Reform Act of 1978 (Title 11 of the United States Code), as amended.

"Bankruptcy Loss": With respect to any Mortgage Loan, a Realized Loss resulting from a Deficient Valuation or Debt Service Reduction.

"Basic Principal Distribution Amount": With respect to any Distribution Date, the excess of (i) the Principal Remittance Amount for such Distribution Date over (ii) the Overcollateralization Release Amount, if any, for such Distribution Date.

"Book-Entry Certificates": Any of the Certificates that shall be registered in the name of the Depository or its nominee, the ownership of which is reflected on the books of the Depository or on the books of a Person maintaining an account with the Depository (directly, as a "Depository Participant", or indirectly, as an indirect participant in accordance with the rules of the Depository and as described in Section 5.02 hereof). On the Closing Date, the Class A Certificates, the Class S Certificates and the Mezzanine Certificates shall be Book-Entry Certificates.

"Book-Entry Custodian": The custodian appointed pursuant to Section 5.01.

"Business Day": Any day other than a Saturday, a Sunday or a day on which banking or savings institutions in the State of Delaware, the State of New York, the State of Maryland, the State of California, the State of Minnesota, the Commonwealth of Pennsylvania or in the city in which the Corporate Trust Office of the Trustee is located, are authorized or obligated by law or executive order to be closed.

"Certificate": Any Regular Certificate or Class R Certificate.

"Certificateholder" or "Holder": The Person in whose name a Certificate is registered in the Certificate Register, except that a Disqualified Organization or a Non-United States Person shall not

be a Holder of a Residual Certificate for any purposes hereof and, solely for the purposes of giving any consent pursuant to this Agreement, any Certificate registered in the name of the Depositor or the Master Servicer or any Affiliate thereof shall be deemed not to be outstanding and the Voting Rights to which it is entitled shall not be taken into account in determining whether the requisite percentage of Voting Rights necessary to effect any such consent has been obtained, except as otherwise provided in Section 11.01. The Trustee and the NIMs Insurer may conclusively rely upon a certificate of the Depositor or the Master Servicer in determining whether a Certificate is held by an Affiliate thereof. All references herein to "Holders" or "Certificateholders" shall reflect the rights of Certificate Owners as they may indirectly exercise such rights through the Depository and participating members thereof, except as otherwise specified herein; provided, however, that the Trustee and the NIMs Insurer shall be required to recognize as a "Holder" or "Certificateholder" only the Person in whose name a Certificate is registered in the Certificate Register.

"Certificate Margin": With respect to the Class A-1 Certificates on each Distribution Date (A) on or prior to the Optional Termination Date, 0.22% per annum and (B) after the Optional Termination Date, 0.44% per annum. With respect to the Class A-2 Certificates on each Distribution Date (A) on or prior to the Optional Termination Date, 0.30% per annum and (B) after the Optional Termination Date, 0.60% per annum. With respect to the Class M-1 Certificates on each Distribution Date (A) on or prior to the Optional Termination Date, 0.60% per annum and (B) after the Optional Termination Date, 0.90% per annum. With respect to the Class M-2 Certificates on each Distribution Date (A) on or prior to the Optional Termination Date, 1.00% per annum and (B) after the Optional Termination Date, 1.50% per annum. With respect to the Class M-3 Certificates on each Distribution Date (A) on or prior to the Optional Termination Date, 2.05% per annum and (B) after the Optional Termination Date, 3.075% per annum.

"Certificate Owner": With respect to each Book-Entry Certificate, any beneficial owner thereof.

"Certificate Principal Balance": With respect to any Class of Regular Certificates (other than the Class S Certificates and the Class C Certificates) immediately prior to any Distribution Date, will be equal to the Initial Certificate Principal Balance thereof reduced by the sum of all amounts actually distributed in respect of principal of such Class and, in the case of a Mezzanine Certificate, Realized Losses allocated thereto on all prior Distribution Dates. With respect to the Class C Certificates as of any date of determination, an amount equal to the excess, if any, of (A) the then aggregate Uncertificated Principal Balances of the REMIC 1 Regular Interests over (B) the then aggregate Certificate Principal Balances of the Class A Certificates, the Mezzanine Certificates and the Class P Certificates then outstanding. The Class S Certificates will not have a Certificate Principal Balance.

"Certificate Register": The register maintained and registrar appointed pursuant to Section 5.02 hereof.

"Class": Collectively, Certificates which have the same priority of payment and bear the same class designation and the form of which is identical except for variation in the Percentage Interest evidenced thereby.

"Class A Certificate":  Any Class A-1 Certificate or Class A-2 Certificate.

"Class A-1 Certificate":  Any one of the Class A-1 Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit A-1, executed, authenticated and delivered by the Trustee, representing the right to distributions as set forth herein and therein and evidencing a Regular Interest in REMIC 3.

