UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for the Trusts listed in Exhibits 1-A and 1-B, <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for Washington Mutual Bank; JPMORGAN CHASE BANK, National Association; and WASHINGTON MUTUAL MORTGAGE SECURITIES CORPORATION, <br><br> Defendants. | Case No. 1:09-cv-1656 (RMC) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF JPMORGAN CHASE BANK, N.A. AND WASHINGTON MUTUAL
MORTGAGE SECURITIES CORPORATION'S MOTION TO DISMISS
AND MOTION FOR PARTIAL SUMMARY JUDGMENT**

Robert A. Sacks (admitted *pro hac vice*)
Stacey R. Friedman (admitted *pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

Brent J. McIntosh (D.C. Bar No. 991470)
Henry C. Quillen (D.C. Bar No. 986686)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
Telephone:  (202) 956-7500
Facsimile:  (202) 293-6330

*Counsel for Defendants
JPMorgan Chase Bank, N.A. and
Washington Mutual Mortgage
Securities Corporation*

November 22, 2010

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ........................................................................... iii

PRELIMINARY STATEMENT ...................................................................... 1

BACKGROUND .............................................................................................. 4

ARGUMENT .................................................................................................... 8

I.   DEUTSCHE BANK'S BREACH OF CONTRACT CLAIMS FAIL TO
     STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ...................... 8

     A.   Deutsche Bank's Notice and Repurchase Claims Must Be
          Dismissed. ................................................................................ 11

          1.   Notice and Repurchase Claims Require Loan-By-Loan
               Assessment, Materiality and Adversity. ......................................... 11

          2.   Deutsche Bank Does Not Identify a Single Loan-Level
               Contractual Provision That Has Actually Been Breached. ............ 13

          3.   Deutsche Bank Does Not Identify a Single Breach of a
               Representation or Warranty That Had a Material and
               Adverse Effect on the Value of a Specified Loan ......................... 18

     B.   The Trustee's Sole Remedy for Breaches of Representations and
          Warranties Is Repurchase of the Mortgage Loans, So Deutsche
          Bank's Claims, Which Seek Only Damages, Must Be Dismissed. ........... 22

     C.   Deutsche Bank's Allegations Regarding Its Access to Loan
          Documents, Even If True, Do Not Support Its Claims. ............................ 23

     D.   For Most of the Agreements on Which Deutsche Bank Relies, the
          Statute of Limitations Bars Its Claims. ....................................................... 25

II.  THE COURT SHOULD ENTER PARTIAL SUMMARY JUDGMENT
     IN JPMC'S FAVOR FINDING THAT THE FDIC RETAINED
     LIABILITY FOR DEUTSCHE BANK'S CLAIMS. .......................................... 26

     A.   There Is No Bona Fide Dispute That the FDIC Retained All
          Mortgage Origination Liabilities Not Having a "Book Value" as of
          WMB's Closing. ........................................................................................... 28

B.      Summary Judgment Prior to Discovery Is Entirely Appropriate
        Because If There Is Any Ambiguity About Which Party Assumed
        the Deutsche Bank Liabilities, Then FDIC Either Retained Those
        Liabilities or Is Obligated to Indemnify JPMC for Those
        Liabilities. ................................................................................................30

CONCLUSION.............................................................................................................33

# TABLE OF AUTHORITIES

*Page(s)*

## CASES

*Abry Partners V, L.P.* v. *F & W Acquisition LLC*,
  891 A.2d 1032 (Del. Ch. 2006).................................................................................23

\* *Anderson* v. *Wachovia Mortgage Corp.*,
  609 F. Supp. 2d 360 (D. Del. 2009), *aff'd* 621 F.3d 261 (3d Cir. 2010) ..............18, 19

\* *Ashcroft* v. *Iqbal*,
  129 S. Ct. 1937 (2009).................................................................................8, 10

*Ass'n of American Medical Colleges* v. *The Princeton Review, Inc.*,
  332 F. Supp. 2d 11 (D.D.C. 2004) .............................................................................16

\* *Atkinson* v. *Mobil Oil Corp.*,
  614 N.Y.S. 2d 36 (N.Y. App. Div. 1994) ...........................................................14, 15

*Badibanga* v. *Howard University Hospital*,
  679 F. Supp. 2d 99 (D.D.C. 2010) ...............................................................................8

*Bastin* v. *Federal National Mortgage Ass'n*,
  104 F.3d 1392 (D.C. Cir. 1997) .................................................................................27

\* *Bell Atlantic Corp.* v. *Twombly*,
  550 U.S. 544 (2007)....................................................................................8, 10

*Central Mortgage Co.* v. *Morgan Stanley Mortgage Capital Holdings LLC*,
  No. 5140-VCS, 2010 WL 3258620 (Del. Ch. Aug. 19, 2010) ....................................17

*Cole* v. *Burns International Security Services*,
  105 F.3d 1465 (D.C. Cir. 1997) .................................................................................31

*DeBlasio* v. *Merrill Lynch & Co.*,
  No. 07-cv-318, 2009 WL 2242605 (S.D.N.Y. July 27, 2009).....................................20

*E.I. du Pont de Nemours & Co.* v. *FDIC*,
  32 F.3d 592 (D.C. Cir. 1994)......................................................................................29

*Exxon Co., U.S.A.* v. *Sofec, Inc.*,
  517 U.S. 830 (1996)....................................................................................................21

*Frontier Oil Corp.* v. *Holly Corp.*,
  No. Civ. A. 20502, 2005 WL 1039027 (Del. Ch. 2005).............................................12

*Greenfield* v. *Philles Records, Inc.*,
    780 N.E.2d 166 (N.Y. 2002)....................................................................29

*H-M Wexford LLC* v. *Encorp, Inc.*,
    832 A.2d 129 (Del. Ch. 2003)...............................................................20

*In re American Home Mortgage, Inc.*,
    379 B.R. 503 (Bankr. D. Del. 2008) ......................................................30

*In re Collins Securities Corp.*,
    998 F.2d 551 (8th Cir. 1993) .................................................................29

*King* v. *Pierce Associates, Inc.*,
    601 F. Supp. 2d 245 (D.D.C. 2009) .........................................................9

*LaSalle Bank National Ass'n* v. *Citicorp Real Estate, Inc.*,
    No. 01-cv-4389, 2002 WL 31729632 (S.D.N.Y. Dec. 5, 2002) ..........18, 19

*Lipton* v. *MCI WorldCom, Inc.*,
    135 F. Supp. 2d 182 (D.D.C. 2001) ....................................................14, 24

*M & T Bank Corp.* v. *Gemstone CDO VII, Ltd.*,
    891 N.Y.S.2d 578 (N.Y. App. Div. 2009) .................................................13

* *Marino* v. *Vunk*,
    835 N.Y.S.2d 47 (N.Y. App. Div. 2007) ......................................13, 18, 19

*Morgan Guaranty Trust Co. of New York* v. *Bay View*
*Franchise Mortgage Acceptance Co.*,
    No. 00-cv-8613, 2002 WL 818082 (S.D.N.Y. Apr. 30, 2002) ...................17

*NACCO Industries, Inc.* v. *Applica Inc.*,
    997 A.2d 1 (Del. Ch. 2009)..............................................................11, 12

*National Market Share, Inc.* v. *Sterling National Bank*,
    392 F.3d 520 (2d Cir. 2004)..............................................................20, 21

*North Carolina Department of Revenue* v. *FDIC*,
    No. 10-cv-505 (RMC), Minute Order (D.D.C. Nov. 5, 2010)..............31, 32

*Oppenheimer & Co.* v. *Oppenheim, Appel, Dixon & Co.*,
    660 N.E.2d 415 (N.Y. 1995)..................................................................11

*Raine* v. *Reed*,
    14 F.3d 280 (5th Cir. 1994) ..................................................................29

*Santopadre* v. *Pelican Homestead & Savings Ass'n*,
   937 F.2d 268 (5th Cir. 1991) ........................................................................29

*Sassano* v. *CIBC World Markets Corp.*,
   948 A.2d 453 (Del. Ch. 2008)........................................................................29

*Shirk* v. *Garrow*,
   505 F. Supp. 2d 169 (D.D.C. 2007) ...........................................................8, 16

\* *Sterling Federal Bank, F.S.B.* v. *Credit Suisse First Boston Corp.*,
   No. 07-C-2922, 2008 WL 4924926 (N.D. Ill. Nov. 14, 2008) ............................22, 23

*Terwilliger* v. *Terwilliger*,
   206 F.3d 240 (2d Cir. 2000)..............................................................................8

