# EXHIBIT H

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

WELLS FARGO BANK, N.A., etc.,

       Plaintiff,                        :          Case No. 3:07-cv-449

    -vs-                                         Magistrate Judge Michael R. Merz

                                         :

LaSALLE BANK NATIONAL
ASSOCIATION,

       Defendant.

## DECISION AND ORDER RE "MENTION OF ECONOMIC DOWNTURN"

This case is before the Court on LaSalle's Motion for Order Permitting Mention of the General Economic and Real Estate Downturn (Doc. No. 233) which Wells Fargo opposes (Doc. No. 247); LaSalle has filed a Reply in Support (Doc. No. 249).

The Motion was occasioned by the Court's comment during a telephone conference on August 7, 2009, that the parties needed to find an agreed way to talk about the economic downturn. Otherwise, the Court opined, "it's going to be the elephant in the room. And the jurors are going to wonder if we're all blind." (Transcript, Doc. No. 233-1, at 20-21.) Unsurprisingly, counsel have been unable to agree and the instant Motion followed.[1]

The issues raised by the Motion cannot be completely resolved because, in the Court's mind at least, Wells Fargo's theory of the case is not clear to the Court. LaSalle asserts and Wells Fargo concedes that, in order to prevail, Wells Fargo must prove that LaSalle breached a representation

---

[1] One could perhaps conclude that the instant Motion is a "material and adverse effect" of the parties' inability to agree.

and warranty and that such breach had a material and adverse effect. In its Memorandum in Opposition, Wells Fargo takes the position that "March 30, 2006,[the date of securitization] is the relevant date for determining both the existence of a breach, as well as whether the breach had the requisite material and adverse effect. . ." (Doc. No. 247 at 2.) If Wells Fargo is prepared to stick with that theory, then both parties would be properly precluded from offering any evidence of effects of breaches which occurred after March 30, 2006. If Wells Fargo is indeed committed to that position, then neither party ought to discuss subsequent economic events because all subsequent economic events would be irrelevant.

However, that position seems to the Court to be inconsistent with Wells Fargo's requested Closing Instruction No. 20 which asks the Court to instruct the jury, in part, that a breach has a material and adverse effect if "the investors **will be unable** to recover the full value of what they had bargained for with respect to the loan, property, or interest because the breach occurred. . . ." That language suggests that the effect of the breach is to be measured at some unspecified time in the future, either future from March 30, 2006, or future from the time of trial.

Wells Fargo's position in its Memorandum in Opposition also appears to be inconsistent with the opinion of its expert witness, John D'Andrea, who states at p. 6 of his November 18, 2008, Report:

> The above wording from the PSA contains the word "affects" in the current [sic] tense. I read this to mean the adverse effect would be made at the time the notice [of breach] is given. This reading is reasonable in light of the fact that that [sic] it would not make sense to give notice of a breach, which may have existed as of the closing date, but which has been cured and no longer has a material and adverse effect. Similarly, it is possible for there to have been a breach as of the Closing Date but the breach may not have been determined to have a material and adverse effect until the time of the notice.

(Doc. No. 100-8 at 8.) Although LaSalle does not mention the D'Andrea Report, this quotation appears to be consistent with LaSalle's position "that the appropriate time to assess whether an

2

alleged material breach has caused the requisite material adverse effect is when plaintiff seeks to invoke the buyback remedy, not the date of securitization." (Memo in Opp, Doc. No. 249, at 3.)

In sum, the Court cannot tell whether discussion of the economic downturn is permissible until it knows Wells Fargo's theory of when the material and adverse effect is measured. Once Wells Fargo commits itself to what material and adverse effect or effects it intends to prove – surely no later than opening statement – the Court will be able to tell what response is appropriate from LaSalle.

One firm ruling which can be made based on these motion papers is that Mr. Wasser's testimony at deposition relied on by Wells Fargo in its Memorandum in Opposition does not amount to a judicial admission by LaSalle that the material and adverse effect of any breach is to be measured as of the Closing Date.

The Motion is denied without prejudice to its renewal at the close of Wells Fargo's opening statement.

October 21, 2009.

                                              s/ **Michael R. Merz**
                                           United States Magistrate Judge