UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for the Trusts listed in Exhibits 1-A and 1-B,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION (as receiver for WASHINGTON MUTUAL BANK); JPMORGAN CHASE BANK, NATIONAL ASSOCIATION; and WASHINGTON MUTUAL MORTGAGE SECURITIES CORPORATION,<br><br>　　　　　　　　Defendants. | Case Action No.: 09-CV-1656-RMC<br><br>Hon. Rosemary M. Collyer |

**MEMORANDUM OF PLAINTIFF DEUTSCHE BANK NATIONAL TRUST COMPANY <u>REGARDING THE SCOPE OF DISCOVERY</u>**

Plaintiff Deutsche Bank National Trust Company, as Trustee for the Trusts[1] listed in Exhibits 1-A and 1-B of the Amended Complaint (the "Trustee"), respectfully submits this memorandum regarding a dispute that has arisen concerning the scope of discovery with respect to the threshold issue of whether the liabilities in dispute in this matter transferred to JPMorgan Chase Bank, National Association ("JPMC") under the Purchase and Assumption Agreement between the Federal Deposit Insurance Corporation as Receiver (the "FDIC") for Washington Mutual Bank ("WaMu") and JPMC, dated as of September 25, 2008 (the "PAA").

---

[1] For ease of reference, all undefined terms follow the abbreviations in the Amended Complaint ("AC").

**PRELIMINARY STATEMENT**

A central question in this case is whether WaMu's mortgage repurchase obligations (the "Mortgage Repurchase Liabilities") were assumed by JPMC under the PAA or whether – as JPMC contends – those liabilities remained in whole or in part the obligation of the FDIC.[2]

Following this Court's denial of the motions to dismiss the Amended Complaint and direction that the parties move to discovery on the threshold question under the PAA, all parties served document requests relating to that issue. Document discovery has since been ongoing and the parties have worked in good faith to resolve their disputes. The parties have been unable to agree, however, on the appropriate scope of PAA-related discovery and require direction from the Court in order to move PAA discovery forward to completion and begin deposition discovery.[3] In brief, the issue for resolution is whether the parties' treatment of WaMu liabilities other than the Mortgage Repurchase Liabilities (the "Other Liabilities") should be the subject of discovery <u>in this action</u>.

Both the Trustee and JPMC have sought discovery on the Other Liabilities and both contend it is probative of the proper interpretation of the PAA. The FDIC asserts that discovery on the treatment of the Other Liabilities (so-called "course of performance" evidence) – which has been sought by both the Trustee and JPMC – is unduly burdensome and unnecessary given the direct evidence that JPMC assumed the Mortgage Repurchase Liabilities as part of its whole bank purchase of WaMu. In an effort to streamline this litigation and move the PAA issue

---

[2] Certain of the mortgage securitizations at issue in this case were sold by a WaMu subsidiary, Washington Mutual Mortgage Securities Corporation ("WMMSC"). Pursuant to the PAA, JPMC acquired all of WaMu's subsidiaries, including WMMSC, and JPMC apparently acknowledges that WMMSC remains responsible for those securitizations.

[3] Pursuant to Local Civil Rule 7(m) of the United States District Court for the District of Columbia, the Trustee states that the parties met and conferred concerning this dispute and were unable to reach agreement.

forward to resolution, the Trustee proposed that the parties forego discovery on the Other Liabilities, which material both the Trustee and JPMC contend would otherwise properly be the subject of discovery. JPMC rejected that approach, proposing instead that discovery on the Other Liabilities be selective and that it be limited to disputes involving tax, environmental and indemnity liabilities that are not directly the subject of this litigation. (At least the tax-related disputes are the subject of pending litigations before this Court to which the Trustee is not a party.) Neither the Trustee nor the FDIC agreed to this arbitrary limitation on the scope of discovery <u>in this case</u>, which would permit JPMC to cherry-pick the course of performance evidence subject to discovery.

While the Trustee maintains that course of performance evidence relating to all Section 2.1 Liabilities is discoverable, and is fully prepared to proceed with such discovery – given the overwhelming contemporaneous evidence showing that JPMC did assume the Mortgage Repurchase Liabilities, and in light of the "burden" arguments advanced by the FDIC –the Trustee is amenable to an agreement that will streamline litigation on the PAA issue by limiting course of performance discovery to the Mortgage Repurchase Liabilities. The Trustee does not, however, consent to discovery of only such Other Liabilities evidence as JPMC wishes to pursue. Simply stated, discovery should either encompass all of the Other Liabilities or not include them at all, and it is on this question that the Court's direction is required.