"Class A-2 Certificate":  Any one of the Class A-2 Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit A-2, executed, authenticated and delivered by the Trustee, representing the right to distributions as set forth herein and therein and evidencing a Regular Interest in REMIC 3.

"Class A Principal Allocation Percentage":  For any Distribution Date, the percentage equivalent of a fraction, determined as follows:  (i) in the case of the Class A-1 Certificates, the numerator of which is (x) the portion of the Principal Remittance Amount for such Distribution Date that is attributable to principal received or advanced on the Group I Mortgage Loans, and the denominator of which is (y) the Principal Remittance Amount for such Distribution Date, and (ii) in the case of the Class A-2 Certificates, the numerator of which is (x) the portion of the Principal Remittance Amount for such Distribution Date that is attributable to principal received or advanced on the Group II Mortgage Loans, and the denominator of which is (y) the Principal Remittance Amount for such Distribution Date.

"Class A Principal Distribution Amount":  With respect to any Distribution Date, the excess of (x) the aggregate Certificate Principal Balance of the Class A Certificates immediately prior to such Distribution Date over (y) the lesser of (A) the product of (i) 74.50% and (ii) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) and (B) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) minus the Overcollateralization Floor.

"Class C Certificate":  Any one of the Class C Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit A-7, executed, authenticated and delivered by the Trustee, representing the right to distributions as set forth herein and therein and evidencing a Regular Interest in REMIC 3.

"Class M-1 Certificate":  Any one of the Class M-1 Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit A-4, executed, authenticated and delivered by the Trustee, representing the right to distributions as set forth herein and therein and evidencing a Regular Interest in REMIC 3.

"Class M-1 Principal Distribution Amount":  With respect to any Distribution Date, the excess of (x) the sum of (i) the aggregate Certificate Principal Balance of the Class A Certificates (after taking into account the payment of the Class A Principal Distribution Amount on such

Distribution Date) and (ii) the Certificate Principal Balance of the Class M-1 Certificates immediately prior to such Distribution Date over (y) the lesser of (A) the product of (i) 83.00% and (ii) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) and (B) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) minus the Overcollateralization Floor.

"Class M-2 Certificate":  Any one of the Class M-2 Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit A-5, executed, authenticated and delivered by the Trustee, representing the right to distributions as set forth herein and therein and evidencing a Regular Interest in REMIC 3.

"Class M-2 Principal Distribution Amount":  With respect to any Distribution Date, the excess of (x) the sum of (i) the aggregate Certificate Principal Balance of the Class A Certificates (after taking into account the payment of the Class A Principal Distribution Amount on such Distribution Date), (ii) the Certificate Principal Balance of the Class M-1 Certificates (after taking into account the payment of the Class M-1 Principal Distribution Amount on such Distribution Date) and (iii) the Certificate Principal Balance of the Class M-2 Certificates immediately prior to such Distribution Date over (y) the lesser of (A) the product of (i) 91.50% and (ii) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) and (B) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) minus the Overcollateralization Floor.

"Class M-3 Certificate":  Any one of the Class M-3 Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit A-6, executed, authenticated and delivered by the Trustee, representing the right to distributions as set forth herein and therein and evidencing a Regular Interest in REMIC 3.

"Class M-3 Principal Distribution Amount":  With respect to any Distribution Date, the excess of (x) the sum of (i) the aggregate Certificate Principal Balance of the Class A Certificates (after taking into account the payment of the Class A Principal Distribution Amount on such Distribution Date), (ii) the Certificate Principal Balance of the Class M-1 Certificates (after taking into account the payment of the Class M-1 Principal Distribution Amount on such Distribution Date), (iii) the Certificate Principal Balance of the Class M-2 Certificates (after taking into account the payment of the Class M-2 Principal Distribution Amount on such Distribution Date) and (iv) the Certificate Principal Balance of the Class M-3 Certificates immediately prior to such Distribution Date over (y) the lesser of (A) the product of (i) 96.00% and (ii) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or

advanced, and unscheduled collections of principal received during the related Prepayment Period) and (B) the aggregate Stated Principal Balance of the Mortgage Loans as of the last day of the related Due Period (after giving effect to scheduled payments of principal due during the related Due Period, to the extent received or advanced, and unscheduled collections of principal received during the related Prepayment Period) minus the Overcollateralization Floor.

"Class P Certificate": Any one of the Class P Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit A-8, executed, authenticated and delivered by the Trustee, representing the right to distributions as set forth herein and therein and evidencing a Regular Interest in REMIC 3.

"Class R Certificate": Any one of the Class R Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit A-9, executed, authenticated and delivered by the Trustee, evidencing the ownership of the Class R-1 Interest, the Class R-2 Interest and the Class R-3 Interest.

"Class R-1 Interest": The uncertificated Residual Interest in REMIC 1.