*Tsereteli* v. *Residential Asset Securitization Trust*,
   692 F. Supp. 2d 387 (S.D.N.Y. 2010).............................................................15

*U.S. Bank, N.A.* v. *Greenpoint Mortgage Funding, Inc.*,
   No. 600352/09, 2010 WL 841367 (N.Y. Sup. Ct. Mar. 3, 2010) ................................18

*Vernon* v. *RTC*,
   907 F.2d 1101 (11th Cir. 1990) .....................................................................29

*Viola* v. *Fleet Bank of Maine*,
   No. 95-141, 1996 WL 498390 (D. Me. Feb. 27, 1996) .........................................29, 30

\* *VLIW Technology, LLC* v. *Hewlett-Packard Co.*,
   840 A.2d 606 (Del. 2003) .......................................................................8, 9, 21

\* *Wal-Mart Stores, Inc.* v. *AIG Life Insurance Co.*,
   901 A.2d 106 (Del. 2006) ...................................................................13, 14, 15

*Wichita Falls Office Associates* v. *Banc One Corp.*,
   No. 3:90-CV-1301, slip op. (N.D. Tex. Nov. 22, 1993)...............................................29

## STATUTES AND RULES

28 U.S.C. § 2201 ..............................................................................................27

CAL. CIV. PROC. CODE § 337....................................................................................26

DEL. CODE ANN. tit. 10, § 8106 ..............................................................................25

FED. R. CIV. P. 56.................................................................................................29

N.Y. CPLR § 213 ..................................................................................................25

Defendants JPMorgan Chase Bank, N.A. ("JPMC") and Washington Mutual Mortgage Securities Corporation ("WMMSC") respectfully submit this memorandum of points and authorities in support of their motion to dismiss the Amended Complaint of Deutsche Bank National Trust Company ("Deutsche Bank") and motion for partial summary judgment.

## PRELIMINARY STATEMENT

Deutsche Bank purports to be trustee for trusts that own or have owned over half a million individual mortgage loans, each with its own history of origination and performance. The loans were sold into the trusts without recourse, meaning that the loan sales were final and not to be unwound except in specified circumstances. One circumstance the parties expressly contemplated in the sale agreements was that some of the loans did not fulfill representations and warranties the sellers made regarding each loan. The agreements governing the loan sales expressly provide that if a loan breaches a representation or warranty *and* the breach had a material and adverse effect on the value of the loan *and* the breach cannot be cured, there is a "sole and exclusive" specific performance remedy—the loan itself must be bought out of the trust, or "repurchased," by the entity that deposited or sold it into the trust. Absent these showings, there is no repurchase and the sale stands.

Rather than follow this contractually agreed-upon process or limit itself to the sole remedy provided under the Agreements, Deutsche Bank seeks a monetary award equal to repurchase of countless unspecified loans without regard for these contractual limitations. Deutsche Bank's Amended Complaint purportedly pleads breach of contract

by alluding to 1,031 loan-specific representations and warranties and 394 obligations (for a total of 1,425 provisions) that are contained in 179 different agreements that govern 99 "primary trusts" and 28 "secondary trusts"[1] that own or have owned over half a million loans originated over the past 15 years that may (or may not) have been "materially and adversely" affected by breaches that may (or may not) have occurred, and therefore concludes that Defendants—the Federal Deposit Insurance Corporation ("FDIC"), JPMC, WMMSC or some combination thereof—are liable to the trusts for damages of $6 to $10 billion.

While Deutsche Bank uses very large numbers, the most important number here is actually *zero*.  Zero is the number of contractual provisions that Deutsche Bank actually identifies as having been breached with regard to a specific loan.  Zero is the number of breaches Deutsche Bank even tries to show had a material and adverse effect on a specified loan so as to give rise to the contractual right to bring the notice and repurchase claims it seeks to pursue.  And zero is the amount of damages Deutsche Bank can in any event seek to recover on the back of such purported claims, given that the "sole and exclusive" remedy contained in each of the 179 different contracts at issue is loan-by-loan repurchase.

These omissions are not mere pleading defects—though they are certainly that.  These omissions are contractual impediments to Deutsche Bank's claims:  The Deutsche Bank agreements all feature provisions strictly limiting the remedy available

---

[1]     As explained at footnote 6, the trusts that Deutsche Bank refers to as the "primary trusts" are the trusts at issue here.  The number of agreements that govern the trusts is not known for certain, but Deutsche Bank filed with the Court 179 agreements that purport to govern the trusts.

for breaches of representations and warranties about mortgage loans in three critical ways. First, breaches of representations and warranties are not actionable in the aggregate, but only as to individual loans. Second, as to repurchase of individual loans, breaches are not actionable absent a demonstrable material and adverse effect on the value of the particular loan in question. And third, even in the event of a breach that has a material and adverse effect on the value of a particular loan, the breach is not actionable in a damages action. Deutsche Bank's exclusive remedy is repurchase of any offending loan, a contractual limitation that courts in New York and Delaware routinely enforce.

Deutsche Bank's impermissible attempt to end-run these and other contractual and legal limitations should lead to dismissal of the Amended Complaint for four reasons: (1) Deutsche Bank, by its own admission, has not identified even one mortgage loan as to which any Defendant has breached any provision, let alone a breach that had a material and adverse effect on the value of that loan; (2) the remedy being sought, money damages, is contractually impermissible; (3) the separate claim arising from the assertion that Deutsche Bank was denied access to 61 loan files does not give rise to any liability or provide any legal basis for a breach of contract claim on the more than half a million loans at issue in this litigation; and (4) Deutsche Bank has pleaded no facts to suggest its claims comply with the applicable statutes of limitations that bar claims by trusts, some of which were established as early as 1992.

Moreover, not only are these claims improperly pleaded, but any liability for failure to repurchase loans remains with the FDIC. In the Purchase and Assumption Agreement between the JPMC and the FDIC (the "P&A Agreement"), by which JPMC ensured uninterrupted banking service for the millions of customers of Washington

Mutual Bank ("WMB"), JPMC assumed only those liabilities that had a "Book Value" on WMB's "Books and Records" when WMB was closed.  In doing so, JPMC took on billions of dollars in potential liabilities, with no government assistance.  Through this action, Deutsche Bank and the FDIC seek to dramatically increase the scope of the liabilities JPMC assumed, in direct contravention of the explicit terms of the P&A Agreement.  But under well-established law, an unliquidated claim for damages, such as Deutsche Bank's, had no Book Value and was not reflected on WMB's Books and Records.  Thus, JPMC never assumed any liability for Deutsche Bank's claims from the FDIC under the P&A Agreement.  And if for some reason JPMC were deemed to have assumed such liability by some means other than express assumption under the P&A Agreement, then under different provisions of the same agreement the FDIC must indemnify JPMC in full.  For these reasons, which are evident from the plain language of the P&A Agreement, partial summary judgment should be granted on Deutsche Bank's declaratory judgment claim, finding that the FDIC bears all liability to Deutsche Bank— either directly or through an obligation to indemnify JPMC.

## BACKGROUND

This case involves a business in which WMB and its subsidiaries and Deutsche Bank all participated:  securitizing and servicing mortgage loans.  Although every mortgage-backed securitization substantively differs from every other, most share the same general structure.  The following example shows how WMB, its subsidiaries, and Deutsche Bank worked together to create the mortgage-backed securities at issue here.

The first step in the securitization process is the origination of a mortgage loan.  In this example, WMB issues a mortgage to a borrower.  WMB now owns the mortgage loan and thus is entitled to the borrower's future payments of principal and interest.  WMB then agrees to sell the loan, and others like it, to its affiliate, WMMSC.  In some transactions, this agreement is known as a Mortgage Loan Purchase Agreement ("MLPA").  Under an MLPA, the company selling the loans is the "Seller," and the company purchasing the loans is the "Purchaser."  And the Seller (here WMB) makes representations and warranties to the buyer (here WMMSC) regarding various aspects of the loans being sold.

Next, WMMSC and Deutsche Bank enter into a Pooling and Servicing Agreement ("PSA").  (*See*, *e.g.*, WA05A1,[2] PSA (Docket Item 43-14).)  Under the PSA, WMMSC sells the mortgage loans to a trust for which Deutsche Bank is the Trustee.  (*Id.* § 2.04.)  In this capacity, WMMSC is known as the Depositor.  As Depositor, WMMSC similarly makes a variety of representations and warranties specific to each loan it is selling.  For example, "[a]s of the Closing Date, there is no late assessment for delinquent taxes outstanding against any Mortgaged Property."  (*Id.* § 2.08(v).)[3]  To protect a variety of accounting and tax benefits in connection with the sale, the loans are sold "without recourse."  (*Id.* § 2.04.)  Because the sale is non-recourse, the Depositor cannot at its

---

[2]     Abbreviations such as "WA05A1" refer to individual trusts as listed in Exhibit 1A to the Amended Complaint and in Deutsche Bank's filings of the relevant agreements with the Court.  (Docket Items 34-44.)