## **BACKGROUND**

Plaintiff DBNTC serves as a trustee or in various other related capacities for 99 residential mortgage-backed securitization Trusts created, sponsored and/or serviced by WaMu (the "Primary Trusts"), and as an indenture trustee or in various other related capacities for 28 secondary trusts (the "Secondary Trusts," and collectively, the "Trusts"), whose performance is

dependent, in whole or in part, on the Primary Trusts or of other residential mortgage-backed securities issued by WaMu. AC ¶¶ 2, 3. The Trustee alleges, among other things, that WaMu breached various representations and warranties with respect to the Trusts and that WaMu is required under the securitization agreements to repurchase the affected mortgage loans. AC ¶¶ 29-85, 92-101.

The transactions generally operated as follows. First, WaMu originated or otherwise acquired residential mortgage loans. Next, WaMu aggregated those loans into pools. Because investors did not have an opportunity to inspect the loans before investing in the pools, WaMu issued representations and warranties (the "Representations and Warranties") in the securitization agreements, representing that the mortgage loans met certain criteria relating to, among other things, the loan history (e.g., no default on the mortgage or note); the loan amount (e.g., the loan did not exceed the property value); the loan underwriting (e.g., prudent underwriting practices); and the loan selection (e.g., WaMu did not select loans with the intent to adversely affect the purchaser).

Under the agreements, the Trustee has the right to enforce the Representations and Warranties for the benefit of the Trusts' beneficiaries. AC ¶30. In the event of a breach of the Representations and Warranties, WaMu – and now its successor in interest – is obligated to repurchase the mortgage loans at issue. Whether the Mortgage Repurchase Liabilities the Trustee seeks to enforce were assumed by JPMC – as both the FDIC and the Trustee contend – puts at issue the proper reading of Section 2.1 of the PAA. Section 2.1 provides that JPMC "expressly assumes at Book Value (subject to adjustment pursuant to Article VIII) and agrees to pay, perform, and discharge all of the liabilities of the Failed Bank which are reflected on the Books and Records of the Failed Bank as of Bank Closing." JPMC contends that the phrase

"expressly assumes at Book Value" limits its assumption of liabilities to those having a Book Value on WaMu's Accounting Records, and then only to the extent of that Book Value. The Trustee and the FDIC maintain that the phrase "and agrees to pay, perform, and discharge all of the liabilities of the Failed Bank which are reflected on the Books and Records of the Failed Bank as of Bank Closing" defines the scope of the liabilities assumed by JPMC.

The proper interpretation of Section 2.1 was the subject of briefing in connection with the Motions to Dismiss made both by the FDIC and JPMC. On April 5, 2011, this Court denied JPMC's Motion to Dismiss and for Partial Summary Judgment "because the rights of the parties cannot be decided based upon these pleadings alone." Minute Order, Apr. 5, 2011. On August 17, 2011, this Court denied the FDIC's Motion to Dismiss finding that "[o]ne of the basic questions" in this case is whether the PAA "by which JPMC acquired certain WaMu assets and liabilities, left these alleged liabilities with the FDIC or transferred them to JPMC." Minute Order, Aug. 17, 2011.

## ARGUMENT

A.  Course of Performance Evidence is Relevant and Admissible

Documents relating to the Other Liabilities are subject to discovery in this action. Federal Rule of Civil Procedure 26(b)(1) provides that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Under both federal and Washington law,[4] where, as is the case with the PAA, the proper interpretation of a contract is in dispute, courts may look to a variety of

---

[4] The PAA provides that it is to be "governed by and construed in accordance with the federal law of the United States of America, and in the absence of controlling federal law, in accordance with the laws of the state in which the main office of the bank is located." PAA § 13.4; see Williams v. FDIC, No. CIV 2:07-2418 WBSGGH, 2009 WL 5199237 at *2 (E.D. Cal. Dec. 23, 2009) ("Washington Mutual's main office was located in Seattle, Washington").

evidence to determine the proper interpretation of the disputed provision. See Israel Bio-Eng'g Project v. Amgen, Inc., 475 F.3d 1256, 1266 (Fed. Cir. 2007) ("To determine the purpose of the contract, a court must consider not just the contract language, but all of the extrinsic evidence regarding the circumstances surrounding the contract, particularly the negotiations prior to the formation of the contract and the parties' conduct in the course of performance and afterwards.") (internal quotations and citation omitted); Berg v. Hudesman, 801 P.2d 222, 234 (Wash. 1990) ("It is well established that subsequent acts and conduct of the parties to the contract are admissible to assist in ascertaining their intent.").