"Class R-2 Interest": The uncertificated Residual Interest in REMIC 2.

"Class R-3 Interest": The uncertificated Residual Interest in REMIC 3.

"Class S Certificate": Any one of the Class S Certificates as designated on the face thereof substantially in the form annexed hereto as Exhibit A-3, executed, authenticated and delivered by the Trustee, representing the right to distributions as set forth herein and therein and evidencing a Regular Interest in REMIC 3.

"Close of Business": As used herein, with respect to any Business Day, 5:00 p.m. (New York time).

"Closing Date": March 15, 2001.

"Code": The Internal Revenue Code of 1986.

"Collection Account": The account or accounts created and maintained by the Master Servicer pursuant to Section 3.10(a), which shall be entitled "Bankers Trust Company of California, N.A., as Trustee, in trust for registered Holders of Long Beach Mortgage Loan Trust 2001-1, Asset-Backed Certificates, Series 2001-1," which must be an Eligible Account.

"Commission": The Securities and Exchange Commission.

"Compensating Interest": As defined in Section 3.24.

"Corporate Trust Office": The principal corporate trust office of the Trustee at which at any particular time its corporate trust business in connection with this Agreement shall be administered, which office at the date of the execution of this instrument is located at 1761 East St. Andrew Place,

Santa Ana, California 92705, or at such other address as the Trustee may designate from time to time by notice to the Certificateholders, the Depositor and the Master Servicer.

"Corresponding Certificates": With respect to REMIC 2 Regular Interest LT2B, REMIC 2 Regular Interest LT2C, REMIC 2 Regular Interest LT2D, REMIC 2 Regular Interest LT2E, REMIC 2 Regular Interest LT2G and REMIC 2 Regular Interest LT2P, the Class A-1 Certificates, the Class A-2 Certificates, Class M-1 Certificates, Class M-2 Certificates, Class M-3 Certificates and Class P Certificates, respectively.

"Credit Enhancement Percentage": For any Distribution Date, the percentage equivalent of a fraction, the numerator of which is the sum of the aggregate Certificate Principal Balances of the Mezzanine Certificates and the Class C Certificates, and the denominator of which is the aggregate Stated Principal Balance of the Mortgage Loans, calculated prior to taking into account payments of principal on the Mortgage Loans due on the related Due Date or received during the related Prepayment Period and distribution of the Principal Distribution Amount to the Holders of the Certificates then entitled to distributions of principal on such Distribution Date.

"Cumulative Loss Percentage": With respect to any Distribution Date, the percentage equivalent of a fraction, the numerator of which is the aggregate amount of Realized Losses incurred from the Cut-off Date to the last day of the preceding calendar month and the denominator of which is the aggregate Stated Principal Balance of the Mortgage Loans as of the Cut-off Date.

"Custodial Agreement": An agreement that may be entered into or an agreement assigned to the Trustee with respect to the Mortgage Loans.

"Custodian": A custodian, which shall not be the Depositor, the Master Servicer, the Seller or any affiliate of any of them, appointed pursuant to a Custodial Agreement.

"Cut-off Date": With respect to each Mortgage Loan, March 1, 2001.

"Cut-off Date Aggregate Principal Balance": The aggregate of the Cut-off Date Principal Balances of the Mortgage Loans.

"Cut-off Date Principal Balance": With respect to any Mortgage Loan, the unpaid principal balance thereof as of the Cut-off Date of such Mortgage Loan (or as of the applicable date of substitution with respect to a Qualified Substitute Mortgage Loan), after giving effect to scheduled payments due on or before the Cut-off Date, whether or not received.

"Debt Service Reduction": With respect to any Mortgage Loan, a reduction in the scheduled Monthly Payment for such Mortgage Loan by a court of competent jurisdiction in a proceeding under the Bankruptcy Code, except such a reduction resulting from a Deficient Valuation.

"Deficient Valuation": With respect to any Mortgage Loan, a valuation of the related Mortgaged Property by a court of competent jurisdiction in an amount less than the then outstanding principal balance of the Mortgage Loan, which valuation results from a proceeding initiated under the Bankruptcy Code.

"Definitive Certificates": As defined in Section 5.01(b) hereof.

"Deleted Mortgage Loan": A Mortgage Loan replaced or to be replaced by one or more Qualified Substitute Mortgage Loans.

"Delinquency Percentage": For any Distribution Date, the percentage obtained by dividing (x) the aggregate Principal Balance of Mortgage Loans Delinquent 60 days or more by (y) the aggregate Principal Balance of the Mortgage Loans, in each case, as of the last day of the previous calendar month.

"Delinquent": With respect to any Mortgage Loan and related Monthly Payment, the Monthly Payment due on a Due Date which is not made by the Close of Business on the next scheduled Due Date for such Mortgage Loan. For example, a Mortgage Loan is 60 or more days Delinquent if the Monthly Payment due on a Due Date is not made by the Close of Business on the second scheduled Due Date after such Due Date.