[3]     In some transactions, including the "Long Beach" transactions listed in Exhibit 1A to the Amended Complaint, these representations and warranties are made in the MLPA by the Seller.  For consistency, JPMC will refer to these representations and warranties as the Seller's, although who has the ultimate obligation varies among the agreements.

discretion remove the loans from the trust, even if it would be profitable to do so. Reciprocally, investors cannot demand that loans be repurchased, except in specified circumstances.

The terms of the PSAs contemplate the possibility that some of the mortgage loans sold to the trust may be found to breach the Seller's representations and warranties, and that some of these breaches may materially and adversely affect the value of a particular mortgage loan or the interests of the trust in that loan.  (*Id*. § 2.08.)  In general, a party that discovers such a breach must notify the other parties.  (*Id*.)  Once such a material and adverse breach is discovered and any necessary notice is given, the PSA provides for a very specific—and very *loan*-specific—process for remedying the breach.  (*Id*.)  As to any particular mortgage loan that breaches a representation or warranty in a manner that has a material and adverse effect on the value of the loan, all of the PSAs provide for three—and only three—remedies:  The Seller can (1) cure the breach, (2) substitute another mortgage loan into the trust in place of the breaching loan, or (3) repurchase the breaching loan from the trust.  (*Id*.)

All of the PSAs are explicit that these are the sole and exclusive remedies for breaches of representations and warranties.  At some point in time—usually two years after closing of the securitization—the option of substituting a different mortgage is no longer available, again to abide by certain accounting rules and benefit from certain tax treatment.  (*Id*. § 2.07.)  Thus, in instances in which the Seller is unable to cure the defect in the loan (often by providing missing documentation), it is correct to say that, after the substitution period has passed, repurchase is the lone remaining remedy for breaches of representations and warranties.  (*Id*. § 2.08.)

While this structure is consistent from PSA to PSA, other terms of the PSAs differ. For example, in some PSAs, the obligation to repurchase a loan arises when any party notifies the Seller (or Depositor) of a breach that has a material and adverse effect on the value of the underlying loan. (*E.g.*, *id.*) In other PSAs, only notice by the Trustee will trigger the repurchase obligation. (*E.g.*, LB0602, PSA § 2.03(a) (Docket Item 39-25).)

In 2007 and 2008, a nationwide collapse in the housing market, especially for subprime mortgages (which were included in many of the securitizations at issue here), led to losses for the trusts as borrowers became unable to repay their mortgage loans. On September 25, 2008, WMB was closed by federal regulators and placed into receivership with the FDIC. On the same day, the FDIC sold virtually all of WMB's assets and certain of its liabilities to JPMC pursuant to the P&A Agreement. (Amended Complaint Ex. 2 (P&A Agreement) §§ 2.1, 3.1.) This transaction allowed WMB's branches to continue serving the public, including its millions of depositors, without any interruption from WMB's failure.

On December 30, 2008, Deutsche Bank filed a proof of claim with the FDIC as receiver for WMB, claiming that WMB and its affiliates breached PSAs by, among other things, failing to notify Deutsche Bank of breaches of the Seller's representations and warranties and to repurchase breaching mortgage loans. (Amended Complaint Ex. 3.) The FDIC implicitly denied Deutsche Bank's proof of claim by declining to act on it, and Deutsche Bank filed a Complaint against the FDIC, making arguments similar to those in its proof of claim. (Docket Item 1.) After the FDIC moved to dismiss the Complaint on the grounds that JPMC had assumed liability for these claims

under the P&A Agreement and that the Complaint failed to plead sufficiently breaches of contract, Deutsche Bank filed its Amended Complaint, naming JPMC and WMMSC as additional defendants.  (Docket Item 32.)

## ARGUMENT

## I.     DEUTSCHE BANK'S BREACH OF CONTRACT CLAIMS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Generally, Deutsche Bank's breach of contract claim may be dismissed because the Amended Complaint does not "contain sufficient factual matter, accepted as true, to state a claim for relief that is 'plausible on its face.'"  *Badibanga* v. *Howard Univ. Hosp.*, 679 F. Supp. 2d 99, 101 (D.D.C. 2010) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  Indeed, the Amended Complaint is insufficient "to understand whether a valid claim is alleged and if so what it is."  *Shirk* v. *Garrow*, 505 F. Supp. 2d 169, 172 (D.D.C. 2007) (internal quotation marks and citation omitted).[4]

More specifically, to state a claim for breach of contract under New York law, a plaintiff must timely allege: (1) a contract; (2) performance of the contract by one party; (3) breach of the contract by the other party; and (4) resultant harm to the plaintiff.  *Terwilliger* v. *Terwilliger*, 206 F.3d 240, 245-46 (2d Cir. 2000).  Under Delaware law, a plaintiff must similarly allege, before the statute of limitations has expired: (1) the existence of the contract; (2) the breach of an obligation imposed by that contract; and (3) resultant harm to the plaintiff.  *VLIW Tech., LLC* v. *Hewlett-Packard Co.*, 840 A.2d

---

[4]     Although for purposes of such a motion, the factual allegations in the Amended Complaint are assumed to be true, the facts alleged here are not sufficient to the extent they fail "to raise a right to relief above the speculative level."  *Badibanga*, 679 F. Supp. 2d at 101 (quoting *Twombly*, 550 U.S. at 555).  Likewise, the pleadings that "are no more than conclusions, [including legal conclusions,] are not entitled to the assumption of truth."  *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1950 (2009).

606, 612 (Del. 2003).[5]  Here, Deutsche Bank basically asserts two breach of contract

claims (a notice/repurchase claim and an access claim), both of which are legally

untenable and, to a large extent, time barred.

      *First*, Deutsche Bank assumes that Defendants must have breached some

of the "Representations and Warranties" regarding the mortgage loans, "which breaches

had a material and adverse effect on the value of the mortgage loans in the Trusts or the

interests of the Trusts therein."  (Amended Complaint ¶ 81.)  However, the Amended

Complaint does not identify any loan that it alleges breached any representation and

warranty in any PSA.  Rather, Deutsche Bank simply lists 1,425 contractual provisions

spread across the 179 different Agreements that *might* (or might not) have been violated

as to any of the more than half a million loans contained in the trusts.[6]  Deutsche Bank

does not identify a single loan as to which any representation or warranty has been

breached; a single loan as to which such a breach had a material and adverse effect on the

value of the loan; or a single loan as to which Defendants have failed to comply with an

extant notice or repurchase or cure obligation.  Deutsche Bank's speculation that there

---

[5]    New York or Delaware law governs all but three of the Agreements.  The Pooling and Servicing Agreements for the trusts listed as WA0107, WA01A3 and CO9201 in Exhibit 1A to the Amended Complaint are governed by California law.

[6]    Some of these Agreements govern what Deutsche Bank calls the "Secondary Trusts," which were allegedly also "damaged because their performance is dependent, in whole or in part, on the performance of the Primary Trusts."  (Amended Complaint ¶ 85; *see also id.* ¶ 3.)  But the Amended Complaint does not begin to explain this relationship or cite a single relevant provision governing the Secondary Trusts.  Because there is no way to assess on the face of the Amended Complaint the role or rights or assertions of the Secondary Trusts and Defendants should not have to guess at their potential liability, all of Deutsche Bank's claims relating to the Secondary Trusts should be dismissed.  *King* v. *Pierce Assocs., Inc.*, 601 F. Supp. 2d 245, 248 (D.D.C. 2009) (observing that vague and general allegations do not raise a right to relief above the speculative level, which is insufficient to state a claim).

must have been a breach of contract—notwithstanding its failure to supports its guess with factual allegations—is not entitled to the presumption of truth.  *See Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1950 (2009).  Deutsche Bank is speculating, not pleading—a tactic that cannot survive a motion to dismiss.  *See Twombly*, 550 U.S. at 555.

*Second*, with regard to the repurchase claim, Deutsche Bank seeks money damages of $6 to $10 billion.  (Amended Complaint ¶ 85.)  The Agreements, however, all contain a provision stating that repurchase of individual mortgage loans on a loan-by-loan basis is the sole and exclusive remedy for breaches of representations and warranties.  Because Deutsche Bank seeks a remedy to which it is not entitled, it has failed to state a claim upon which relief can be granted.