In this case, course of performance evidence may contradict JPMC's position regarding the Mortgage Repurchase Liabilities. For example, the assumption by JPMC of WaMu's pension liabilities – despite the omission of those liabilities from WaMu's Accounting Records – may be probative of the proper interpretation of the PAA with regard to the Mortgage Repurchase Liabilities.

B.      Potential Limitation on Discovery

While, as set forth above, course of performance evidence relating to the Other Liabilities is potentially relevant, courts may afford such evidence less weight than contemporaneous evidence of the negotiation of the contract. See, e.g., Den Norske Bank AS v. First Nat'l Bank of Boston, 75 F.3d 49, 52-53 (1st Cir. 1996) ("In descending order of importance, extrinsic evidence may include: (1) the parties' negotiations on the particular loan; (2) their course of performance; (3) their prior course of dealing; and (4) trade usage in the relevant (viz., banking) industry.") (citations omitted). Cf. Restatement (Second) of Contracts § 203 & cmt. (a) (1981) (stating that while "course of performance is given greater weight than course of dealing or usage of trade, and course of dealing is given greater weight than usage of trade," they "do not

6

override evidence of the meaning of the parties"). Courts also generally recognize that course of performance evidence may be manufactured and self-serving, unlike most contemporaneous communications during the negotiation of a contract. In re First Cent. Fin. Corp., 269 B.R. 481, 498 (Bankr. E.D.N.Y. 2001), aff'd, 377 F.3d 209 (2d Cir. 2004); Beta-Bothell Ctr., LLC v. Quality Food Centers, Inc., 154 Wash. App. 1038 at *6 n.4, review denied, 241 P.3d 413 (Wash. 2010).

Course of performance evidence may be afforded less weight particularly where – as in this case – there is compelling contemporaneous evidence of the appropriate contractual interpretation. The discovery record to date confirms that, before execution of the PAA, JPMC was concerned that it would assume the Mortgage Repurchase Liabilities and proposed contract language expressly carving out the Mortgage Repurchase Liabilities. The FDIC rejected the proposed language and subsequently informed JPMC that the Mortgage Repurchase Liabilities were included in the liabilities assumed by JPMC. In light of this record and in an effort to move the case forward and address the burden concerns expressed by the FDIC with respect to discovery of the Other Liabilities pressed by JPMC, the Trustee proposed and is prepared to agree that the parties forego such discovery.

The Trustee cannot, however, agree to limitations on course of performance evidence that permit JPMC to select only those areas of inquiry that it believes support its interpretation of the PAA. In this regard, it is well settled that a party cannot pursue selective disclosure using certain aspects of the record as a sword while shielding other aspects of the record from disclosure. See In re Sealed Case, 676 F.2d 793, 807 (D.C. Cir. 1982) ("Where society has subordinated its interest in the search for truth in favor of allowing certain information to remain confidential, it need not allow that confidentiality to be used as a tool for manipulation of the truth-seeking

process. . . . [A litigant] cannot be allowed, after disclosing as much as he pleases, to withhold the remainder.") (internal citation omitted); see also Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co., 129 F.3d 143, 151 (D.C. Cir. 1997) (quoting Ideal Electronic and adding that "[t]his is particularly true where, as here, a party partially discloses the allegedly privileged information in support of its claim against another, but then asserts the privilege as a basis for withholding from its opponent the remainder of the information which is necessary to defend against the claim.").

**CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests direction from the Court regarding the scope of course of performance discovery relating to the Other Liabilities.

Dated:  June 6, 2012
        Armonk, NY

        Respectfully submitted,

        BOIES, SCHILLER & FLEXNER LLP


        By:   /s/ Robin A. Henry
        Robin A. Henry (admitted pro hac vice)
        Michael Endler (admitted pro hac vice)
        Jack G. Stern (admitted pro hac vice)
        Motty Shulman (admitted pro hac vice)
        Elimelech Rosenbluh (admitted pro hac vice)
        333 Main Street
        Armonk, NY 10504
        Phone: (914) 749-8200
        Fax:    (914) 749-8300

*Counsel for Plaintiff Deutsche Bank National Trust Company, as Trustee for the Trusts listed in Exhibits 1-A and 1-B, for all claims, except with respect to paragraph 97 of the Amended Complaint.*

        - and -

        TALCOTT FRANKLIN P.C.

        Talcott J. Franklin (D.D.C. Bar No. TX0078)
        208 North Market Street, Suite 200
        Dallas, Texas 75202
        Phone:  (214) 736-8730
        Fax:     (877) 577-1356

*Counsel for Plaintiff Deutsche Bank National Trust Company, as Trustee for the Trusts listed in Exhibits 1-A and 1-B.*