"Depositor": Long Beach Securities Corp., a Delaware corporation, or any successor in interest.

"Depository": The initial Depository shall be The Depository Trust Company, whose nominee is Cede & Co., or any other organization registered as a "clearing agency" pursuant to Section 17A of the Securities Exchange Act of 1934, as amended. The Depository shall initially be the registered Holder of the Book-Entry Certificates. The Depository shall at all times be a "clearing corporation" as defined in Section 8-102(3) of the Uniform Commercial Code of the State of New York.

"Depository Participant": A broker, dealer, bank or other financial institution or other person for whom from time to time a Depository effects book-entry transfers and pledges of securities deposited with the Depository.

"Determination Date": With respect to any Distribution Date, the 15th day of the calendar month in which such Distribution Date occurs or, if such 15th day is not a Business Day, the Business Day immediately preceding such 15th day.

"Directly Operate": With respect to any REO Property, the furnishing or rendering of services to the tenants thereof, the management or operation of such REO Property, the holding of such REO Property primarily for sale to customers, the performance of any construction work thereon or any use of such REO Property in a trade or business conducted by the REMIC other than through an Independent Contractor; provided, however, that the Trustee (or the Master Servicer on behalf of the Trustee) shall not be considered to Directly Operate an REO Property solely because the Trustee (or the Master Servicer on behalf of the Trustee) establishes rental terms, chooses tenants, enters into or renews leases, deals with taxes and insurance, or makes decisions as to repairs or capital expenditures with respect to such REO Property.

"Disqualified Organization": A "disqualified organization" under Section 860E of the Code, which as of the Closing Date is any of: (i) the United States, any state or political subdivision

thereof, any foreign government, any international organization, or any agency or instrumentality of any of the foregoing, (ii) any organization (other than a cooperative described in Section 521 of the Code) which is exempt from the tax imposed by Chapter 1 of the Code unless such organization is subject to the tax imposed by Section 511 of the Code, (iii) any organization described in Section 1381(a)(2)(C) of the Code, (iv) an "electing large partnership" within the meaning of Section 775 of the Code or (v) any other Person so designated by the Trustee based upon an Opinion of Counsel provided by nationally recognized counsel to the Trustee that the holding of an ownership interest in a Class R Certificate by such Person may cause the Trust Fund or any Person having an ownership interest in any Class of Certificates (other than such Person) to incur liability for any federal tax imposed under the Code that would not otherwise be imposed but for the transfer of an ownership interest in the Class R Certificate to such Person. A corporation will not be treated as an instrumentality of the United States or of any state or political subdivision thereof, if all of its activities are subject to tax and, a majority of its board of directors is not selected by a governmental unit. The term "United States", "state" and "international organizations" shall have the meanings set forth in Section 7701 of the Code.

"Distribution Account": The trust account or accounts created and maintained by the Trustee pursuant to Section 3.10(b) which shall be entitled "Distribution Account, Bankers Trust Company of California, N.A., in trust for the registered Certificateholders of Long Beach Mortgage Loan Trust 2001-1, Asset-Backed Certificates, Series 2001-1" and which must be an Eligible Account.

"Distribution Date": The 21st day of any calendar month, or if such 21st day is not a Business Day, the Business Day immediately following such 21st day, commencing in April 2001.

"Due Date": With respect to each Distribution Date, the first day of the calendar month in which such Distribution Date occurs, which is generally the day of the month on which the Monthly Payment is due on a Mortgage Loan, exclusive of any days of grace.

"Due Period": With respect to any Distribution Date, the period commencing on the second day of the month preceding the month in which such Distribution Date occurs and ending on the first day of the month in which such Distribution Date occurs.

"Eligible Account": Any of (i) an account or accounts maintained with a federal or state chartered depository institution or trust company the short-term unsecured debt obligations of which (or, in the case of a depository institution or trust company that is the principal subsidiary of a holding company, the short-term unsecured debt obligations of such holding company) are rated P-1 by Moody's, F-1 by Fitch or A-1+ by S&P (or comparable ratings if Moody's, Fitch and S&P are not the Rating Agencies) at the time any amounts are held on deposit therein, (ii) an account or accounts the deposits in which are fully insured by the FDIC (to the limits established by such corporation), the uninsured deposits in which account are otherwise secured such that, as evidenced by an Opinion of Counsel delivered to the Trustee and to each Rating Agency, the Certificateholders will have a claim with respect to the funds in such account or a perfected first priority security interest against such collateral (which shall be limited to Permitted Investments) securing such funds that is superior to claims of any other depositors or creditors of the depository institution with which such account is maintained, (iii) a trust account or accounts maintained with the trust department of a federal or state chartered depository institution, national banking association or trust company