*Third*, Deutsche Bank asserts a separate claim for breach of contract arising from the allegation that it was denied access to loan files for 61 loans.  (Amended Complaint ¶¶ 81-85.)  Notably, these 61 loans are contained in only three of the 99 trusts Deutsche Bank lists, and so this claim is not even raised as to the tens of thousands of other loans in those three trusts, or as to *any* loan in the 96 other trusts.  And while Deutsche Bank posits that, because of this limited access claim, it should be excused from its failure to plead a valid repurchase claim with regard to any of the more than half a million other loans potentially implicated by its Complaint, there is no legal basis for this request.  Indeed, the access claim cannot be the basis for separate recovery because the denial of access does not give rise to independent harm to the trusts.

*Fourth*, all claims based on mortgage loans in 74 of the 99 trusts should be dismissed as time barred.  Most of the representations and warranties that Deutsche Bank claims to have been breached were made as of a date well outside the applicable statute

of limitations period—three years in Delaware, six years in New York. Some were made as long ago as 1992, and nothing in the pleadings provides a legal basis for disregarding these limitations periods.

A.    **Deutsche Bank's Notice and Repurchase Claims Must Be Dismissed.**

1.    **Notice and Repurchase Claims Require Loan-By-Loan Assessment, Materiality and Adversity.**

The Agreements at issue were entered into by sophisticated parties, and so they must be enforced as written to effect the allocation of risks and benefits decided upon by the parties. Any assessment of Deutsche Bank's contract claim should therefore start with the limitations of those Agreements. *See Oppenheimer & Co.* v. *Oppenheim, Appel, Dixon & Co.*, 660 N.E.2d 415, 421 (N.Y. 1995); *NACCO Indus., Inc.* v. *Applica Inc.*, 997 A.2d 1, 35 (Del. Ch. 2009). With respect to Deutsche Bank's notice and repurchase claims, the Agreements were written to expressly limit when such claims could be pursued. Three fundamental limitations appear in some form in each of the Agreements:

> 1.  **Notice** is required only "[u]pon discovery . . . of the breach by the Seller of any representation, warranty or covenant under the Mortgage Loan Purchase Agreement in respect of any Mortgage Loan which *materially and adversely affects* the value of such Mortgage Loan or the interest therein of the Certificateholders . . . ."

> 2.  **Repurchase** of a loan is required only if, 90 days after the Seller is on notice of a breach that "*materially and adversely affects* the value of such Mortgage Loan or the interest therein of the Certificateholders," the breach has not been cured.[7]

---

[7]    For the breaches that Deutsche Bank alleges, substitution is no longer available, leaving cure or repurchase as Deutsche Bank's sole remedies. The Agreements prohibit substitution of mortgage loans beginning two years after the closing of the securitization. (*See*, *e.g.*, LB0602, PSA §§ 2.03(d), 10.01(b); WA05A1, PSA § 2.07.)

> 3. "[T]he obligation of the Seller to cure or to repurchase . . . any Mortgage Loan as to which . . . such a breach has occurred and is continuing shall constitute the **sole remedy** respecting such . . . breach available to the Certificateholders, the Trustee on behalf of the Certificateholders and the NIMS Insurer."

(*E.g.*, LB0602, PSA § 2.03(a) (emphasis added).)

By definition, the representations and warranties in the Agreements can be true or false only as to particular loans.  (*E.g.*, LB0602, MLPA § 6 ("The Seller hereby represents and warrants to the Purchaser, that as of the Closing Date with respect to *each* Mortgage Loan . . ." (emphasis added)).)  As a result, the notice and repurchase claims are thus loan-level claims, and the Agreements simply contain no provision for aggregated or generalized treatment of loans.

By express agreement, not every alleged breach of a representation or warranty gives rise to a notice or repurchase obligation.  Rather, the obligation to give notice or cure or repurchase arises *only* when the breach "materially and adversely affects" the value of the underlying loan.[8]  (LB0602, PSA § 2.03(a); LB0602, MLPA § 7(a); WA05A1, PSA § 2.08.)  Only then, after establishing that a breach that had a material and adverse effect on a specified loan has gone uncured, does the obligation to "repurchase such Mortgage Loan" even arise.  (LB0602, PSA § 2.03(a).)  And that exclusive repurchase remedy—a remedy enforced by the courts—is the Trustee's "sole remedy."  (*Id.*)  *See infra* Section I.B.

---

[8]  Merger and acquisition agreements often use the concept of a "material adverse effect" to allocate risk among the parties, much as the Pooling and Servicing Agreements do here.  When a remedy depends on a material and adverse effect, a breach of a representation or warranty "accomplishes nothing by itself."  *Frontier Oil Corp.* v. *Holly Corp.*, No. Civ. A. 20502, 2005 WL 1039027, at *35 (Del. Ch. 2005).  The breach *must* have a material and adverse effect to support a cause of action.  *Id.*

Thus, Deutsche Bank's pleading and proof must demonstrate loan-specific breaches of representations and warranties, loan-specific materiality, and loan-specific adversity to merit the sole and exclusive remedy of repurchase of the allegedly offending loan.  These essential elements for any notice or repurchase claim stand in stark contrast to Deutsche Bank's blanket pleadings, which fail to meet any of these loan-level contractual requirements.

**2.      Deutsche Bank Does Not Identify a Single Loan-Level Contractual Provision That Has Actually Been Breached.**

Deutsche Bank has not pleaded a single actionable breach of the Agreements by merely listing more than one thousand provisions and suggesting that each of them may or may not have been breached.  *See Marino* v. *Vunk*, 835 N.Y.S.2d 47, 49 (N.Y. App. Div. 2007) ("Vague and conclusory allegations are insufficient to sustain a breach of contract cause of action."); *Wal-Mart Stores, Inc.* v. *AIG Life Ins. Co.*, 901 A.2d 106, 116 (Del. 2006) (affirming the dismissal of a breach of contract claim where the operative pleading "[did] not identify any express contractual obligation that was breached").  Deutsche Bank's approach is unsustainable because it makes it impossible to identify the supposed breaches on which Plaintiff is purportedly relying. *M & T Bank Corp.* v. *Gemstone CDO VII, Ltd.*, 891 N.Y.S.2d 578, 581 (N.Y. App. Div. 2009) (dismissing breach of contract claims against Deutsche Bank Securities, Inc. due to plaintiff's failure to set forth "the provisions of the contract upon which the claim is based." (internal quotation marks omitted)).

Deutsche Bank's approach is particularly problematic here because it simply lists the representations, warranties and obligations *from one deal* and represents to the Court through a chart that more than one thousand provisions from 98 other deals

- 13 -

are identical.  That is incorrect; Deutsche Bank's "allegations" regarding what provisions may have been breached are rife with vagueness and erroneous suppositions.[9]  For example:

> •  *Deutsche Bank at times completely misidentifies the obligations at issue.*  In its list of obligations under the Agreements (Exhibit 7 to the Amended Complaint), Deutsche Bank identifies Section 2.04(b) of the Pooling and Servicing Agreement for nearly every Long Beach trust as the "Notice Obligation."  But that provision has nothing to do with breaches of representations and warranties regarding loan files.  Instead, it describes the Master Servicer's obligation to give notice if it does not have the legal capacity to fulfill its obligations.  (*E.g.*, LB0602, PSA § 2.04(b).)  The failure to properly identify the terms that are alleged to have been breached is grounds for dismissal.  *See Atkinson* v. *Mobil Oil Corp.*, 614 N.Y.S. 2d 36, 37 (N.Y. App. Div. 1994) ("In order to plead a breach of contract cause of action, a complaint must allege the provisions of the contract upon which the claim is based."); *Wal-Mart Stores*, 901 A.2d at 116 (same).

> •  *Deutsche Bank at other times ignores meaningful limitations on particular representations and warranties.*  For example, Deutsche Bank uses as an exemplary representation a provision stating that "The Loan-to-Value Ratio for each Mortgage Loan was no greater than 100% at the time of origination."  (Amended Complaint ¶ 46(j).)  But in certain of the Agreements, this same representation is limited

---

[9]      On a motion to dismiss, the Court can rely on documents incorporated into the pleadings, *see Lipton* v. *MCI WorldCom, Inc.*, 135 F. Supp. 2d 182, 186 (D.D.C. 2001), and thus can reject assertions Deutsche Bank makes that are inconsistent with the documents Deutsche Bank purports to characterize.

so that the Seller is contractually entitled to rely on the appraisal of the property: "Based upon an appraisal of the Mortgaged Property securing each Mortgage Loan . . . no [Mortgage Loan] had a current Loan-to-Value ratio greater than 95%." (WA02A2, PSA § 2.08(xxv) (Docket Item 42-7).)[10]  Because there are no allegations in the Amended Complaint that come close to establishing a breach of this—or any other—representation that is limited to the Seller's knowledge or understanding with regard to a particular loan at the time of origination, dismissal is appropriate.  *See Atkinson*, 614 N.Y.S. 2d at 37; *Wal-Mart Stores*, 901 A.2d at 116.

• *Deutsche Bank does not tie any of its purported factual allegations temporally or substantively to the loans at issue.*  While a significant portion of the Amended Complaint is dedicated to allegations of generalized misconduct at Washington Mutual in 2007 and 2008, no effort is made to explain why those allegations would be relevant to representations and warranties made before 2007 or why the Court should or could assume that such allegations necessarily connote a breach of any representations and warranties that were made for the particular loans at issue here.  And even as to 2007 and 2008, Deutsche Bank's allegations are insufficient.  For example, Deutsche Bank asserts that alleged problems with underwriting may have resulted in loans being originated that did not comply with the underwriting guidelines and then speculates that such problems would have resulted in breaches to representations and warranties.  (Amended Complaint ¶ 70.)  These vague allegations do not establish any loan-specific

---

[10]  *See Tsereteli* v. *Residential Asset Securitization Trust*, 692 F. Supp. 2d 387, 393 (S.D.N.Y. 2010) ("[N]either an appraisal nor a judgment that a property's value supports a particular loan amount is a statement of fact.  Each is instead a subjective opinion based on the particular methods and assumptions the appraiser uses.").

breach, particularly where the parties expressly recognized that "[i]t is expected that a substantial number of the Mortgage Loans to be included in the Mortgage Pool will represent exceptions to the underwriting guidelines."  (LB05W02, Prospectus Supplement (Exhibit A to the accompanying declaration of Brent J. McIntosh ("McIntosh Declaration"), at S-65); *see also* LB0602, Prospectus Supplement (McIntosh Declaration Ex. B), at S-39.)[11]  Without more specificity, Defendants cannot adequately defend the claims against them, and the Amended Complaint cannot stand.  *Shirk* v. *Garrow*, 505 F. Supp. 2d 169, 172 (D.D.C. 2007) (finding that dismissal is appropriate if the defendant cannot "understand whether a valid claim is alleged and if so what it is").

> •      *Deutsche Bank hides—and has defaulted on—its own obligation to give notice prior to repurchase obligations arising.*  Under many of the Pooling and Servicing Agreements at issue here, the Seller's repurchase obligation only arises 90 days after the *Trustee's* delivery of notice of breaches and the Seller is given an opportunity to cure.  (*E.g.*, LB0602, PSA § 2.03(a).)[12]  There is a good reason for this requirement, with which Deutsche Bank failed to comply:  The Trustee should have found an actual breach,

---

[11]      These prospectuses were issued as part of the underlying securitizations, filed publicly with the Securities and Exchange Commission and clearly reflect the parties' intent as to the underwriting exceptions permitted in the PSAs.  The Court may consider these public documents, even on a motion to dismiss.  *Ass'n of Am. Med. Colls.* v. *Princeton Review, Inc.*, 332 F. Supp. 2d 11, 15 (D.D.C. 2004) ("In evaluating a Rule 12(b)(6) motion to dismiss, the court is limited to considering [*inter alia*] . . . matters of public record . . . ." (citations omitted)).

[12]      This provision is common among the Pooling and Servicing Agreements governing the Long Beach trusts (numbered 1-21, 23-26, and 28-42 in Exhibit 1A to the Amended Complaint).  In other Agreements, the repurchase obligation also arises when the Seller discovers a breach or is notified of the breach by the Servicer.  (*E.g.*, WA05A1, PSA § 2.08.)  For the reasons discussed above in Section I.A.1, Deutsche Bank has not made any allegations suggesting that any such breach existed, much less that the breach was known to the Seller or Servicer.

and the Seller should have an opportunity to address the alleged breach before anyone is hauled into court. Accordingly, when interpreting agreements similar to those at issue here, multiple courts have held that parties must follow the contractually agreed notice process to trigger a repurchase obligation. In *Morgan Guaranty Trust Co. of New York* v. *Bay View Franchise Mortgage Acceptance Co.*, No. 00-cv-8613, 2002 WL 818082 (S.D.N.Y. Apr. 30, 2002), for example, the court explained that notice is required because "[o]therwise, there would be 'an incentive for [trustees] to litigate before knowing for certain that they have suffered any injury.'" *Id.* at *5 (citing *Vista Co.* v. *Columbia Pictures Indus., Inc.*, 725 F. Supp. 1286, 1295 (S.D.N.Y.1989)). Accordingly, the court held that the trustee's failure to give prompt notice of a breach of representations and warranties meant that "it cannot now hold [the defendant] accountable for this breach." *Id.* at *10. Likewise, the court in *Central Mortgage Co.* v. *Morgan Stanley Mortgage Capital Holdings LLC* dismissed claims that a seller breached an agreement similar to those at issue here because the plaintiff had not fulfilled its notice obligations by "simply list[ing] the contract sections that were, for some unspecified reason, supposedly violated." No. 5140-VCS, 2010 WL 3258620, at *7 (Del. Ch. Aug. 19, 2010).

Although each of these examples underscores why Deutsche Bank's failure to identify a single contractual representation or warranty as actually having been breached should result in dismissal of the Amended Complaint, these are not ad hoc pleading problems. These problems evidence that Deutsche Bank's approach to its purported contract claim is untenable given the actual terms of the Agreements. The Agreements require loan-by-loan assessment of breaches and remedies. Sophisticated

parties, such as Deutsche Bank, know how to draft contracts that provide pool-wide remedies if those are the terms the parties agree to.  In *U.S. Bank, N.A.* v. *Greenpoint Mortgage Funding, Inc.*, No. 600352/09, 2010 WL 841367 (N.Y. Sup. Ct. Mar. 3, 2010), for example, the agreement provided that in the event of a breach of certain representations and warranties, "*all of the Revolving Credit Loans* shall, at the Purchaser's option, be repurchased by the Seller."  *Id.* at *7.  Here, however, the parties did not contract for such a generalized remedy, and the absence of such a remedy must be given effect.  Deutsche Bank's generic allegations fall far short of meeting the contractual requirements of the Agreements in this case, requiring that its notice and repurchase claims be dismissed.

> ### 3.     Deutsche Bank Does Not Identify a Single Breach of a Representation or Warranty That Had a Material and Adverse Effect on the Value of a Specified Loan.

Deutsche Bank admits that it does *not* "specifically identify particular mortgage loans with respect to which there have been . . . breaches of particular Representations and Warranties" that have "had a material and adverse effect on the value of the loans or the interests of the Trusts therein."  (Amended Complaint ¶¶ 66, 65.)  No claim for breach of the notice and repurchase obligations can survive this admission.  *See, e.g.*, *Anderson* v. *Wachovia Mortgage Corp.*, 609 F. Supp. 2d 360, 366 (D. Del. 2009) (dismissing breach of contract claims under Delaware law where plaintiffs "fail[ed] to identify an express contract provision that was breached"), *aff'd* 621 F.3d 261, 280 (3d Cir. 2010); *Marino*, 835 N.Y.S.2d at 49 ("Vague and conclusory allegations are insufficient to sustain a breach of contract cause of action."); *LaSalle Bank Nat'l Ass'n* v. *Citicorp Real Estate, Inc.*, No. 01-cv-4389, 2002 WL 31729632 (S.D.N.Y. Dec.

5, 2002) (holding that "to state a claim, LaSalle must allege both a breach of a representation or warranty set forth in PSA § 2.05(c) and a material and adverse effect caused by the breach").

Nonetheless, Deutsche Bank tries to plead around this basic failure by first pointing to alleged problems with the mortgage industry and origination at Washington Mutual and then asserting "there is a reasonable basis to conclude that many of the mortgage loans included in the Trusts do not comply with the Representations and Warranties, and that WaMu breached the Representations and Warranties, which breaches had a material and adverse effect on the value of the loans or the interests of the Trusts therein." (*Id*. ¶ 66.) Deutsche Bank's "reasonable basis" is supposition and speculation, too tenuous to sustain a plausible claim against Defendants, and a somewhat cynical effort to generally plead around the contractual requirements outlined above.

To begin, this is another example of Deutsche Bank impermissibly attempting to taint over half a million individual mortgage loans—for which the Agreements require loan-specific assessments and remedies—by listing very broad, non-loan-specific allegations regarding origination practices, primarily at Long Beach Mortgage. (Amended Complaint ¶¶ 71-80.) Deutsche Bank offers no actual connection between these allegations and any particular mortgage loan or securitization deal, instead relying on bald speculation that there may be a connection. Absent the pleading of loan-specific breaches, materiality and adversity, Deutsche Bank has failed to plead that any Defendant had any notice or repurchase obligation, much less breached one. *See Anderson*, 609 F. Supp. 2d at 366; *Marino*, 835 N.Y.S.2d at 49.

Even if the Agreements did not have these loan-specific requirements that make Deutsche Bank's blanket allegations legally ineffective, the allegations of generalized "bad acts" would not be sustainable as a matter of law.  Notably, these allegations are based entirely on statements of, and documents obtained by, the Senate Permanent Subcommittee on Investigations (the "Subcommittee")—but what Deutsche Bank fails to mention is that the Subcommittee did not subpoena loan files or documents concerning specific loans.[13]  Anyhow, to state a claim for a breach of contract, it is not enough to malign a defendant as a bad actor; a plaintiff must explain how the defendant's acts constituted a specific breach.  *See DeBlasio* v. *Merrill Lynch & Co.*, No. 07-cv-318, 2009 WL 2242605, at *37-38 (S.D.N.Y. July 27, 2009) (holding that banks' alleged misuse of brokerage clients' funds to generate profits for the banks did not constitute a breach of a specific contract); *see H-M Wexford LLC* v. *Encorp, Inc.*, 832 A.2d 129, 140-42 (Del. Ch. 2003) (holding that misrepresentations in a private placement memorandum did not constitute a breach of a purchase agreement that did not incorporate the memorandum).  Deutsche Bank has failed to make the necessary showing here.

In addition, Deutsche Bank must specify how the alleged breach caused the alleged harm.  By requiring that a breach of representations and warranties "materially and adversely" affect the value of a mortgage loan, the parties required that Deutsche Bank prove causation on a loan-by-loan basis.  But even without such a provision in the contract, causation would still be essential to Deutsche Bank's claim for breach of contract.  *Nat'l Mkt. Share, Inc.* v. *Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d

---

[13]      A copy of the Subcommittee's subpoena is attached to the McIntosh Declaration as Exhibit C.

Cir. 2004) (stating that under New York law, "[c]ausation is an essential element of damages in a breach of contract action; and, as in tort, a plaintiff must prove that a defendant's breach *directly and proximately caused* his or her damages"); *VLIW Tech.*, 840 A.2d at 612 (holding that a complaint must demonstrate "the resultant damage to the plaintiff").  The requirement of proximate causation is well-established:

> Although the principles of legal causation sometimes receive labels in contract analysis different from the "proximate causation" label most frequently employed in tort analysis, these principles nevertheless exist to restrict liability in contract as well.  Indeed, the requirement of foreseeability may be more stringent in the context of contract liability than it is in the context of tort liability.

*Exxon Co., U.S.A.* v. *Sofec, Inc.*, 517 U.S. 830, 839-40 (1996).

Here, Deutsche Bank fails to plead that its losses were caused by breaches of representations and warranties as opposed to other factors, such as the nationwide mortgage crisis.  It alleges that "after September 25, 2008, the Trusts have experienced a substantial increase in delinquencies giving rise to foreclosures or other remedial activity by WaMu as Servicer, as well as an increase in realized losses to the Trusts" (Amended Complaint ¶ 80)—but this could be said of virtually any trust holding residential mortgages anywhere in the United States.  Nothing in this allegation connects facts alleged in Deutsche Bank's Amended Complaint to the performance of any particular loan in Deutsche Bank's trusts.  As the Court is aware, the collapse of the housing bubble was a market-wide phenomenon.  That event, which based upon the generalized allegations of the Amended Complaint was as likely the cause of Deutsche Bank's alleged harm as any other, does not establish the causation required to support the breach of contract claims Deutsche Bank seeks to plead.

**B.**     **The Trustee's Sole Remedy for Breaches of Representations and Warranties Is Repurchase of the Mortgage Loans, So Deutsche Bank's Claims, Which Seek Only Damages, Must Be Dismissed.**

Under the Agreements, Deutsche Bank's sole remedy for breaches of representations and warranties is the repurchase of affected mortgage loans. Instead of seeking this remedy, Deutsche Bank seeks a windfall of monetary damages, which—notwithstanding its failure to identify any breach of any representation and warranty by any loan that had a material and adverse effect on that loan's value—Deutsche Bank generally ballparks at somewhere between "$6 *billion* to $10 *billion*." (Amended Complaint ¶ 85 (emphasis added).)[14] Such claims violate the "sole remedy" provisions of the Agreements and thus seek to overturn the distribution of risks for which the parties to those Agreements contracted.[15] Because Deutsche Bank seeks monetary damages, to which is it not entitled, it has failed to state a claim upon which relief can be granted.

This scenario was squarely presented in *Sterling Federal Bank, F.S.B.* v. *Credit Suisse First Boston Corp.*, No. 07-C-2922, 2008 WL 4924926 (N.D. Ill. Nov. 14, 2008), in which an investor in a mortgage-backed security sought damages from DLJ Mortgage Capital, which had sold loans to the underlying trust. The Pooling and Servicing Agreement there, like those here, provided that repurchase of a breaching mortgage loan was the sole remedy for such a claim if the loan could not be substituted or

---

[14]     The Amended Complaint makes clear that Deutsche Bank also seeks consequential damages based on Defendants' alleged breach of their repurchase obligation. (Amended Complaint ¶¶ 85, 95, 101.)

[15]     These risks were well understood by all parties. In some Prospectus Supplements, the first risk factor listed is that "Mortgage Loans Originated under the Sponsor's Underwriting Guidelines Carry a Risk of High Delinquencies." (*E.g.*, LB0602, Prospectus Supplement (McIntosh Declaration Ex. B), at S-11.)

the breach cured. *See id.* at *12. DLJ argued that the result of this "sole remedy"

provision was that no damages were available, only specific performance of the

repurchase obligation. *Id.* The court agreed and dismissed the complaint: "The Court

recognizes that Plaintiff has pled DLJ's breach of duties; however, Plaintiff's complaint

alleges only its entitlement to remedial (money) damages and not specific performance.

Accordingly, Plaintiff has not properly pled its entitlement to the relief requested on this

claim. Therefore, the Court grants Defendants' motion [to dismiss] . . . ." *Id.* As the

court pointed out, "New York courts enforce contractual limitations on remedies." *Id.*

(citing *Mom's Bagels of N.Y., Inc.* v. *Sig Greenbaum, Inc.*, 559 N.Y.S.2d 883, 885 (N.Y.

App. Div. 1990)). The same is true under Delaware law. *See Abry Partners V, L.P.* v.

*F & W Acquisition LLC*, 891 A.2d 1032, 1035 (Del. Ch. 2006). Because Deutsche Bank

has no right to the remedy it seeks, its claims must be dismissed.

## C. Deutsche Bank's Allegations Regarding Its Access to Loan Documents, Even If True, Do Not Support Its Claims.

Deutsche Bank also alleges that Defendants have breached their

obligations to provide Deutsche Bank with access to loan documents. Deutsche Bank has

not alleged harm from these breaches separate from the harm caused by the alleged

failure to repurchase faulty loans. Instead, Deutsche Bank is merely alleging that

Defendants' failure to provide access has prevented it from enforcing Defendants'

purported repurchase obligations. This claim also fails in its own right.

Deutsche Bank's allegations that it has been denied access to mortgage

loan documents, even if assumed to be true, do not excuse its failure to identify a single

breach of the Agreements. Despite its reference to "numerous requests" for access to

loan files (Amended Complaint ¶ 82), Deutsche Bank does not allege that it has sought

access to more than a tiny group of loans.  The requests for access that Deutsche Bank

cites (*id*.) refer to just 61 loans in only three trusts (*see* McIntosh Declaration

Exs. D-F)—a minuscule fraction of the more than half a million loans owned by the

underlying trusts.[16]

> Moreover, the timing of the requests for access to loan files shows that

Deutsche Bank has failed to make a good-faith effort to identify or specify any breaches

of the Agreements.  The requests that Deutsche Bank references were all made in June

and August of 2010—nearly two years after the proof of claim in which Deutsche Bank

first raised its supposed repurchase claims against the FDIC.  Because the allegedly

unanswered requests all postdate the assertion by Deutsche Bank of the claims being

alleged in this action, a failure to respond to those requests could not plausibly be the

cause of Deutsche Bank's failure to plead loan-by-loan breaches as legally required.

> In fact, the evolution of Deutsche Bank's claims evidences no real attempt

by Deutsche Bank to determine what repurchase obligations might actually exist.  In its

now-two-year-old proof of claim filed with the FDIC, Deutsche Bank alleged that "the

Trusts have claims in respect to breaches of Representations and Warranties, in the

estimated range of $6.764 billion to $10.146 billion."  (Amended Complaint Ex. 3,

Attachment A ¶ 11.)  When it filed its initial Complaint nearly eight months later,

Deutsche Bank had had ample time to investigate and refine its claims.  But Deutsche

Bank does not allege that it made any requests for access to documents during this period

---

[16]     Because Deutsche Bank refers to its requests for access in its Amended Complaint and because those requests are central to its claims, the Court may consider those documents without converting this Motion to Dismiss into a Motion for Summary Judgment.  *See Lipton*, 135 F. Supp. 2d at 186.

or investigated its claims any further.  In fact, its claim for damages was essentially the same:  "$6 billion to $10 billion or more."  (Complaint ¶ 34 (Docket Item 1).)

Now, more than a year later, Deutsche Bank's claim for damages remains the same:  "$6 billion to $10 billion, with such losses continuing to accrue."  (Amended Complaint ¶ 85.)  This consistency renders it implausible for Deutsche Bank to allege that the absence of access to files of 61 loans—requested for the first time *after* the filing of its original complaint and *just before* the filing of its Amended Complaint—is the reason for its failure to comply with the contractually agreed-upon procedures for determining when loans are in fact subject to repurchase.

> **D.  For Most of the Agreements on Which Deutsche Bank Relies, the Statute of Limitations Bars Its Claims.**

On the face of Deutsche Bank's Amended Complaint, the statute of limitations bars Deutsche Bank's claims under most of the Agreements.  In Delaware, the statute of limitations for a breach of contract action is three years.  *See* DEL. CODE ANN. tit. 10, § 8106.  In New York, the applicable statute of limitations is six years.  *See* N.Y. CPLR § 213.  All of Deutsche Bank's claims are based on representations and warranties that were made at the time of securitization and would be barred if not brought within the applicable time period.  (*See*, *e.g*., LB0602, MLPA § 6 ("The Seller hereby represents and warrants to the Purchaser, that *as of the Closing Date* with respect to each Mortgage Loan . . ." (emphasis added)).)

Deutsche Bank has alleged not one breach or material and adverse effect that occurred after these securitizations closed.  Applying these limitations periods to the pleadings, all claims based on mortgage loans in 74 of the 99 trusts should be dismissed as time barred.

• All but the very oldest Pooling and Servicing Agreements for the Washington Mutual trusts (those beginning with "WA" in Exhibit 1A to the Amended Complaint) are governed by Delaware law. Only one of the Agreements governing these trusts was signed within three years of September 8, 2010, when Deutsche Bank filed its Amended Complaint adding JPMC and WMMSC as parties: WAMU 2007-Flex1 ("WA0701"). (*See* Amended Complaint, Ex. 1A.) The claims based on the remaining 54 trusts must be dismissed.

• Most of the Pooling and Servicing Agreements governing the Long Beach trusts (those beginning with "LB" in the same exhibit) are governed by New York law with a few governed by Delaware law. Of the 40 Long Beach trusts, claims associated with 24 of them are outside the applicable statute of limitations.[17]

• The Agreements governing two other trusts, abbreviated as MS0001 and CO9201 in Exhibit 1A, were signed 10 and 18 years ago, respectively—far too long ago to state a claim upon which relief can be granted.

## II.   THE COURT SHOULD ENTER PARTIAL SUMMARY JUDGMENT IN JPMC'S FAVOR FINDING THAT THE FDIC RETAINED LIABILITY FOR DEUTSCHE BANK'S CLAIMS.

Deutsche Bank's suit "against WMB and its successors or successors-in-interest, whoever they are adjudicated to be" seeks declaratory judgment regarding whether the FDIC or JPMC is the successor to the purported liabilities at issue in this proceeding. (Amended Complaint ¶¶ 13, 102-06.) To pursue a claim for declaratory

---

[17] These trusts are numbered 1-18 and 37-42 in Exhibit 1A. It is unclear what law governs the PSA labeled LB0608, since it was not attached to the Amended Complaint. None of the three trusts governed by California law was signed within California's four-year limitations period. *See* CAL. CIV. PROC. CODE § 337.

relief, Deutsche Bank must demonstrate an "actual controversy." 28 U.S.C. § 2201(a). Here, to the extent that there is an actual controversy, it is ripe for immediate summary judgment because this claim involves the interpretation of one unambiguous provision of the P&A Agreement. *Bastin* v. *Fed. Nat'l Mortgage Ass'n*, 104 F.3d 1392, 1393-95 (D.C. Cir. 1997). Under the plain terms of that agreement, JPMC did *not* become WMB's successor in interest. Since its closure, the FDIC as receiver has controlled WMB. While JPMC purchased all of the assets of WMB, it assumed only specified liabilities: those that had been reduced to a dollar amount on WMB's "general ledger and subsidiary ledgers and supporting schedules which support the general ledger balances." (Amended Complaint Ex. 2 (P&A Agreement) at 2.) The unliquidated liabilities that Deutsche Bank seeks to impose in this case are not alleged to be among those specified in the P&A Agreement, and JPMC has clearly stated in its filings with the Securities and Exchange Commission that this liability remains with the FDIC. (JPMorgan Chase & Co., Form 10-Q, filed November 9, 2010 (McIntosh Declaration Ex. G), at 58.) Under the P&A Agreement, the FDIC agreed to indemnify JPMC for any liabilities that it did not expressly assume. Based on the plain language of the P&A Agreement, the Court should award partial summary judgment declaring that any liabilities from this litigation that were not on WMB's general ledger, subsidiary ledgers, and supporting schedules as of September 25, 2008 remained with the FDIC directly or as indemnitor for JPMC.[18]

---

[18]     To the extent that WMMSC has potential liability related to representations and warranties it made, it has claims against the FDIC as receiver for WMB under Mortgage Loan Purchase Agreements between WMB and WMMSC. *See supra* pages 5-6.

A.     **There Is No Bona Fide Dispute That the FDIC Retained All Mortgage Origination Liabilities Not Having a "Book Value" as of WMB's Closing.**

Deutsche Bank acknowledges that as between the FDIC and JPMC, any liability for its claims is governed by Section 2.1 of the P&A Agreement, which provides in pertinent part:

> Liabilities Assumed by Assuming Bank. . . . [T]he Assuming Bank expressly assumes at Book Value . . . and agrees to pay, perform, and discharge, all of the liabilities of the Failed Bank which are reflected on the Books and Records of the Failed Bank as of Bank Closing . . . . [T]he Assuming Bank specifically assumes all mortgage servicing rights and obligations of the Failed Bank.

(Amended Complaint Ex. 2 (P&A Agreement) at 8.)  There is no bona fide dispute that the FDIC retained *all* liabilities of the failed bank *except* those that had a "Book Value" as of September 25, 2008, when WMB was closed.  Book Value is defined in the P&A Agreement as "the dollar amount [of an assumed liability] stated on the Accounting Records of the Failed Bank," and "Accounting Records" are specifically defined as limited to "the general ledger and subsidiary ledgers and supporting schedules which support the general ledger balances."  (Amended Complaint Ex. 2 (P&A Agreement) at 2-3.)  Thus, without further inquiry, the Court should enter partial summary judgment—based on these words of the P&A Agreement—that states the extent of the liabilities retained by the FDIC and adjudicates the limits of JPMC's assumption of liability.

To the extent that the FDIC disputes what exactly was on the Books and Records of WMB, with a Book Value, on September 25, 2008, such a dispute does not prevent immediate entry of summary judgment, which "may be rendered on liability

- 28 -

alone, even if there is a genuine issue on the amount of damages." FED. R. CIV. P.

56(d)(2). Judgment can be entered immediately stating that if WMB's general ledger,

subsidiary ledgers and supporting schedules did not, as of September 25, 2008, identify a

liability with a stated dollar value, JPMC did not assume it.[19] *See Viola* v. *Fleet Bank of*

*Maine*, No. 95-141, 1996 WL 498390, at *2-3 (D. Me. Feb. 27, 1996) (holding that a

functionally identical provision did not transfer liability beyond book value as stated on

the failed bank's accounting records).[20]

---

[19]     Such a result would be in complete harmony with other cases finding that, in
FDIC-assisted transactions, assuming banks do not acquire unliquidated and contingent
liabilities. *See Santopadre* v. *Pelican Homestead & Sav. Ass'n*, 937 F.2d 268, 272 (5th
Cir. 1991) (noting that claims that constituted unliquidated liabilities were not reflected
"on the books and records" of the failed bank and thus were not transferred); *In re Collins
Sec. Corp.*, 998 F.2d 551, 554-55 (8th Cir. 1993) (treating "books and records" and
"account records" as synonymous). Such an obligation would be impossible, given that
"[a] purchase and assumption must be made with great speed, usually overnight." *E.I. du
Pont de Nemours & Co.* v. *FDIC*, 32 F.3d 592, 595 (D.C. Cir. 1994) (citation and internal
quotation marks omitted). It would also undermine the receivership process:
"Undoubtedly very few, if any, banks would enter into purchase and assumption
agreements with a federal receiver if the successor banks had to assume . . . latent claims
of unknown magnitude . . . ." *Vernon* v. *RTC*, 907 F.2d 1101, 1109 (11th Cir. 1990); *see
also Raine* v. *Reed*, 14 F.3d 280, 283 (5th Cir. 1994) ("We will not undermine the speed
and efficiency of bank takeovers by imposing a requirement upon the FDIC to locate and
evaluate every possible avenue of disputed liability in implementing the takeover of a
failed bank.").

[20]     Deutsche Bank alleges that the Agreements "constituted official books and
records of WMB at the time of WMB's closing on September 25, 2008." (Amended
Complaint ¶ 42(e).) A contract is interpreted according to the parties' intent, and an
unambiguous contract is enforced according to its plain terms. *Sassano* v. *CIBC World
Mkts. Corp.*, 948 A.2d 453, 462 (Del. Ch. 2008); *Greenfield* v. *Philles Records, Inc.*, 780
N.E.2d 166, 170 (N.Y. 2002). Because Deutsche Bank is not a party to the P&A
Agreement, its opinion on the scope of "books and records" under the P&A Agreement is
irrelevant. *See Wichita Falls Office Assocs.* v. *Banc One Corp.*, No. 3:90-CV-1301, slip
op. at 12 (N.D. Tex. Nov. 22, 1993) (holding that assertions of a non-party about the
meaning of a P&A Agreement's terms are irrelevant) (McIntosh Declaration Ex. H).

Deutsche Bank asserts that if mortgage servicing rights and obligations were expressly assumed by JPMC, then the mortgage origination liabilities at issue in this action were expressly assumed by JPMC. (Amended Complaint ¶ 87.) This is wrong in at least two fundamental respects. *First*, directly contrary to that assertion, the express assumption of only "mortgage *servicing* rights and obligations" evidences the lack of any express assumption of the mortgage *repurchase* obligations that are at issue here: As Deutsche Bank acknowledges, repurchase obligations belong to the Seller or Depositor, *not* the Servicer. (*Id.* ¶ 53.) *Second*, Deutsche Bank's argument hinges on the incorrect assumption that mortgage servicing rights are qualified financial contracts or are not generally severable from the underlying securitizations. (*See id.* ¶¶ 32, 34.) Servicing contracts are not securitizations or any other variety of qualified financial contract. Moreover, courts have understood that a mortgage loan contract is divisible into one agreement concerning the "servicing of mortgage loans" and another agreement concerning the "sale and repurchase of mortgage loans." *In re Am. Home Mortgage, Inc.*, 379 B.R. 503, 520-21 (Bankr. D. Del. 2008). "The terms, nature and purpose of a repurchase agreement are different from an agreement relating to servicing mortgage loans," and the "consideration for servicing mortgage loans is readily apportioned from the other consideration flowing under the Contract." *Id.* at 521. Therefore, the two portions of the contract are severable. *See id.*

**B.      Summary Judgment Prior to Discovery Is Entirely Appropriate Because If There Is Any Ambiguity About Which Party Assumed the Deutsche Bank Liabilities, Then FDIC Either Retained Those Liabilities or Is Obligated to Indemnify JPMC for Those Liabilities.**

There can be no dispute that Deutsche Bank's claims are based on actions of WMB and its subsidiaries before WMB closed, namely the origination and

securitization of the mortgage loans at issue here.  There is also no dispute that under

Section 12.1(a)(4) of the P&A Agreement, the FDIC agreed to indemnify JPMC for any

"claims based on any action or inaction prior to Bank Closing of the Failed Bank, its

directors, officers, employees or agents as such, or any Subsidiary or Affiliate of the

Failed Bank, or the directors, officers, employees or agents as such of such Subsidiary or

Affiliate."  (Amended Complaint Ex. 2 (P&A Agreement) at 25.)  The only relevant

exception to the FDIC's indemnification is for claims with respect to liabilities that JPMC

"expressly assumed" under the P&A Agreement.  (*Id*. at 26 (Section 12(b)(2)).)

Therefore, to the extent that there is any ambiguity regarding which party assumed the

liabilities at issue here, JPMC could not have "expressly assume[]" those liabilities, and

summary judgment is still appropriate because any such ambiguity triggers the FDIC's

indemnity obligations to JPMC.[21]

Summary judgment is appropriate even in light of this Court's recent

decision involving the same P&A Agreement.  The FDIC moved to dismiss claims by the

North Carolina Department of Revenue, which sued the FDIC and JPMC for taxes that

WMB allegedly incurred before it failed.  *North Carolina Department of Revenue* v.

*FDIC*, No. 10-cv-505 (RMC) (D.D.C.).  Among the FDIC's purported grounds for

dismissal was that JPMC had "expressly assumed" liability for the tax assessments,

which were covered by the FDIC's broad interpretation of "records."  (Memorandum of

Points and Authorities in Support of FDIC-Receiver's Motion to Dismiss and in

Opposition to JPMorgan Chase's Motion to Dismiss (McIntosh Declaration Ex. I), at 13.)

---

[21]     The efforts of thoughtful lawyers to create the hint of ambiguity would not change
the result in this case.  Any ambiguity is construed against the FDIC as the drafter of the
agreement.  *See Cole* v. *Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1486 (D.C. Cir. 1997).

This Court denied the FDIC's motion to dismiss in a minute order dated November 5, 2010, stating that "[b]ecause there are disputed questions of material fact that bear on liability, summary disposition of this case through a motion to dismiss cannot occur." Minute Order, *N.C. Dep't of Revenue* (Nov. 5, 2010).

JPMC respectfully submits that this Court's order in *North Carolina Department of Revenue* is entirely consistent with the conclusion that either (i) JPMC did not assume the disputed liabilities or (ii) if it were deemed to have assumed them, it did not do so "expressly." In either event, JPMC would not be liable for Deutsche Bank's claims, as the latter conclusion would necessarily obligate the FDIC to indemnify JPMC. Partial summary judgment can be entered immediately, stating that any liabilities from this litigation that were not on WMB's general ledger, subsidiary ledgers, and supporting schedules as of September 25, 2008 fall on the FDIC either directly or as indemnitor for JPMC.

## CONCLUSION

For the foregoing reasons, JPMC and WMMSC respectfully request that this Court dismiss Deutsche Bank's Amended Complaint and grant partial summary judgment in favor of JPMC and WMMSC on the grounds described above.

Dated:   November 22, 2010            Respectfully submitted,
         Washington, D.C.

                                          /s/ Brent J. McIntosh


Robert A. Sacks (admitted *pro hac vice*)       Brent J. McIntosh (D.C. Bar No. 991470)
Stacey R. Friedman (admitted *pro hac vice*)    Henry C. Quillen (D.C. Bar No. 986686)
SULLIVAN & CROMWELL LLP                          SULLIVAN & CROMWELL LLP
125 Broad Street                                 1701 Pennsylvania Avenue, N.W.
New York, New York  10004                        Washington, D.C.  20006
Telephone:  (212) 558-4000                       Telephone:  (202) 956-7500
Facsimile:  (212) 558-3588                       Facsimile:  (202) 293-6330

                                                 *Counsel for Defendants*
                                                 *JPMorgan Chase Bank, N.A. and*
                                                 *Washington Mutual Mortgage*
                                                 *Securities Corporation*