UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


DEUTSCHE BANK NATIONAL      :
TRUST COMPANY              :
                          :
          Plaintiff,       :           Docket No. CA 09-1656
                          :
                          :             Washington, D.C.
          vs.             :        Thursday, February 21, 2013
                          :             10:15 a.m.
FEDERAL DEPOSIT INSURANCE   :
CORPORATION ET AL,         :
                          :
          Defendants.      :
--------------------------x



TRANSCRIPT OF TELEPHONE CONFERENCE
BEFORE THE HONORABLE ROSEMARY M. COLLYER
UNITED STATES DISTRICT JUDGE



APPEARANCES:

For the Plaintiff:        MICHAEL ENDLER, Esquire
                          Boies, Schiller & Flexner LLP
                          333 Main Street
                          Armonk, NY  10504


For Defendants:           SCOTT H. CHRISTENSEN, Esquire
                          ROBERT L. SHAPIRO, Esquire
                          Hughes Hubbard & Reed LLP
                          1775 I Street, NW
                          Washington, DC  20006-2401


                          BRENT J. MCINTOSH, Esquire
                          Sullivan & Cromwell LLP
                          1701 Pennsylvania Ave., NW
                          Washington, DC  20006-5805

Appearances continued:

For Defendants:                 ANNE M. DEVENS, Esquire
                                KATHRYN NORCROSS, Esquire
                                Federal Deposit Insurance
                                Corporation
                                3501 Fairfax Drive,
                                Room VS-D-7062
                                Arlington, VA  22226-3500


Court Reporter:                 CRYSTAL M. PILGRIM, RPR
                                Official Court Reporter
                                United States District Court
                                District of Columbia
                                333 Constitution Avenue, NW
                                Washington, DC  20001

Proceedings recorded by machine shorthand, transcript produced
by computer-aided transcription.

P–R–O–C–E–E–D–I–N–G–S

1

THE DEPUTY CLERK:  Hello, good morning.  This is

Ms. Moon in Judge Collyer's courtroom.  We're ready to begin

the phone conference.

This is civil action 09–1656, Deutsche Bank National

Trust Company versus Federal Deposit Insurance Corporation, et

al.

Counsel, would you please identify yourselves for the

record.

MR. CHRISTENSEN:  Good morning.

This is Scott Chistensen at Hughes Hubbard & Reed LLP.

With me is Robert Shapiro, and we represent the FDIC in its

capacity as receiver of Washington Mutual Bank.

MS. NORCROSS:  Kathy Norcross and Anne Devens from

the FDIC are also on the line.

MR. MCINTOSH:  Good morning, Your Honor.

It's Brent McIntosh from Sullivan & Cromwell LLP

representing JPMorgan Chase Bank NA and Washington Mutual

Mortgage Securities Corporation.  With me are a law clerk Laura

Palioni and in-house counsel from JPMorgan Chase Bank and a

Joanna --

THE COURT:  All right, good morning.  Is there anyone

else on the phone?

MR. ENDLER:  Good morning, Your Honor.  It's Michael

Endler from Boies, Schiller & Flexner for the plaintiff.

1          THE COURT:  Oh my goodness, all right.  I'm sorry,

2   sir, could you spell your last name for me.  I don't happen to

3   have your name on the piece of paper in front of my eyes.

4          MR. ENDLER:  No problem, Your Honor.  Michael Endler,

5   E-N-D as in David, L-E-R.

6          THE COURT:  Thank you, sir.

7      Okay, what we're here to do is to talk about privilege

8   issues and I very much thank everybody for putting the

9   conversation off for a couple of days so that we would have a

10  little more time to talk than we would have had at the end of

11  the day on Tuesday.

12      I have received and looked at the letters that you both

13  have sent to me and I wanted to move very first to the

14  questions at issue, and then back up and ask you to give me

15  more context about some of them.

16      Mr. Chistensen said in his letter to Mr. McIntosh that

17  none of the questions required an answer as to the content of a

18  communication that might be an attorney client privileged

19  communication.  I don't think that's true, but I think it is

20  true as to many.  I don't think it's entirely true, let me say,

21  but I think it is true as to many of the questions.

22      The answers to the questions as framed would not reveal

23  attorney client privilege.  They might not reveal a whole lot

24  actually, but nonetheless, as framed the questions I think can

25  be answered.

1          Let me give you an example.  Question 7, do you have an

2  understanding of whether JPMorgan Chase undertook a full

3  reengagement with complete business unit and corporate function

4  participation in September of 2008?

5          That might be answered yes or no.  I don't think that

6  would exactly give any, the further question is what is your

7  understanding?  Well, I can't tell you that.  I'm not going to

8  tell you that.  I can only understand that if I've spoken to my

9  client about it, but I can tell you I do have an understanding,

10 yes or no.

11         The next one, the next one I think is clearly not

12 privileged.  In your claim of privilege over information, this

13 is number 8, that you gain solely in your role as counsel to

14 JPMorgan Chase, was that information gained because somebody

15 was asking you for legal advice?

16         Now this is a question that goes to do you have a basis

17 to claim attorney client privilege?  I think it surely has to

18 be answered and it has to be answered yes or no, and then if

19 somebody says well, what was the nature of the legal advice,

20 JPMorgan Chase has already told me that in I think sufficiently

21 general language that it even could be answered here to provide

22 support for the assertion of a privilege, but in some way there

23 has to be support for the assertion of a privilege provided to

24 the party who wishes maybe to challenge the existence of a

25 privilege.

1          I would suggest JPMorgan Chase go look at the letter it

2    sent to me after I asked and reviewing the documents for

3    privilege what was the legal advice and what was the subject

4    matter of the legal advice.  There might be something there

5    that one could use in responding to this question.

6          Then the next one 9, do you have any understanding of

7    what comprehensive online data room including current loan

8    level data tapes JPMorgan Chase would have reviewed in

9    September of 2008.

10         I don't think that question can be answered without

11   revealing information that Mr. Cooney would only have received

12   from JPMorgan Chase.  That is, what it would have reviewed.  If

13   you just said do you have any understanding of what was there,

14   well, that's a different question than asking what JPMorgan

15   Chase would have reviewed.

16         Number 10, this is also the same kind of question

17   because it also asks about an understanding for what JPMorgan

18   Chase would have reviewed as part of due diligence which would

19   I think reveal an attorney client privilege.

20         Number 11, now this is interesting because of course

21   nobody has told me what document you're actually looking at,

22   Exhibit 40 that's referenced in question Number 11, but it is

23   quoted and then do you have any understanding of whether that

24   conclusion is accurate?

25         Just with the information in front of me if question 11

1  I would say that Mr. Cooney can say yes or no, he has an

2  understanding or he does not have an understanding.

3          Yes or no, what is your understanding?  Well, I don't

4  know whether he needs to answer that question because I don't

5  have any idea what Exhibit 40 is.  That's the sort of thing we

6  need to talk about.

7          Number 12, did JPMorgan Chase to your knowledge

8  anticipate a potential WaMu transaction would include

9  assumption of WaMu securitizations.  No, don't answer that

10 question because that reveals what the client may have told the

11 lawyer.

12         Next one 13, do you have any understanding as to whether

13 JPMorgan Chase undertook due diligence on the detail listing of

14 securitizations.  That is yes or no.  Yes, I do have an

15 understanding.  No, I don't have an understanding.

16         It is not yes or no whether they undertook due

17 diligence.  It's whether or not Mr. Cooney has an understanding

18 of whether they undertook due diligence.

19         Then the next question what is your understanding, I

20 don't know that that can be answered.  It seems to me probably

21 not.

22         Next one, to your knowledge were there discussions among

23 JPMorgan Chase personnel about WaMu's off balance sheet

24 obligation.  That's again, yes or no, I do or don't have that

25 knowledge.

1       What knowledge do you have, I can't tell you that.

2       Number 15, in –– as of September 16th, 2008, to your

3   knowledge did JPMorgan Chase anticipate a potential WaMu

4   transaction to include.  That is not a question that Mr. Cooney

5   could have answered because that question whether it's to his

6   knowledge or not would reveal JPMorgan Chase's thinking which

7   is subject of an attorney client privilege unless there are

8   other arguments against it.

9       You notice I'm talking first, this is just to line it

10  out.  I'm not limiting your argument later.

11      16, to your knowledge, discussion within JPMorgan Chase

12  about WaMu's contingent liabilities.  I think not.  It may be

13  that that could be a yes or no without anything further, but

14  I'm inclined to think not.

15      Number 17, why would JPMorgan Chase be reviewing the

16  recourse provisions.  I think not, that would be revealing

17  thinking of JPMorgan Chase that is the client and I don't think

18  the lawyer has, I think he's precluded from doing so.

19      18, do you have any understanding of what the meaning

20  rep warrant bridge, referring to Exhibit 45 is in this context.

21  That's definitely a yes or no.

22      Now whether or not Mr. Cooney has to define what rep

23  warrant breach means depends on what Exhibit 45 and other

24  exhibits are as to whether or not because of the exhibit and

25  the nature of the exhibit or other things that meaning is no

1  longer privileged.  But certainly the question as framed needs

2  to be answered.

3       The next one is a little different.  Do you have any

4  understanding of why JPMorgan Chase would be reviewing the list

5  of loans purchased by WaMu?  This would be a yes or no

6  depending on whether or not the fact that JPMorgan Chase

7  reviewed the list of loans purchased by WaMu, et cetera, was on

8  the record already from a different source.

9       If that's not a fact that has been established; that is,

10  the review by JPMorgan Chase, then I think that Mr. Cooney

11  cannot answer the question.  But if the question, we know that

12  they were reviewing the list and the question is do you

13  understand why they were reviewing the list, the answer is yes

14  or no, I do understand it or I don't understand it.

15       What is your understanding?  I'm not going to tell you

16  that.

17       20, do you have any understanding of the repurchase

18  trends follow-up listed under the second priority?  Again,

19  referring to an exhibit.  This is at least a yes or no and

20  again, depending on the exhibit and what it shows and what the

21  rest of the record shows, it may be able to go beyond that, but

22  it's at least a yes or no.

23       21, to your knowledge is this, whatever this is,

24  referring to WaMu's repurchase trends over the previous year.

25  I'm not quite sure what this is so I don't know whether that's

1    a yes or no or whether that would be something covered by a

2    privilege because I'm not quite sure to what it's being

3    referred.

4        22, what role did Todd Gordon play in JPMorgan Chase's

5    due diligence.  There has to be some answer that can be given

6    to that that is not privileged.

7        Who is Todd Gordon?  Is he within JPMorgan Chase or

8    where?

9        MR. MCINTOSH:  Your Honor, he is within JPMorgan

10   Chase.  This is Brent McIntosh from Sullivan Cromwell.

11       THE COURT:  Right.

12       MR. MCINTOSH:  I believe the question, the objection

13   there is not a fact but as to how Mr. Cooney learned it.  If

14   Mr. Cooney learned it through a conversation conveying to him

15   information and seeking legal services, I am afraid that if

16   Mr. Cooney were to testify to that information, we'd have an

17   argument that he waived.

18       For what it's worth, Mr. Cooney did testify.

19       THE COURT:  Well, what Mr. Cooney testified about and

20   whether that waived things, is that the same argument you would

21   make as to Charlie Scharf?

22       MR. MCINTOSH:  Your Honor, again, I would.

23       Let me say two things about that.  First, there are a

24   number of these questions that in theory Mr. Cooney could

25   observe with his own eyes outside of the context of a request

1  for legal advice and in that case, it's possible it would not

2  be privileged.

3      But in situations where Mr. Cooney said the only thing I

4  know about that is through conversations I had in seeking my

5  legal advice or my legal services, then in those situations I

6  think if he were to testify to those facts, we would have the

7  FDIC arguing waiver.

8      THE COURT:  No, I appreciate, no.  When I say no,

9  wait a minute.  Back up.

10      Yes, I appreciate the point you're making and I think

11  you are correct.  So that if Mr. Cooney only knew of what Todd

12  Gordon was doing or what Charlie Scharf was doing because of

13  conversations with his client in the course of rendering legal

14  advice, that would be so.

15      Who is Charlie Scharf?

16      MR. MCINTOSH:  Charlie Scharf was a senior executive

17  at JPMorgan Chase at the time.

18      Your Honor, I think it's important here to recognize

19  that Mr. Christian has submitted to you questions.  He has not

20  submitted to you answers.

21      Take the Todd Gordon question for example.  The question

22  is what role did Todd Gordon play in JPMorgan Chase's due

23  diligence.  Mr. Cooney testified at the time Todd Gordon had a

24  financial role in JPMorgan Chase.

25      Mr. Chistensen then reasked the question and Mr. Cooney

1  testified I respectfully decline to answer that because my

2  knowledge about Todd's role would have been gained in my role

3  as providing legal services to JPMorgan Chase and therefore, I

4  believe that information is privileged.

5       In other words, Mr. Cooney consistent with a discussion

6  we had very early on in the deposition declined to reveal

7  things that were told to him in seeking his legal services.

8       If you --

9       THE COURT:  Well, you see the problem is and this is

10 something when we get to the end of this, I really want to talk

11 to you about.

12      Just plain information that one learns in the course of

13 providing legal services a fact is not necessarily privileged

14 just because it's a fact that you happen to hear during the

15 course of providing legal services.  It has to be a

16 communication of some kind whether it's by words or eyesight or

17 otherwise for the purpose of your rendering legal services.

18      I mean, you can go into a business and learn a whole lot

19 about how the business operates because you take a tour of it

20 and you are taking the tour so you have a general understanding

21 of the business, but it doesn't mean that if you saw John Doe

22 at work that day you wouldn't have to say so.

23      Do you agree with that?

24      MR. MCINTOSH:  Your Honor, we agree completely.

25      That's why Mr. Cooney answered nearly 600 questions in

1   this deposition despite the fact that they all went to things

2   he learned in providing legal services.

3         Where he declined to answer questions were in situations

4   where he had learned information in the context of

5   conversations requesting his legal services.

6         THE COURT:  Right.

7         So we agree, at least I agree without hearing from

8   Mr. Chistensen, I agree with you that that is the approach to

9   take.  And if he only learned of the role of Todd Gordon beyond

10  the fact that he was in finance, the role that Todd Gordon or

11  Charlie Scharf specifically played in the due diligence only as

12  a result of those communications when asking for his legal

13  advice, then I agree with you.

14        Now the next one 24, do you know whether due diligence

15  on those two items was completed?  Now this is I think a yes or

16  a no.

17        It isn't whether the due diligence was completed.  It's

18  whether he knows whether it was completed.  It's a very fine

19  line one only lawyers could appreciate, but Mr. Cooney is no

20  spring innocent chicken.  I mean, the man is a very experienced

21  guy is what I mean to say.  And I don't have any concern about

22  whether he's an excellent lawyer and would know what I'm

23  talking about.

24        Now, do you know in 25 whether due diligence was

25  completed, yes or no?  Not whether it was.

1      The last number 26, do you understand, do you have an

2  understanding of what repurchase reserve methodology due

3  diligence JPMorgan Chase was performing?  Yes or no.

4      27, do you have an understanding of what trend and

5  repurchase reserve balance due diligence JPMorgan Chase was

6  performing?  Yes or no.

7      I don't think this particularly helps Mr. Chistensen,

8  but at least it's answerable.

9      Do you know at 28, whether due diligence for the last

10 two bullet points under Arabic number four was completed?  Yes

11 or no.

12      What sorts of litigation and mortgage issues was Laura

13 O'Hara taking the the lead on -- well, no, this question

14 actually is I can't answer that.  Because it isn't do you know.

15 It says what sorts of litigation and mortgage issues, that I

16 would think would be privileged.

17      Why were you coming up with a current list of to dos?

18 Mr. Cooney says oh, that was in the context of my advice to the

19 client and the answer is I can't answer it.

20      Now 31, what work were you and Mr. Lipsitz doing on the

21 P&A agreement?  The context of this is totally barren of

22 course, so I don't know what other knowledge, communications,

23 answers to questions or whatever might have revealed this or

24 might take this out of attorney client, but wouldn't it then be

25 attorney work product?

1           I mean, I don't know how one would, could be forced to

2    answer that question.

3           And the next one is what are the P&A schedules that you

4    referred to on your current list of to dos.  Again, that may,

5    if it's not attorney client, it may be work product, but you've

6    already produced the current list of to dos, apparently, so I

7    don't quite know where to take that because I don't have

8    context for it.

9           All right.  Then the next one, we're up to 33.  To your

10   knowledge had due diligence items been completed by the time of

11   this e-mail?  That is, specific due diligence items and the

12   answer would be yes or no.

13          34, to your knowledge had due diligence items associated

14   with contingent liabilities been completed?

15          What date are we talking about anyway?  Exhibit 53, does

16   anybody remember?

17          (No response.)

18          Nobody remembers.

19          MR. CHRISTENSEN:  I don't have the exhibit in front

20   of me, Your Honor, but we'll pull it and check.

21          THE COURT:  The question is whether the date of the

22   e-mail -- no, I still think that it would probably need to be

23   answered yes or no because if the answer is I don't know for

24   sure, then the answer is no.

25          All right, 35, what does that mean?  What's a

1  conditional bid?  I need context of that.  I don't understand

2  it.

3       36, were there outstanding issues on which JPMorgan

4  Chase was seeking information from WaMu.  I would say that he

5  does not have to answer that question.  That would be from his

6  client.

7       37, did you review presentations to the rating agencies?

8  Yes or no?

9       Are you aware of any presentations through a rating

10  agency made by JPMorgan Chase involving WaMu?  This is little

11  trickier because that means he would be revealing something his

12  client did; that is, JPMorgan Chase made a presentation.

13       Why JPMorgan Chase wouldn't have to reveal whether it

14  made a presentation, I don't know.  So it may be as to

15  Mr. Cooney a privileged question, but not a privileged question

16  as to JPMorgan Chase.

17       39, so the undefined terms and things that

18  were capitalized and not capitalized weren't important to you?

19  No.  That would be either attorney client or work product

20  depending on who you meant; that is, you the client or you the

21  lawyer.

22       40, was it JPMorgan Chase's intention from the outset to

23  not assume repurchase obligations.  No, no, no.  I mean, they

24  couldn't possibly, a lawyer can't answer that question.

25       Was the issue of which party would have the repurchase

1  obligations an important one to JPMorgan Chase?  A lawyer can't

2  answer that question either.

3          So that's kind of the way I looked at them baldly.  I

4  wasn't quite sure what to do with the first ones that I didn't

5  start with.  But I kind of got into it seeing that well, you

6  know, given Mr. Chistensen's position that all he wants is an

7  answer to his questions.  He doesn't want the content of any

8  communication.  It seems to me that a number of these can be

9  answered yes or no for whatever the value of that may be.

10         There may be other arguments such as those connected

11  with the e-mail that identifying what due diligence was done by

12  this, by a specific date could reveal an attorney client

13  privilege or work product either one.

14         But saying whether you know whether it was completed by

15  that certain date or do you have an understanding whether it

16  was completed by that certain date, that's not the same thing.

17  It would be yes or no, I do understand, I don't understand, and

18  I'm not going to answer the next question.  What is your

19  understanding.

20         Okay, now let's talk a little more generally.  You can

21  -- well, we can either talk specifically about these points.

22  Mr. Chistensen can tell me where I'm wrong.  Mr. McIntosh can

23  tell me where I'm wrong or we can talk more generally because

24  what my general issue is where the line is to be drawn when

25  you're in the environment in which you men practice and ladies,

1  that is transactions.  Because the privilege protects

2  communications from the client to the lawyer for the purpose of

3  obtaining legal advice.  That's a really shorthand summary.

4       If for instance, JPMorgan Chase were interested in

5  acquiring Washington Mutual and asked its lawyer to go do an

6  investigation of Washington Mutual, and the lawyer went and

7  talked to a number of people and then came back and was

8  preparing to report to JPMorgan Chase and somebody came along

9  and said what did John Doe tell you about securitization.

10      Do you think that would be privileged?  That's

11 information that has not been communicated to JPMorgan Chase,

12 no advice has been given to JPMorgan Chase reliant on that

13 communication.

14      The lawyer was asking the question on behalf of JPMorgan

15 Chase preparatory to giving such advice, but it's an

16 information, a piece of information about Washington Mutual,

17 not a piece of information about JPMorgan Chase.

18      So is that piece of information privileged at that point

19 in time before any communication is made back to the client?

20      What is your thinking on that, gentlemen and ladies?

21         MR. MCINTOSH:  Your Honor, this is Brent McIntosh.

22      I think that's a hard question.  But I will say that I

23 believe in situations like that there are none of those

24 situations as far as I'm aware among the questions

25 Mr. Chistensen identifies.

1    They all relate to the actions of JPMorgan Chase and 24

2  of them in fact relate to due diligence done by other persons

3  at JPMorgan Chase.

4    To the extent that Mr. Cooney was asked for example,

5  questions about his own interactions with personnel at

6  Washington Mutual which at the time was a potential counter

7  party of the interaction, he testified to those conversations.

8              THE COURT:  Okay.

9              MR. MCINTOSH:  So notwithstanding that the question

10 is not a simple one in the abstract, I don't think it arises

11 here.

12             THE COURT:  I appreciate that response.

13         Do you agree with that factually, Mr. Chistensen?

14             MR. CHRISTENSEN:  To a large extent.

15         But given the limited context that Your Honor in the

16 hypothetical, I think what a lawyer who was charged with

17 putting together a transaction to acquire the bank learned

18 about what it was acquiring and thought it was acquiring, that

19 particular fact can be divorced from any request for legal

20 advice that was made or any legal advice subsequently given.

21         And to Your Honor's hypothetical the lawyers should be

22 able to answer that question because it does, it is a fact that

23 is not inextricably intertwined with the request for legal

24 advice or both legal advice given.  It is, there's no

25 demonstration that the fact was intended to be confidential

1  which is a key element of the attorney client privilege.

2      So on the context given, I think a lawyer who is helping

3  to consummate the acquisition could answer the question about

4  what Mr. Smith told him about securitizations.

5          THE COURT:  Okay.  Okay.

6      So I think what that means is that we all more or less

7  and we're not pressed for a fact pattern that is identical to

8  my hypothetical.  So I won't hold you to your responses if we

9  ever are because you may want to argue something differently,

10 but this is just a hypothetical unattached to specific facts

11 and so I think we are in agreement.

12     Now is it right, Mr. Chistensen, do you agree with

13 Mr. McIntosh's statement that Mr. Cooney did testify about his

14 own interactions with people at WaMu and but although he

15 refused to answer questions about the interactions of others

16 with WaMu, I guess others from JPMorgan Chase, is that the

17 limitation you would put to it, Mr. McIntosh, or is it others

18 within his own firm?

19     Mr. Cooney was inside JPMorgan Chase or out?  I can't

20 remember.

21         MR. MCINTOSH:  He was inside counsel to JPMorgan

22 Chase, Your Honor.

23         THE COURT:  Okay.

24         MR. MCINTOSH:  I think we mentioned he was one of the

25 lawyers whose random sample of whose e-mail that you reviewed.

1          THE COURT:  Yes, I remember his name very well and he

2   had an important role in all of this.  Okay, all right.

3          So is it, do you agree, Mr. Chistensen, that all of the

4   questions here relate to actions of JPMorgan Chase; that is,

5   the ones that are attached to your letter?

6          MR. CHRISTENSEN:  Without going through each of them,

7   I think I can say generally that they do relate to the actions

8   of JPMorgan Chase.

9          THE COURT:  So how would you argue that question

10  number 5, question number 5 is at this juncture September 12th,

11  2008 was JPMorgan Chase planning for a transaction with the

12  FDIC for the acquisition of WaMu?

13         Now how would you argue that Mr. Cooney could answer

14  that question without violating attorney client privilege?

15         MR. CHRISTENSEN:  Yes, Your Honor.

16         Because this case at this juncture is about the question

17  of what the purchase and assumption agreement that was

18  ultimately entered into and how the liability was assigned in

19  that agreement.

20         The agreement was negotiated and by both sides, by

21  lawyers and the central legal issue is what were the respective

22  parties thinking when they put this deal together.  So

23  Mr. Cooney certainly could answer questions about business

24  advice, business services that he offered his client.  He could

25  certainly answer questions that don't elicit information that

1  wasn't intended to be kept confidential.

2      If you're planning to do a deal with somebody else there

3  are plenty of facts and plenty of communications that are not

4  intended to be kept confidential because they're necessary to

5  share with the opposing side of the transaction.

6      And so Mr. Cooney is one of very few people who can answer

7  the questions relating to what JPMorgan Chase thought the P&A

8  agreement meant and what assignment of liability there was in

9  the purchase and assumption agreement.

10     Mr. Cooney who is an in-house lawyer along with Michael

11 Lipsitz who is an in-house lawyer and Mitch Eitel who is an

12 outside lawyer were the three key personnel on JPMorgan Chase's

13 side of this transaction.

14     Likewise, on the FDIC side there are a handful of lawyers

15 who are negotiating this deal.

16     And if the parties can't ask the lawyers who negotiated the

17 deal what their clients were thinking in a case that is all

18 about what the parties were thinking in the deal, then we are

19 going to be hamstrung in discovery in answering the questions

20 that the Court asks us to take discovery on which is quote the

21 meaning of the P&A agreement and assigned liability under it.

22         THE COURT:  Well, to the extent that JPMorgan Chase

23 puts up an assertion of privilege to prevent testimony about

24 what it was thinking or intending or thought it was committing

25 to at any given moment, then it cannot offer testimony

1  otherwise, and it's just stuck with what it says on a piece of

2  paper.

3           MR. MCINTOSH:  Your Honor, this is Brent McIntosh.

4        We have no intention of doing such a thing.  But your

5  question about, you asked about why wouldn't JPMC have to

6  reveal for example whether they had conversations with the

7  ratings agency gets to exactly the right question.

8        There are deponents who can testify to these things.

9  There are deponents who can testify to question 5 which you

10 were just referencing.  At this juncture was JPMorgan Chase

11 planning for a transaction with the FDIC for the acquisition of

12 WaMu.

13       In fact, the FDIC is deposing Mr. Scharf just next month

14 he can answer that question.  But Mr. Cooney to the extent that

15 he knows the answer to that question said that he learned it as

16 part of a conversation in which he was told information by a

17 client without the presence of strangers for the purpose of

18 securing either legal advice for legal services and that is by

19 definition privileged information.

20       There is no question that people from JPMorgan Chase

21 will testify to the great majority of these questions.  Indeed,

22 24 of the 30 some questions that Mr. Chistensen has identified

23 go to due diligence and what due diligence JPMorgan Chase did.

24 Not to due diligence that Mr. Cooney did or Mr. Lipsitz did,

25 but to the due diligence done by other people at JPMorgan

1  Chase.

2       The FDIC has already deposed the due diligence manager

3  at JPMorgan Chase, Brian Bessie, and they will be deposing

4  other people regarding the due diligence, and they have asked

5  for a 30(B)(6) deposition of the due diligence.  But there's no

6  reason that Mr. Cooney should be the deponent on these

7  questions.  These are not questions properly addressed to the

8  lawyer but they are questions properly addressed to the

9  business persons who were involved in the actions that are

10 being asked about.

11          MR. CHRISTENSEN:  This is Mr. Chistensen.

12      It's a classic example, Your Honor, how in-house lawyers

13 fulfill dual roles within corporations especially when it comes

14 to negotiating transactions.

15      Mr. Cooney wore a business hat as well as a lawyer's

16 hat.  And the case law is replete with examples that, of why

17 the business advice or business services that a lawyer provides

18 to his or her client is not privileged.

19      The example that Mr. McIntosh gave proves our point

20 because the fact that a non-lawyer who knows a particular fact

21 can testify about something, it should make it equally easy for

22 a lawyer who knows the same fact to testify about it.  It is

23 something is not privileged simply because it comes out of a

24 lawyer's mouth.

25          THE COURT:  Go ahead.

1          MR. MCINTOSH:  That's typically incorrect as a

2    statement of the law.

3          If Mr. Cooney learned something that is a fact that

4    Mr. Scharf can testify to, take, let's make up a hypothetical

5    fact.  Mr. Scharf for example, has had conversations with

6    Washington Mutual and he wants to know whether they, it is

7    necessary to disclose them in an A K.  He then says to

8    Mr. Cooney I have had discussion with Washington Mutual.

9          Do I need no disclose them in an A K.

10         This is a classic example of a lawyer client

11   communication that Mr. Scharf can testify that he had

12   conversations with Washington Mutual and Mr. Cooney cannot

13   because it was disclosed to him in confidence, seeking his

14   legal advice on a question.

15         Your Honor, you have reviewed Mr. Cooney's documents

16   already and determined that he was playing a legal role in

17   these negotiations.  There is no basis for Mr. Chistensen to

18   assert that he was playing with regard to these questions all

19   of which look like questions that would have been, that sought

20   information told to Mr. Cooney in seeking his legal services in

21   reviewing the contract of adhesion that the FDIC put up.  There

22   is no reason to suggest that he was providing legal advice and

23   there is no evidence in the 135 randomly selected e-mails that

24   the FDIC chose for you, that Mr. Cooney was providing legal

25   advice.  He was functioning as a lawyer.

1        And when he is told a fact by Mr. Scharf or others,

2    Mr. Scharf can testify to that fact but the fact of Mr. Cooney

3    having learned it from Mr. Scharf in the context of seeking

4    legal services, for legal advice is the classic example from

5    the D.C. Circuit In Re: Field case standard for what is

6    privileged information.

7            THE COURT:  Mr. Chistensen, I do think that there is

8    a distinction there that can't be run over.  In this role to

9    the extent that Mr. Cooney is acting as a lawyer, his client is

10   the one with the privilege and that's the business people at

11   JPMorgan Chase and whosoever in charge making those decisions.

12       So that even if Mr. Cooney could not and would not

13   testify to a fact and maybe even the client wouldn't have to,

14   but the business people may choose to do so because they choose

15   to acknowledge what they have said to their lawyers even if

16   they were seeking legal advice.  At that point, then the client

17   has revealed the facts and the lawyer can now talk about it.

18       But the point that Mr. McIntosh was making was that

19   there was an outside fact, the client revealed the outside fact

20   to the lawyer to get legal advice.  The lawyer is asked after

21   about -- I'm sorry -- the outside fact can't testify.  The

22   client is asked about the outside fact, can testify.  Nobody is

23   yet testifying about the attorney client communication.

24       I mean, it's a, this is why I really wanted to talk

25   about this rather than just kind of rule in the abstract

1  because it's a very difficult line to draw particularly when

2  you are talking about this context, very difficult to draw.

3       And from your own experience, Mr. Chistensen, you know

4  very well that the, both the outside lawyer and the in-house

5  lawyer to be perfectly frank, act as business counselors as

6  well as legal counselors.

7       When it comes to an issue of whether an acquisition

8  target makes good business sense and you're the lawyer in or

9  outside that conversation probably gets extraordinarily murky

10  about whether the lawyer is actually providing legal advice or

11  business advice.

12       I mean, this day and age it's very hard to separate the

13  two, maybe in the 19th Century it was easier when we all made

14  buggy whips.  But I think in this day of regulatory oversight,

15  it's much more difficult to make that distinction.

16       And if Mr. Cooney whom I have found was acting as a

17  lawyer and in the communications I looked at, communications

18  within the context of his lawyer function, if he testifies that

19  I learned something within the context of my legal function so

20  therefore, I cannot answer that question, I don't have a basis

21  to challenge his statement.

22       Now if you develop other evidence that gives you a basis

23  instead of your general knowledge of how these things work,

24  well then, the facts change.  But I mean, I don't have a basis,

25  you haven't provided a basis to challenge his assertion and no,

1  no, I can't answer that one because that was in the context of

2  my attorney client relationship.

3      Now, but let me go back to my opening statement on this

4  point.  If when all is said and done there are holes in the

5  evidence, or the history or whatever you want to call it, that

6  the FDIC has been able to obtain from JPMorgan Chase because of

7  the assertions of privilege, JPMorgan Chase is going to have to

8  suffer from not having been able to demonstrate something.

9  Because they're not going to be able to come back and have

10  Mr. Cooney testify to something that he's refused to answer.

11      MR. CHRISTENSEN:  It also becomes very difficult,

12  Your Honor, for the FDIC to satisfy its need to obtain

13  discovery about what JPMorgan Chase intended.

14      THE COURT:  Yes, but to the extent that we don't

15  know.  Because JPMorgan Chase hasn't said what it intended or

16  hasn't said clearly or hasn't really specified what it intended

17  as a specific date or time, then your client says well, this is

18  what we intended and we were clear about it and you win because

19  there's no evidence contraverting you, don't you?

20      I mean, this is what I'm saying.  This is why I'm saying

21  that there are strong reasons why clients assert attorney

22  client privilege.  There are times when they decide it's to

23  their benefit to waive attorney client privilege.  I can't make

24  them.  They have made that decision.  You can't make them.

25      But if they can't demonstrate what JPMorgan Chase was

1  thinking in a credible complete way, then what you were

2  thinking matters and not what JPMorgan Chase was thinking

3  because we don't know.  And given the chance they haven't shown

4  us.

5          Now I'm not saying, Mr. McIntosh, you won't have shown,

6  please.  I'm just saying to the extent that it isn't shown

7  because there's been an assertion of attorney client privilege

8  well, then they're stuck with what the document says and we

9  already know that.

10          MR. MCINTOSH:  Your Honor, we -- Brent McIntosh.

11          We understand completely.  We do not intend to take that

12  position.  We have the decision makers of JPMorgan Chase will

13  be testifying on this question.

14          I think in fairness the shoe is actually on the other

15  foot because of the deliberative process implication by the

16  FDIC.  I think they will be actually precluded if they continue

17  down the path they're taking for providing any evidence of the

18  intention of Chairman Bair or the FDIC Board because we have

19  not been allowed any discovery into those questions.  We have

20  been prevented from taking any discovery.

21          THE COURT:  I saw that you raised that in your letter

22  and that you wanted to argue about that.  That's and to the

23  extent that your statement is true, that they are asserting the

24  privilege and therefore not producing information because

25  they're standing on their privilege and the privilege is

1   important to the institution not just on this one case, then

2   you're right.

3       If they can't, if they are unwilling to have testimony

4   produced or presented in order to explain what FDIC thought it

5   was getting into at any given moment, then we don't have that

6   information and we're stuck with what the document says to be

7   interpreted without their input.

8       You both, I agree with you, you both are having to

9   evaluate what advice you give to your clients on the assertion

10  of a privilege here.  The various privileges that you are

11  dealing with.  And I assume you've given that advice and I

12  assume your clients have knowingly made decisions as to what

13  they want to assert.

14      They should, you know, recognize that they can decide

15  not to assert that privilege for these particular issues and

16  that it wouldn't interfere with their ability to assert the

17  privilege in other contexts, but obviously, to waive the

18  privilege may reveal more than they want to or may have

19  institutional or other reasons not to do.  That's perfectly

20  fine.  Clients are entitled to their privileges.

21      But you're right, Mr. McIntosh is right, if asserting a

22  deliberative process privilege precludes information from the

23  FDIC as to what it was thinking and what it was intending and

24  what its governors or others thought they were getting into,

25  then we don't have that information and we're left with the

1  document.

2          MR. CHRISTENSEN:  It's worth pointing out, Your

3  Honor, this is Mr. Christian, the accusation with the FDIC is

4  how it withheld this information is demonstrably false.

5  Because Mr. McIntosh himself asked Mr. Wigand more than 20

6  pages worth of questions at his deposition, pages 41 through

7  60, about consultations with Chairman Bair on the form of the

8  transaction that was being offered to JPMorgan Chase, and Mr.

9  Wigand not only testified about that over the course of those

10  20 pages but testified in answer to questions that he discussed

11  with Chairman Bair what liabilities would be like to the FDIC

12  on pages 188 and 189 of the deposition transcript.  So this is

13  a --

14          THE COURT:  A canard.  Well, it's, obviously I don't

15  have the depositions either by transcript or by memory.  I

16  didn't attend them and only you guys know what record you're

17  really developing.

18          I'm just responding to the facts of the arguments are

19  the nature of the impact of the arguments.  If FDIC has

20  produced a witness or witnesses to give full information to

21  JPMC, then obviously, their opinions and intentions,

22  expectations are all there in the record.

23          To the extent that Mr. McIntosh has an argument that

24  they're not, then we'll have to deal with it when we get there.

25          But does this conversation about these questions which

1   ones of these Mr. Cooney could say yes or no, but oh, not

2   really give you much information.  Is that, have we addressed

3   these questions to your satisfaction or does somebody want to

4   argue more about these?

5           MR. MCINTOSH:  Your Honor, I would -- Brent McIntosh

6   again -- I would only say that because you have been given the

7   questions without the responses.  In many cases the response

8   actually implied the answer yes, I have knowledge but then went

9   on to say what is I think natural in human conversation began

10  to address the substance of questions what is that knowledge

11  and declined to answer that.

12          So you have for example, you pointed to your first

13  question was Number 7.  Mr. Cooney said the only information I

14  would have about that is information I gained in my role as

15  counsel to JPMorgan Chase and what I believe would be a

16  privileged conversation.  The privileged conversation testified

17  to the existence of the privileged conversation.

18          In other words yes, he has that knowledge in sort of

19  without being so literal as to say yes or no, but then went on

20  to say that to the extent that they're in the same word pointed

21  out that the entire extent of his knowledge is privileged

22  conversation --

23          THE COURT:  Well, that seems to me to be a legitimate

24  --

25          MR. MCINTOSH:  But many of the answers pre-supposes

1  the answer yes, but it's privileged.

2       THE COURT:  Mr. Chistensen, do you, let's stay with

3  question 7 for the moment because that's a clear one having had

4  the answer to the question read outloud.

5       Do you disagree that with my ruling that Mr. Cooney

6  would have to answer at least yes or no to question 7 that the

7  answer that he gave provided in essence the yes, I do have

8  information but I can't tell you what it is?

9       MR. CHRISTENSEN:  No, Your Honor, because and we have

10  had this conversation at the deposition itself.  We have no

11  means of knowing whether if Your Honor were to say yes to

12  answer that question, whether we would simply get an answer

13  that no, I don't have an understanding.

14       But if, even if his answer is yes, that he has some

15  understanding, whether JPMorgan Chase undertook some, full

16  reengagement of its due diligence in September of 2008,

17  JPMorgan Chase would be hard pressed to demonstrate that that

18  fact is, involves both a communication that was intended to be

19  kept confidential from anyone else and inherently involves the

20  request for legal advice, legal services or representation of

21  legal proceeding.

22       THE COURT:  Well, let's see.  You have to again

23  distinguish what question JPMorgan Chase can be required to

24  answer and what question Mr. Cooney in his role as JPMorgan

25  Chase's lawyer can be requested, required to answer.

1        Let's assume that Mr. Cooney in talking to his client

2    about what JPMorgan Chase might do in anticipation of

3    negotiation with the FDIC to take over WaMu that he said, you

4    know, before we really begin all of this you should undertake a

5    full reengagement with complete business unit and cooperate

6    function participation.  Whatever that means.  So that you and

7    we can identify exactly where you are now for purposes of

8    figuring out how we need to put this deal together to make it

9    lawful under all of the regulatory scheme and beneficial to

10   JPMC.  Something like that.

11       Now I don't, now I'm making that up as you know, but in

12   that context Mr. Cooney's answer to your question, do you have

13   any understanding of whether JPMorgan Chase undertook a

14   reengagement?  The answer would be well, I have been in

15   conversations about that, but I can't reveal to you what the

16   extent of what I know because I got that in my role as lawyer.

17   Wouldn't that be right, something about which he, about the

18   same as what he actually said?

19       I mean, the question is my question to you was wasn't

20   his answer to your question the equivalent of saying yes, I do

21   have an understanding, but I cannot tell you what that

22   understanding is because I learned it only in my role as

23   lawyer?  That's what my question really is.

24       MR. CHRISTENSEN:  The threshold test, Your Honor, is

25   not whether or not somebody learned something in their role as

1   lawyer.  If that were the case Mr. Cooney should not have

2   answered any of these questions because he has always

3   functioned as a lawyer for JPMorgan Chase.

4           THE COURT:  No, no, now, I was speaking in shorthand.

5   And so you're going to make me do the whole long sentence here.

6           As a lawyer giving legal advice to the client whose

7   asked for it in connection with his need for legal advice and

8   it's done in confidence and it's intended to be kept

9   confidential and whatever else criteria you want to put to

10  this, Mr. Chistensen, I have found already on the basis of

11  reviewing e-mails that Mr. Cooney at least in those e-mails was

12  acting as a lawyer giving legal advice to JPMorgan Chase, a

13  client for whom he happened to be in-house counsel, but who was

14  nonetheless his client as a matter of law giving legal advice

15  in pursuant of the possibility of a, an acquisition of WaMu.

16          Now, I'm telling you I have made that ruling that he was

17  acting as a lawyer, not in every single conversation, but in

18  the instance in which he says well, that was I learned that

19  when I was, had my lawyer hat on.  I didn't have my business

20  hat on.  I wasn't sitting around having a beer with a good

21  friend.  We weren't exhausted at three o'clock in the morning

22  and just shooting the breeze.  I learned this in my lawyer

23  role.

24          I don't have a basis to challenge him on that, do you?

25          MR. CHRISTENSEN:  Only insofar as he answered some

 1   questions about information he learned while he had his lawyer

 2   hat on.

 3        THE COURT:  Well, give me an example of that.  That's

 4   another thing.  I mean, there's a suggestion in your letter --

 5   now wait a minute, he testified about some things, so why can't

 6   he testify about it all.

 7        What is the nature of things that you think he testified

 8   about and so therefore, he shouldn't be allowed to stop

 9   testifying now?

10        MR. CHRISTENSEN:  To give you, to give a stark

11   example.  I also asked the question of what role Bryan Bessie

12   played in the due diligence, in the P&A transaction.

13        While Mr. Cooney initially declined to testify on the

14   basis of his answer would reveal information he learned in the

15   course of providing legal services to his client.  After a

16   break, he did come back and answered the question.

17        When I asked similar questions about the role that Todd

18   Gordon played or the role that Charlie Scharf played, he simply

19   stood on the objection that he learned of the answer in the

20   course of providing legal services to his client.  And would

21   decline to answer the question because it would reveal

22   privilege.

23        Now it simply can't be that his knowledge about what one

24   person did in this transaction versus another person is

25   privileged in one context and not in the other.

1          THE COURT:  Well, I don't know.

2      Why don't you answer that, Mr. McIntosh.

3          MR. MCINTOSH:  That seems to me to be just simply

4  incorrect.

5          I'm not going to reveal any privileged information here.

6  Let's create a hypothetical.  Mr. Cooney and Mr. Bessie are

7  discussing with WaMu people what Mr. Bessie's role in the

8  transaction is.  Mr. Cooney now knows that in a non-privileged

9  way because it's been discussed with WaMu.

10         Later Mr. Cooney and Mr. Bessie are discussing the

11  extent of due diligence to determine whether Mr. Cooney regards

12  it as sufficiently protective of JPMC's rights under the P&A

13  agreement.  And Mr. Bessie says let me tell you what Charlie

14  Scharf and Todd Gordon did in the due diligence and you tell me

15  if it relates to particular terms in the transaction.

16         The information that Mr. Cooney knows about Mr. Bessie's

17  role is clearly not privileged, the information that Mr.

18  Cooney knows about Mr. Gordon's role and Mr. Scharf's role was

19  revealed to him in a client conversation seeking legal services

20  and legal advice.

21         There is just no, the parallel does not create a

22  statement.

23         THE COURT:  Well, the example may not be the real

24  life underlying fact, but it does provide a real life

25  explanation for why the answer could be I can tell you about

1  Mr. Bessie, but not about the other two.  I mean, that's --

2  that's where we're running into.

3       If Mr. Cooney says now, if you have a basis to think or

4  a basis to allege that Mr. Cooney was not answering your

5  questions truthfully, that's a different issue.  Or if you

6  think that you have a basis to argue that he was actually in

7  this context he had to have been a business person, not a legal

8  person, ex-context, whatever ex-context, ex-question might be,

9  I don't have any basis to do that and when he makes the

10 distinctions that Mr. McIntosh just suggested that sounds to me

11 to be the right distinction.  And if you want more of that you

12 got to go ask Charlie and Todd what was your role or the

13 30(B)(6) witness.

14      MR. CHRISTENSEN:  Give an example that strikes a

15 little bit more to the substance, Your Honor.  At page 273 in

16 the deposition transcript of Mr. Cooney, I asked Mr. Cooney if

17 he could describe his role in dealing with what's referred to

18 as the GSE issue which was JPMorgan Chase's discussions with

19 Fannie Mae and Freddie Mac over the repurchase obligations that

20 JPMorgan Chase acquired from WaMu vis-a-vis Fannie and Freddie.

21      And Mr. Cooney went on for paragraphs answering about

22 JPMorgan's thinking on the issue, the role that he played, and

23 the role that other lawyers played on the issue.

24      It simply can't be that JPMorgan Chase's, you know,

25 thinking on some issues is protected because he learned about

1  it in the course of providing legal services and JPMorgan

2  Chase's thinking and the role its lawyers played is not

3  protected when he feels like answering the question.

4      THE COURT:  Well, I don't know that I would accuse,

5  he feels like answering not on at least what we have developed

6  so far.  But his role in dealing with whatever the issue was,

7  what did you call it, the GSE?

8      MR. CHRISTENSEN:  Yes.  The Fannie Mae and Freddie

9  Mac.

10      THE COURT:  Yes, yes, but GSE seems to be what

11  everybody would know what we're talking about.

12      So your question is what is your role in dealing with

13  the GSE issue and he responds well, I met with Fannie Mae many

14  times, talked to Freddie Mac lots and I tried to get them to

15  agree to de da de da de da.  And, you know, John Doe came with

16  me every time because he really knew the underlying facts.  I

17  was dealing with the overarching issues but I was trying to get

18  Freddie and Fannie to agree.

19      If it's that kind of an answer, what he's really talking

20  to you about is his conversations with outsiders, not his

21  conversations -- now, I don't know what he said and you just

22  told me he's told you what JPMorgan Chase was thinking in that

23  context.

24      Was anybody from JPMorgan Chase present with meetings

25  with Fannie Mae or Freddie Mac or telephone conversations that

1   would mean whatever the client said in a conversation with

2   somebody outside was not privileged?

3        Mr. McIntosh, is that the kind of thing we're talking

4   about or am I making that up?

5        MR. MCINTOSH:  Your Honor, Mr. Chistensen has told

6   you that he testified to, extensively to the roles of the

7   various lawyers.

8        As I look at the answer to the question the reference to

9   the other lawyer was limited to who were the lawyers who

10  handled this.  I believe that people who handled the GSE

11  relationships were Bobby Shanker on the business side, Dave

12  Lohman in the mortgage company and their general counsel Laura

13  O'Hara who would have been the in-house lawyer dealing with

14  that.

15       So Mr. Christensen did testify a good deal to

16  information about the interactions with the GSEs in the time

17  period Mr. Christensen described.  There were extensive public

18  interactions between JPMC.  I mean, non-internal interactions,

19  interactions between JPMC and the GSEs at this time, and

20  between among JPMC and GSE and other parties.

21       All of those things would suggest that some of this

22  information is information that was known to a variety of

23  people who are on e-mails with the GSEs and with other third

24  parties that were not the GSEs.  So I mean, to suggest that

25  because Mr. Cooney testified to information about the GSE, he

1  was obviously reviewing the attorney client communications made

2  to him.  There's no basis in the record of that suggestion.

3        THE COURT:  Mr. Chistensen, I'm struggling here, sir.

4        MR. CHRISTENSEN:  It simply can't be the case, Your

5  Honor, that Mr. Cooney can talk about JPMorgan Chase's thinking

6  on some issues, thinking internally, not purely public

7  information or e-mail exchanges that are labeled confidential

8  in this litigation.

9        But the thinking of JPMorgan Chase about how important

10 the GSEs were to it and the contracts with the GSEs, but at the

11 same time when asked about JPMorgan Chase's thinking on other

12 issues related to this transaction say that that information

13 was learned during the course of providing legal services.

14       In neither context, in neither example do I think that

15 the information that is asked for is privileged.  So the

16 argument --

17       THE COURT:  So go, let's instead of arguing about the

18 GSEs, go back to the real point.

19       Why do you think that information known to Mr. Cooney

20 about what JPMorgan Chase was thinking about securitizations or

21 any of these other issues, why do you think that was not

22 privileged?

23       MR. CHRISTENSEN:  JPMorgan Chase must have had some

24 thought about whether the particular liability at issue in this

25 case was transferring to it or remaining with the FDIC.

1        That we've seen the attempts to try to change the deal

2   in negotiations and the FDIC rejected those.  So we know there

3   must have been some communications.

4        Mr. Cooney was one of the three principal negotiators on

5   this deal and all three of those principal negotiators were

6   lawyers.  Mr. Cooney, Mr. Lipsitz and to a lesser extent Mr.

7   Eitel were involved in the constant back and forth with

8   attorneys at the FDIC negotiating this deal.

9        THE COURT:  Well, anything that they said of course

10  to the attorneys at FDIC by e-mail or otherwise is not

11  privileged.  Anything that their clients tell you about what

12  the clients were concerned about is not privileged.  Anything

13  the clients tell you.  The clients don't say oh, and I told Mr.

14  Cooney this.

15       They say what they thought.  That is not the same thing

16  as having Mr. Cooney tell you.

17       I mean, think about this.  I've been in contract

18  negotiations many times.  I'm an old labor lawyer representing

19  management.  And I've been in many, many, many collective

20  bargaining negotiations.

21       What one says in the context of the collective

22  bargaining negotiations over the table, over the phone, over a

23  drink at three o'clock in the morning, whatever it is you're

24  doing, you are trying to advance your client's interests and

25  you are following directions from the client.

1    Sometimes you say my client is very concerned about the

2   possibility of a strike.  Sometimes you don't talk about that

3   at all because you don't want the other side to even know what

4   your client thinks about the possibility of a strike.  Or we

5   have lots of money, we have no money.  We can do this, we can't

6   do that.  Well, I'm holding this to my chest because that's how

7   I'm going to make a deal at the end.

8    There's a lot of distinction as you know very well

9   between what the lawyer says and what in public and

10   negotiations and what the clients inner most thinking in

11   conversations with the lawyer are about how those negotiations

12   are to be conducted.

13    The conversations between the client and the lawyer as

14   to getting ready for, in the middle of, what do I do now with

15   these negotiations, those are privileged.  If you then go over

16   the lawyer and you ask the client what were you thinking when

17   the negotiations reached this point?  The client has to answer.

18    The client doesn't say and I told my lawyer, the client

19   says what the client was thinking.  Mr. Cooney was not the

20   client, you've got to get to the client.  I don't know who the

21   client was.  I don't know to whom he was speaking.  Presumably

22   he has told you that already.

23    Who was playing the role of client, CEO, the CFO, the

24   board of directors, the chair of the board?  I don't know.  It

25   was a big deal so it's probably somebody pretty high up.

1          Do you know?

2          MR. CHRISTENSEN:  I don't think the case law supports

3    the notion that JPMorgan Chase's thinking becomes privileged

4    because a lawyer was involved in that.

5          THE COURT:  No, no, no.  It's not just because a

6    lawyer was involved, you are absolutely correct.  It's not

7    privileged just because a lawyer happens to be in the room.

8    And that is a distinction that lawyers have to be able to draw.

9          The difference is the lawyer is talking to the client

10   about how are we going to conduct these negotiations, what do

11   you want me to say, what do you want me not to say.  Here's my

12   advice on it, I have talked to them, I talked to so and so in

13   the hallway privately, blah blah blah.

14         In that conversation and that's what you're talking

15   about.  You know, was JPMorgan Chase planning for a transaction

16   with the FDIC for the acquisition of WaMu on September 12th,

17   2008?  Mr. Cooney could only know that if he were acting as a

18   lawyer and not a business person as a result of a conversation

19   with a client in planning for his legal services putting

20   together this transaction.

21         I mean, the basic argument you have here is whether or

22   not Mr. Cooney was acting as a lawyer or not.  If you, if you

23   replace Mr. Cooney with someone from your own firm and say

24   JPMorgan Chase hired your firm to do this work because for

25   whatever reason, they didn't want it to be done in-house, they

1  wanted this really clear attorney client relationship to be

2  visible to all and your partner did what Mr. Cooney did or says

3  he did here.  Would you not think that was privileged?

4       And so the question, the problem is that you're having

5  difficulty seeing Mr. Cooney as the lawyer instead of the

6  client, I think.

7       MR. CHRISTENSEN:  I think it's not so easy in these

8  contexts to make that distinction.

9       THE COURT:  Well, as to that I completely agree.  You

10 are one hundred percent correct.

11      But to make, when Mr. Cooney says no, no, this was in my

12 role as a lawyer, you have to have more than a statement that

13 says well, it must be that he was acting as a business person

14 too.

15      I mean, there has to be something that says that wasn't

16 actually legal advice or that wasn't intended to be kept quiet,

17 whatever, that's been revealed already, that's known to the

18 world.  But if Mr. Cooney says no, no, I was acting as a

19 lawyer, I understand lawyer business, I understand that.  I was

20 the lawyer, I was in charge of this deal.

21      MR. CHRISTENSEN:  I think that winds up shifting the

22 burden, Your Honor, to the party asking the questions.  It is

23 in fact a burden of the party answering the questions to

24 sustain sufficient facts to establish the burden.  Because it

25 would put us in the impossible position of having to find out

1  information about each of those assertions that we can't find

2  out because of the assertion of the privilege.

3          THE COURT:  Well, there are, there are two separate

4  questions that your point raised.  One is who has the burden of

5  showing that it was in fact an attorney client relationship in

6  which Mr. Cooney was operating?  That burden belongs to the

7  party asserting the burden.  That is JPMorgan Chase.

8          As of this moment anyway, I think JPMorgan Chase has

9  satisfied their burden showing that Mr. Cooney was operating at

10  least in the main, if not on every instance, as a lawyer

11  putting together a business deal for his client, not as a

12  businessmen but as the lawyer on the deal.  I think they

13  established that sufficiently to this point.

14          Now the burden as to the underlying issue of whether the

15  liability changed or not, that's an entirely different issue.

16  And it depends, it depends on whose the proponent for which

17  position as to where that burden lies, but again, if JPMorgan

18  Chase cannot produce a witness or a series of witnesses to

19  clarify what it intended, what it thought, what it thought the

20  language meant by its business people, then it's left with

21  nothing on that point.

22          And you, I mean, you're just asking the person who's not

23  in a position to answer the question.  Although I agree with

24  you as I think we started out, a lot of your questions could be

25  answered at least to a yes or no although I don't know how much

1    satisfaction one gets for that.

2        Now the question Number 8 about in your claim of

3    privilege was the information gained because somebody was

4    asking you for legal advice.  I mean, Mr. Cooney has to answer

5    that question.  That's to establish the privilege at all.

6        MR. MCINTOSH:  Your Honor, Brent McIntosh.

7        I'm afraid that notwithstanding, I'm afraid that this is

8    a situation where the seller to preclude the answers actually

9    changes the context there.

10       THE COURT:  Well, if he's answered the question.

11       MR. MCINTOSH:  Does not actually appear in the

12   transcript.

13       It appears to be an amalgam as far as we can tell those

14   questions during a period when there was a bunch of cross talk.

15   So I don't know what the intention of the FDIC listing that

16   question was, but as far as we can tell and perhaps I missed it

17   somehow, but I don't believe it actually appears in the

18   transcript in that form.  And I think that there was some

19   amount of talking over each other at that point.

20       MR. CHRISTENSEN:  Well, it was certainly not our

21   intention to include any question that didn't appear as it was

22   in the transcript.

23       MR. MCINTOSH:  It's possible that I missed it, but I

24   don't see it in the transcript.

25       THE COURT:  Well, if you want that question answered

1  there are some of these others that I think you can ask

2  Mr. Cooney again and at least get his yes or no to the extent

3  that he hasn't already given you information that provides the

4  yes or no.

5      And to the extent that you want that question answered,

6  you can ask it to him because he is the proponent of the

7  privilege and needs to be able to say to you on what basis he

8  thinks he was having privileged communications.

9      Have we exhausted ourselves for the moment?  I'm happy

10 to resume this conversation if you want to chew on it awhile

11 and come back.

12     MR. CHRISTENSEN:  I think that might be beneficial,

13 Your Honor, because as you had suggested earlier, it would be

14 good to have some, some understanding of what the ground rules

15 are since the primary witness in this case for negotiating the

16 purchase and assumption agreement are lawyers.

17     THE COURT:  Right, right.  But remember that

18 negotiators and decision makers aren't necessarily the same

19 people.  And so when you speak to negotiators who are lawyers,

20 you can elicit from them information that's not privileged but

21 if you want to get to decision makers as to why they made

22 certain decisions, a lawyer is probably not the one who is

23 going to be able to tell you.  I'm just dealing from my own

24 experience.

25     Anyway, do you want to set up another telephone

1    conversation call?

2         Do you have access to my schedule?

3             THE DEPUTY CLERK:  I do.

4             THE COURT:  Do you want to try to pick a date for

5    some time next week or do you want to do that -- let's see,

6    tomorrow is Friday, right.

7         Hold on, we're opening up my calendar.

8             MR. MCINTOSH:  Your Honor, Brent McIntosh.

9         May I make a suggestion?

10            THE COURT:  Yes.

11            MR. MCINTOSH:  It seems to me you mentioned the vast

12   majority of these questions the underlying facts will need to

13   be testified to by the business persons, business people who

14   may have communicated the facts to Mr. Cooney.

15        Questions like, you know, even the last one which

16   Mr. Cooney clearly cannot answer was to which party would have

17   the repurchase obligations, an important one to JPMorgan Chase.

18        You have said that Mr. Cooney cannot answer that

19   question.  There is no question that Mr. Scharf will be able to

20   answer that question.

21        And 24 of these, supposedly 41, I think that the number

22   is probably closer to 36, 37 questions go to due diligence.

23   The FDIC has asked for a 30 (B)(6) on due diligence.  It seems

24   to me that rather than arguing ad infinite item about

25   Mr. Cooney's deposition, it might make sense to have the

1   deposition go forward regarding the substantive items involving

2   the business people and the 30(B)(6) representatives and if the

3   FDIC feels at the end of that process that they need Mr. Cooney

4   to testify yes or no to the question for example, did you have

5   any understanding of whether JPMC undertook a full reengagement

6   then we can do a yes or no question at that point.

7        But it doesn't seem to me that we have, I don't think

8   that Mr. Chistensen likes the ground rules for where the

9   privilege is, but we at least heard Your Honor loud and clear

10  on what they are and it doesn't seem to me that in the D.C.

11  Circuit case law that there is actually any dispute about that.

12       So I'm not sure why we need to have an extensive

13  discussion about Mr. Cooney's deposition again prior to

14  Mr. Chistensen seeing whether he gets satisfaction, which I

15  think he will on these questions from the persons actually

16  involved in the underlying fact.

17       Very few of these things go to things that were within

18  Mr. Cooney's unique knowledge.  In fact, I don't think that

19  none of them go to Mr. Cooney's unique knowledge except the

20  question that asks essentially what legal services did you

21  provide to JPMorgan Chase in particular on particular items of

22  the P&A or a particular schedule.

23       So I'm not sure to what extent the questions regarding

24  Mr. Cooney have to be resolved immediately or if we have an

25  understanding of what the rule on privilege is we can go

1   forward on depositions.  And if the FDIC feels at the end of

2   the for example, the 30 (B)(6) on due diligence they need

3   Mr. Cooney to answer yes or no his knowledge about what due

4   diligence was done based on conversations he had with people

5   seeking his legal services, then we can give yes or no answers

6   to those questions.

7          THE COURT:  Mr. Chistensen, you thought that you

8   would like to continue this.

9          What about Mr. McIntosh's alternative?

10         MR. CHRISTENSEN:  It might be better to proceed with,

11  it would not be especially useful to have Mr. Cooney simply

12  answer yes or no to a handful of these questions in light it

13  might be better to proceed with the other depositions and

14  return to Your Honor as issues arise related to the attorney

15  client privilege.

16         THE COURT:  Okay.  Well, let's do it that way.  And

17  if at the end of it the FDIC thinks that it has been

18  stonewalled, then, because the use of attorney client

19  privilege, then we can revisit this issue, okay.

20         MR. CHRISTENSEN:  Okay.

21         THE COURT:  All right, everybody.  Thank you for your

22  time and attention.  You see, I told you it would take longer

23  than the 15 or 20 minutes we had.  But I really appreciate your

24  consideration of all of these issues and your help to me to get

25  through them.

1          I look forward to talking to you again.  Good luck, have

2   a good weekend when you get there.

3          MR. MCINTOSH:  Thank you, Your Honor.

4          THE COURT:  Thank you.

5          MR. CHRISTENSEN:  Thank you, Your Honor.

6          THE DEPUTY CLERK:  This Honorable Court is now

7   adjourned.

8          (Proceedings concluded at 11:40 a.m.)

9                          -oOo-

1                          CERTIFICATE

2        I certify that the foregoing is a true and correct

3   transcript, to the best of my ability, of the above pages, of

4   the stenographic notes provided to me by the United States

5   District Court, of the proceedings taken on the date and time

6   previously stated in the above matter.

7        I further certify that I am neither counsel for, related

8   to, nor employed by any of the parties to the action in which

9   this hearing was taken, and further that I am not financially

10  nor otherwise interested in the outcome of the action.

11

12  _____        _____

13  /s/Crystal M. Pilgrim, RPR             Date: March 2, 2013

14

15

16

17

18

19

20

21

22

23

24

25

-    Case 1:09-cv-01656-RMC
-------------------------
 1/9
-ooo [1]   52/9
/
/s/Crystal [1]   53/12
0
09-1656 [2]   1/4 3/5
1
10 [1]   6/16
10504 [1]   1/16
10:15 [1]   1/6
11 [3]   6/20 6/22 6/25
11:40 [1]   52/8
12 [1]   7/7
12th [2]   21/10 44/16
13 [1]   7/12
135 [1]   25/23
15 [2]   8/2 51/23
16 [1]   8/11
1656 [2]   1/4 3/5
16th [1]   8/2
17 [1]   8/15
1701 [1]   1/22
1775 [1]   1/19
18 [1]   8/19
188 [1]   31/12
189 [1]   31/12
19th [1]   27/13
2
20 [4]   9/17 31/5 31/10
 51/23
20001 [1]   2/9
20006-2401 [1]   1/20
20006-5805 [1]   1/23
2008 [6]   5/4 6/9 8/2
 21/11 33/16 44/17
2013 [2]   1/6 53/12
21 [2]   1/6 9/23
22 [1]   10/4
22226-3500 [1]   2/5
24 [4]   13/14 19/1 23/22
 49/21
2401 [1]   1/20
25 [1]   13/24
26 [1]   14/1
27 [1]   14/4
273 [1]   38/15
28 [1]   14/9
3
30 [6]   23/22 24/5 38/13
 49/23 50/2 51/2
31 [1]   14/20
33 [1]   15/9
333 [2]   1/16 2/9
34 [1]   15/13
35 [1]   15/25
3500 [1]   2/5
3501 [1]   2/4
36 [2]   16/3 49/22
37 [2]   16/7 49/22
39 [1]   16/17
4
40 [3]   6/22 7/5 16/22
41 [2]   31/6 49/21

45 [2]   8/20 8/23
5
5 [1]
53 [1]   15/15
5805 [1]   1/23
6
60 [1]   31/7
600 [1]   12/25
7
7062 [1]   2/4
A
a.m [2]   1/6 52/8
ability [2]   30/16 53/3
able [9]   9/21 19/22 28/6
 28/8 28/9 44/8 48/7 48/23
 49/19
about [94]
above [2]   53/3 53/6
absolutely [1]   44/6
abstract [2]   19/10 26/25
access [1]   49/2
accurate [1]   6/24
accusation [1]   31/3
accuse [1]   39/4
acknowledge [1]   26/15
acquire [1]   19/17
acquired [1]   38/20
acquiring [3]   18/5 19/18
 19/18
acquisition [6]   20/3
 21/12 23/11 27/7 35/15
 44/16
act [1]   27/5
acting [8]   26/9 27/16
 35/12 35/17 44/17 44/22
 45/13 45/18
action [3]   3/5 53/8 53/10
actions [4]   19/1 21/4
 21/7 24/9
actually [15]   4/24 6/21
 14/14 27/10 29/14 29/16
 32/8 34/18 38/6 45/16
 47/8 47/11 47/17 50/11
 50/15
ad [1]   49/24
address [1]   32/10
addressed [3]   24/7 24/8
 32/2
adhesion [1]   25/21
adjourned [1]   52/7
advance [1]   42/24
advice [38]   5/15 5/19 6/3
 6/4 11/1 11/5 11/14 13/13
 14/18 18/3 18/12 18/15
 19/20 19/20 19/24 19/24
 21/24 23/18 24/17 25/14
 25/22 25/25 26/4 26/16
 26/20 27/10 27/11 30/9
 30/11 33/20 35/6 35/7
 35/12 35/14 37/20 44/12
 45/16 47/4
afraid [3]   10/15 47/7
 47/7
after [3]   6/2 26/20 36/15
again [11]   7/24 9/18 9/20
 10/22 15/4 32/6 33/22
 46/17 48/2 50/13 52/1
against [1]   8/8
age [1]   27/12

agencies [1]   16/7
agency [2]   16/10 23/7
agree [14]   12/23 12/24
 13/7 13/7 13/8 13/13
 19/13 20/12 21/3 30/8
 39/15 39/18 45/9 46/23
agreement [10]   14/21
 20/11 21/17 21/19 21/20
 22/8 22/9 22/21 37/13
 48/16
ahead [1]   24/25
aided [1]   2/11
al [2]   1/7 3/7
all [26]   3/22 4/1 13/1
 15/9 15/25 17/6 19/1 20/6
 21/2 21/2 22/1 22/17
 25/18 27/13 28/4 31/22
 34/4 34/9 36/6 40/21 42/5
 43/3 45/2 47/5 51/21
 51/24
allege [1]   38/4
allowed [2]   29/19 36/8
along [2]   18/8 22/10
already [10]   5/20 9/8
 15/6 24/2 25/16 29/9
 35/10 43/22 45/17 48/3
also [5]   3/15 6/16 6/17
 28/11 36/11
alternative [1]   51/9
although [3]   20/14 46/23
 46/25
always [1]   35/2
am [4]   10/15 40/4 53/7
 53/9
amalgam [1]   47/13
among [3]   7/22 18/24
 40/20
amount [1]   47/19
ANNE [2]   2/2 3/14
another [3]   36/4 36/24
 48/25
answer [62]
answerable [1]   14/8
answered [19]   4/25 5/5
 5/18 5/18 5/21 6/10 7/20
 8/5 9/2 12/25 15/23 17/9
 35/2 35/25 36/16 46/25
 47/10 47/25 48/5
answering [6]   22/19 38/4
 38/21 39/3 39/5 45/23
answers [6]   4/22 11/20
 14/23 32/25 47/8 51/5
anticipate [2]   7/8 8/3
anticipation [1]   34/2
any [29]   5/6 6/6 6/13
 6/23 7/5 7/12 8/19 9/3
 9/17 13/21 16/9 17/7
 18/19 19/19 19/20 22/25
 29/17 29/19 29/20 30/5
 34/13 35/2 37/5 38/9
 41/21 47/21 50/5 50/11
 53/8
anybody [2]   15/16 39/24
anyone [2]   3/22 33/19
anything [4]   8/13 42/9
 42/11 42/12
anyway [3]   15/15 46/8
 48/25
apparently [1]   15/6
appear [2]   47/11 47/21
APPEARANCES [2]   1/14 2/1

| A | B | C |
|---|---|---|
| **appears [2]**  47/13 47/17 | **baldly [1]**  17/3 | 26/10 26/14 27/5 27/8 |
| **appreciate [5]**  11/8 11/10 | **bank [...]**  1/3 3/5 3/13 | 27/18 34/25 35/19 38/7 |
| 13/19 19/12 51/23 | 3/18 3/20 19/17 | 40/11 44/18 45/13 45/19 |
| **approach [1]**  13/8 | **bargaining [2]**  42/20 | 46/11 46/20 49/13 49/13 |
| **Arabic [1]**  14/10 | 42/22 | 50/2 |
| **are [55]** | **barren [1]**  14/21 | **businessmen [1]**  46/12 |
| **aren't [1]**  48/18 | **based [1]**  51/4 | |
| **argue [6]**  20/9 21/9 21/13 | **basic [1]**  44/21 | **C** |
| 29/22 32/4 38/6 | **basis [15]**  5/16 25/17 | **CA [1]**  1/4 |
| **arguing [3]**  11/7 41/17 | 27/20 27/22 27/24 27/25 | **calendar [1]**  49/7 |
| 49/24 | 35/10 35/24 36/14 38/3 | **call [3]**  28/5 39/7 49/1 |
| **argument [6]**  8/10 10/17 | 38/4 38/6 38/9 41/2 48/7 | **came [3]**  18/7 18/8 39/15 |
| 10/20 31/23 41/16 44/21 | **be [95]** | **can [42]**  4/24 5/8 5/9 |
| **arguments [4]**  8/8 17/10 | **because [61]** | 6/10 7/1 7/20 10/5 12/18 |
| 31/18 31/19 | **becomes [2]**  28/11 44/3 | 17/8 17/20 17/21 17/22 |
| **arise [1]**  51/14 | **been [22]**  9/9 12/2 15/10 | 17/22 17/23 19/19 21/7 |
| **arises [1]**  19/10 | 15/14 18/11 18/12 25/19 | 22/6 23/8 23/9 23/14 |
| **Arlington [1]**  2/5 | 28/6 28/8 29/7 29/19 | 24/21 25/4 25/11 26/2 |
| **Armonk [1]**  1/16 | 29/20 32/6 34/14 37/9 | 26/17 26/22 30/14 33/23 |
| **around [1]**  35/20 | 38/7 40/13 42/3 42/17 | 33/25 34/7 37/25 41/5 |
| **as [78]** | 42/19 45/17 51/17 | 43/5 47/13 47/16 48/1 |
| **ask [6]**  4/14 22/16 38/12 | **beer [1]**  35/20 | 48/6 48/20 50/6 50/25 |
| 43/16 48/1 48/6 | **before [3]**  1/11 18/19 | 51/5 51/19 |
| **asked [16]**  6/2 18/5 19/4 | 34/4 | **can't [23]**  5/7 8/1 14/14 |
| 23/5 24/4 24/10 26/20 | **began [1]**  32/9 | 14/19 16/24 17/1 20/19 |
| 26/22 31/5 35/7 36/11 | **begin [2]**  3/3 34/4 | 22/16 26/8 26/21 28/1 |
| 36/17 38/16 41/11 41/15 | **behalf [1]**  18/14 | 28/23 28/24 28/25 30/3 |
| 49/23 | **being [4]**  10/2 24/10 31/8 | 33/8 34/15 36/5 36/23 |
| **asking [7]**  5/15 6/14 | 32/19 | 38/24 41/4 43/5 46/1 |
| 13/12 18/14 45/22 46/22 | **believe [6]**  10/12 12/4 | **canard [1]**  31/14 |
| 47/4 | 18/23 32/15 40/10 47/17 | **cannot [8]**  9/11 22/25 |
| **asks [3]**  6/17 22/20 50/20 | **belongs [1]**  46/6 | 25/12 27/20 34/21 46/18 |
| **assert [5]**  25/18 28/21 | **beneficial [2]**  34/9 48/12 | 49/16 49/18 |
| 30/13 30/15 30/16 | **benefit [1]**  28/23 | **capacity [1]**  3/13 |
| **asserting [3]**  29/23 30/21 | **Bessie [6]**  24/3 36/11 | **capitalized [2]**  16/18 |
| 46/7 | 37/6 37/10 37/13 38/1 | 16/18 |
| **assertion [7]**  5/22 5/23 | **Bessie's [2]**  37/7 37/16 | **case [12]**  11/1 21/16 |
| 22/23 27/25 29/7 30/9 | **best [1]**  53/3 | 22/17 24/16 26/5 30/1 |
| 46/2 | **better [2]**  51/10 51/13 | 35/1 41/4 41/25 44/2 |
| **assertions [2]**  28/7 46/1 | **between [5]**  40/18 40/19 | 48/15 50/11 |
| **assigned [2]**  21/18 22/21 | 40/20 43/9 43/13 | **cases [1]**  32/7 |
| **assignment [1]**  22/8 | **beyond [2]**  9/21 13/9 | **central [1]**  21/21 |
| **associated [1]**  15/13 | **bid [1]**  16/1 | **Century [1]**  27/13 |
| **assume [4]**  16/23 30/11 | **big [1]**  43/25 | **CEO [1]**  43/23 |
| 30/12 34/1 | **bit [1]**  38/15 | **certain [3]**  17/15 17/16 |
| **assumption [4]**  7/9 21/17 | **blah [3]**  44/13 44/13 | 48/22 |
| 22/9 48/16 | 44/13 | **certainly [4]**  9/1 21/23 |
| **attached [1]**  21/5 | **board [3]**  29/18 43/24 | 21/25 47/20 |
| **attempts [1]**  42/1 | 43/24 | **CERTIFICATE [1]**  53/1 |
| **attend [1]**  31/16 | **Bobby [1]**  40/11 | **certify [2]**  53/2 53/7 |
| **attention [1]**  51/22 | **Boies [2]**  1/15 3/25 | **cetera [1]**  9/7 |
| **attorney [22]**  4/18 4/23 | **both [7]**  4/12 19/24 21/20 | **CFO [1]**  43/23 |
| 5/17 6/19 8/7 14/24 14/25 | 27/4 30/8 30/8 33/18 | **chair [1]**  43/24 |
| 15/5 16/19 17/12 20/1 | **breach [1]**  8/23 | **Chairman [3]**  29/18 31/7 |
| 21/14 26/23 28/2 28/21 | **break [1]**  36/16 | 31/11 |
| 28/23 29/7 41/1 45/1 46/5 | **breeze [1]**  35/22 | **challenge [4]**  5/24 27/21 |
| 51/14 51/18 | **BRENT [9]**  1/21 3/17 10/10 | 27/25 35/24 |
| **attorneys [2]**  42/8 42/10 | 18/21 23/3 29/10 32/5 | **chance [1]**  29/3 |
| **Ave [1]**  1/22 | 47/6 49/8 | **change [2]**  27/24 42/1 |
| **Avenue [1]**  2/9 | **Brian [1]**  24/3 | **changed [1]**  46/15 |
| **aware [2]**  16/9 18/24 | **bridge [1]**  8/20 | **changes [1]**  47/9 |
| **awhile [1]**  48/10 | **Bryan [1]**  36/11 | **charge [2]**  26/11 45/20 |
| | **buggy [1]**  27/14 | **charged [1]**  19/16 |
| **B** | **bullet [1]**  14/10 | **Charlie [8]**  10/21 11/12 |
| | **bunch [1]**  47/14 | 11/15 11/16 13/11 36/18 |
| **back [10]**  4/14 11/9 18/7 | **burden [9]**  45/22 45/23 | 37/13 38/12 |
| 18/19 28/3 28/9 36/16 | 45/24 46/4 46/6 46/7 46/9 | **Chase [84]** |
| 41/18 42/7 48/11 | 46/14 46/17 | **Chase's [12]**  8/6 10/4 |
| **Bair [3]**  29/18 31/7 31/11 | **business [27]**  5/3 12/18 | 11/22 16/22 22/12 33/25 |
| **balance [2]**  7/23 14/5 | 12/19 12/21 21/23 21/24 | 38/18 38/24 39/2 41/5 |
| | 24/9 24/15 24/17 24/17 | 41/11 44/3 |

**C**

check [1]   15/20
chest [1]   43/6
chew [1]   48/10
chicken [1]   13/20
Chistensen [22]   3/11 4/16
 11/25 13/8 14/7 17/22
 18/25 19/13 20/12 21/3
 23/22 24/11 25/17 26/7
 27/3 33/2 35/10 40/5 41/3
 50/8 50/14 51/7
Chistensen's [1]   17/6
choose [2]   26/14 26/14
chose [1]   25/24
CHRISTENSEN [3]   1/18
 40/15 40/17
Christian [2]   11/19 31/3
Circuit [2]   26/5 50/11
civil [1]   3/5
claim [3]   5/12 5/17 47/2
clarify [1]   46/19
classic [3]   24/12 25/10
 26/4
clear [4]   28/18 33/3 45/1
 50/9
clearly [4]   5/11 28/16
 37/17 49/16
clerk [1]   3/19
client [66]
client's [1]   42/24
clients [10]   22/17 28/21
 30/9 30/12 30/20 42/11
 42/12 42/13 42/13 43/10
closer [1]   49/22
collective [2]   42/19
 42/21
COLLYER [1]   1/11
Collyer's [1]   3/3
COLUMBIA [2]   1/1 2/8
come [3]   28/9 36/16 48/11
comes [3]   24/13 24/23
 27/7
coming [1]   14/17
committing [1]   22/24
communicated [2]   18/11
 49/14
communication [9]   4/18
 4/19 12/16 17/8 18/13
 18/19 25/11 26/23 33/18
communications [9]   13/12
 14/22 18/2 22/3 27/17
 27/17 41/1 42/3 48/8
company [3]   1/3 3/6 40/12
complete [3]   5/3 29/1
 34/5
completed [9]   13/15 13/17
 13/18 13/25 14/10 15/10
 15/14 17/14 17/16
completely [3]   12/24
 29/11 45/9
comprehensive [1]   6/7
computer [1]   2/11
computer-aided [1]   2/11
concern [1]   13/21
concerned [2]   42/12 43/1
concluded [1]   52/8
conclusion [1]   6/24
conditional [1]   16/1
conduct [1]   44/10
conducted [1]   43/12

conference [3]   1/11 3/4
confidence [3]   25/13 35/8
confidential [6]   19/25
 22/1 22/4 33/19 35/9 41/7
connected [1]   17/10
connection [1]   35/7
consideration [1]   51/24
consistent [1]   12/5
constant [1]   42/7
Constitution [1]   2/9
consultations [1]   31/7
consummate [1]   20/3
content [2]   4/17 17/7
context [24]   4/15 8/20
 10/25 13/4 14/18 14/21
 15/8 16/1 19/15 20/2 26/3
 27/2 27/18 27/19 28/1
 34/12 36/25 38/7 38/8
 38/8 39/23 41/14 42/21
 47/9
contexts [2]   30/17 45/8
contingent [2]   8/12 15/14
continue [1]   29/16 51/8
continued [1]   2/1
contract [2]   25/21 42/17
contracts [1]   41/10
contraverting [1]   28/19
conversation [18]   4/9
 10/14 23/16 27/9 31/25
 32/9 32/16 32/16 32/17
 32/22 33/10 35/17 37/19
 40/1 44/14 44/18 48/10
 49/1
conversations [14]   11/4
 11/13 13/5 19/7 23/6 25/5
 25/12 34/15 39/20 39/21
 39/25 43/11 43/13 51/4
conveying [1]   10/14
Cooney [87]
Cooney's [6]   25/15 34/12
 49/25 50/13 50/18 50/19
cooperate [1]   34/5
corporate [1]   5/3
CORPORATION [4]   1/7 2/3
 3/6 3/19
corporations [1]   24/13
correct [4]   11/11 44/6
 45/10 53/2
could [19]   4/2 5/21 6/5
 8/5 8/13 10/24 13/19 15/1
 17/12 20/3 21/13 21/23
 21/24 26/12 32/1 37/25
 38/17 44/17 46/24
couldn't [1]   16/24
counsel [8]   3/8 3/20 5/13
 20/21 32/15 35/13 40/12
 53/7
counselors [2]   27/5 27/6
counter [1]   19/6
couple [1]   4/9
course [11]   6/20 11/13
 12/12 12/15 14/22 31/9
 36/15 36/20 39/1 41/13
 42/9
COURT [7]   1/1 2/7 2/7 2/8
 22/20 52/6 53/5
courtroom [1]   3/3
covered [1]   10/1
create [2]   37/6 37/21
credible [1]   29/1
criteria [1]   35/9

Cromwell [3]   1/22 3/17
 10/10
cross [1]   47/14
CRYSTAL [2]   2/7 53/12
current [4]   6/7 14/17
 15/4 15/6

**D**

D.C [3]   1/5 26/5 50/10
da [3]   39/15 39/15 39/15
data [2]   6/7 6/8
date [9]   15/15 15/21
 17/12 17/15 17/16 28/17
 49/4 53/5 53/12
Dave [1]   40/11
David [1]   4/5
day [4]   4/11 12/22 27/12
 27/14
days [1]   4/9
DC [3]   1/20 1/23 2/9
de [3]   39/15 39/15 39/15
deal [16]   21/22 22/2
 22/15 22/17 22/18 31/24
 34/8 40/15 42/1 42/5 42/8
 43/7 43/25 45/20 46/11
 46/12
dealing [7]   30/11 38/17
 39/6 39/12 39/17 40/13
 48/23
decide [2]   28/22 30/14
decision [4]   28/24 29/12
 48/18 48/21
decisions [3]   26/11 30/12
 48/22
decline [2]   12/1 36/21
declined [4]   12/6 13/3
 32/11 36/13
Defendants [3]   1/8 1/18
 2/2
define [1]   8/22
definitely [1]   8/21
definition [1]   23/19
deliberative [2]   29/15
 30/22
demonstrably [1]   31/4
demonstrate [3]   28/8
 28/25 33/17
demonstration [1]   19/25
depending [3]   9/6 9/20
 16/20
depends [3]   8/23 46/16
 46/16
deponent [1]   24/6
deponents [2]   23/8 23/9
deposed [1]   24/2
deposing [2]   23/13 24/3
DEPOSIT [3]   1/7 2/3 3/6
deposition [10]   12/6 13/1
 24/5 31/6 31/12 33/10
 38/16 49/25 50/1 50/13
depositions [3]   31/15
 51/1 51/13
describe [1]   38/17
described [1]   40/17
despite [1]   13/1
detail [1]   7/13
determine [1]   37/11
determined [1]   25/16
DEUTSCHE [2]   1/3 3/5
develop [1]   27/22
developed [1]   39/5

| | | |
|---|---|---|
| **D** Case 1:09-cv-01656-RMC | Drive [1] 2/4 Document 24743 Filed 04/10/1 | examples [1] 24/16 |

developing [1] 31/17
DEVENS [2] 2/2 3/14
did [22] 7/7 8/3 10/4
  10/18 11/22 16/7 16/12
  18/9 20/13 23/23 23/24
  23/24 36/16 36/24 37/14
  39/7 40/15 45/2 45/2 45/3
  50/4 50/20
didn't [5] 17/4 31/16
  35/19 44/25 47/21
difference [1] 44/9
different [5] 6/14 9/3
  9/8 38/5 46/15
differently [1] 20/9
difficult [4] 27/1 27/2
  27/15 28/11
difficulty [1] 45/5
diligence [33] 6/18 7/13
  7/17 7/18 10/5 11/23
  13/11 13/14 13/17 13/24
  14/3 14/5 14/9 15/10
  15/11 15/13 17/11 19/2
  23/23 23/23 23/24 23/25
  24/2 24/4 24/5 33/16
  36/12 37/11 37/14 49/22
  49/23 51/2 51/4
directions [1] 42/25
directors [1] 43/24
disagree [1] 33/5
disclose [2] 25/7 25/9
disclosed [1] 25/13
discovery [5] 22/19 22/20
  28/13 29/19 29/20
discussed [2] 31/10 37/9
discussing [2] 37/7 37/10
discussion [4] 8/11 12/5
  25/8 50/13
discussions [2] 7/22
  38/18
dispute [1] 50/11
distinction [6] 26/8
  27/15 38/11 43/8 44/8
  45/8
distinctions [1] 38/10
distinguish [1] 33/23
DISTRICT [6] 1/1 1/1 1/12
  2/8 2/8 53/5
divorced [1] 19/19
do [67]
Docket [1] 1/4
document [4] 6/21 29/8
  30/6 31/1
documents [2] 6/2 25/15
Doe [3] 12/21 18/9 39/15
does [10] 7/2 15/15 15/25
  16/5 19/22 31/25 32/3
  37/21 37/24 47/11
doesn't [5] 12/21 17/7
  43/18 50/7 50/10
doing [6] 8/18 11/12
  11/12 14/20 23/4 42/24
don't [56]
done [7] 17/11 19/2 23/25
  28/4 35/8 44/25 51/4
dos [3] 14/17 15/4 15/6
down [1] 29/17
draw [3] 27/1 27/2 44/8
drawn [1] 17/24
drink [1] 42/23

due [33] 6/18 7/13 7/16
  7/18 10/5 11/22 13/11
  13/14 13/17 13/24 14/2
  14/5 14/9 15/10 15/11
  15/13 17/11 19/2 23/23
  23/23 23/24 23/25 24/2
  24/4 24/5 33/16 36/12
  37/11 37/14 49/22 49/23
  51/2 51/3
during [3] 12/14 41/13
  47/14

**E**

e-mail [6] 15/11 15/22
  17/11 20/25 41/7 42/10
e-mails [4] 25/23 35/11
  35/11 40/23
E-N-D [1] 4/5
each [3] 21/6 46/1 47/19
earlier [1] 48/13
early [1] 12/6
easier [1] 27/13
easy [2] 24/21 45/7
Eitel [2] 22/11 42/7
either [6] 16/19 17/2
  17/13 17/21 23/18 31/15
element [1] 20/1
elicit [2] 21/25 48/20
else [4] 3/23 22/2 33/19
  35/9
employed [1] 53/8
end [6] 4/10 12/10 43/7
  50/3 51/1 51/17
ENDLER [3] 1/15 3/25 4/4
entered [1] 21/18
entire [1] 32/21
entirely [1] 4/20 46/15
entitled [1] 30/20
environment [1] 17/25
equally [1] 24/21
equivalent [1] 34/20
especially [2] 24/13
  51/11
Esquire [6] 1/15 1/18
  1/18 1/21 2/2 2/2
essence [1] 33/7
essentially [1] 50/20
establish [2] 45/24 47/5
established [2] 9/9 46/13
et [3] 1/7 3/6 9/7
evaluate [1] 30/9
even [7] 5/21 26/12 26/13
  26/15 33/14 43/3 49/15
ever [1] 20/9
every [3] 35/17 39/16
  46/10
everybody [3] 4/8 39/11
  51/21
evidence [5] 25/23 27/22
  28/5 28/19 29/17
ex [3] 38/8 38/8 38/8
ex-context [2] 38/8 38/8
ex-question [1] 38/8
exactly [3] 5/6 23/7 34/7
example [17] 5/1 11/21
  19/4 23/6 24/12 24/19
  25/5 25/10 26/4 32/12
  36/3 36/11 37/23 38/14
  41/14 50/4 51/2

excellent [1] 13/22
except [1] 50/19
exchanges [1] 41/7
executive [1] 11/16
exhausted [2] 35/21 48/9
exhibit [10] 6/22 7/5
  8/20 8/23 8/24 8/25 9/19
  9/20 15/15 15/19
exhibits [1] 8/24
existence [2] 5/24 32/17
expectations [1] 31/22
experience [2] 27/3 48/24
experienced [1] 13/20
explain [1] 30/4
explanation [1] 37/25
extensive [2] 40/17 50/12
extensively [1] 40/6
extent [17] 19/4 19/14
  22/22 23/14 26/9 28/14
  29/6 29/23 31/23 32/20
  32/21 34/16 37/11 42/6
  48/2 48/5 50/23
extraordinarily [1] 27/9
eyes [2] 4/3 10/25
eyesight [1] 12/16

**F**

fact [32] 9/6 9/9 10/13
  12/13 12/14 13/1 13/10
  19/2 19/19 19/22 19/25
  20/7 23/13 24/20 24/20
  24/22 25/3 25/5 26/1 26/2
  26/2 26/13 26/19 26/19
  26/21 26/22 33/18 37/24
  45/23 46/5 50/16 50/18
facts [10] 11/6 20/16
  22/3 26/17 27/24 31/18
  39/16 45/24 49/12 49/14
factually [1] 19/13
Fairfax [1] 2/4
fairness [1] 29/14
false [1] 31/4
Fannie [6] 38/19 38/20
  39/8 39/13 39/18 39/25
far [4] 18/24 39/6 47/13
  47/16
FDIC [30] 3/12 3/15 11/7
  21/12 22/14 23/11 23/13
  24/2 25/21 25/24 28/6
  28/12 29/16 29/18 30/4
  30/23 31/3 31/11 31/19
  34/3 41/25 42/2 42/8
  42/10 44/16 47/15 49/23
  50/3 51/1 51/17
February [1] 1/6
FEDERAL [3] 1/7 2/3 3/6
feels [4] 39/3 39/5 50/3
  51/1
few [2] 22/6 50/17
Field [1] 26/5
figuring [1] 34/8
finance [1] 13/10
financial [1] 11/24
financially [1] 53/9
find [2] 45/25 46/1
fine [2] 13/18 30/20
firm [3] 20/18 44/23
  44/24
first [5] 4/13 8/9 10/23
  17/4 32/12

**F**

Flexner [2]   1/15 3/25
follow [1]   9/18
follow-up [1]   9/18
following [1]   42/25
foot [1]   29/15
forced [1]   15/1
foregoing [1]   53/2
form [2]   31/7 47/18
forth [1]   42/7
forward [3]   50/1 51/1
 52/1
found [2]   27/16 35/10
four [1]   14/10
framed [3]   4/22 4/24 9/1
frank [1]   27/5
Freddie [6]   38/19 38/20
 39/8 39/14 39/18 39/25
Friday [1]   49/6
friend [1]   35/21
front [3]   4/3 6/25 15/19
fulfill [1]   24/13
full [5]   5/2 31/20 33/15
 34/5 50/5
function [4]   5/3 27/18
 27/19 34/6
functioned [1]   35/3
functioning [1]   25/25
further [4]   5/6 8/13 53/7
 53/9

**G**

gain [1]   5/13
gained [4]   5/14 12/2
 32/14 47/3
gave [2]   24/19 33/7
general [5]   5/21 12/20
 17/24 27/23 40/12
generally [3]   17/20 17/23
 21/7
gentlemen [1]   18/20
get [11]   12/10 26/20
 31/24 33/12 39/14 39/17
 43/20 48/2 48/21 51/24
 52/2
gets [4]   23/7 27/9 47/1
 50/14
getting [3]   30/5 30/24
 43/14
give [11]   4/14 5/1 5/6
 30/9 31/20 32/2 36/3
 36/10 36/10 38/14 51/5
given [13]   10/5 17/6
 18/12 19/15 19/20 19/24
 20/2 22/25 29/3 30/5
 30/11 32/6 48/3
gives [1]   27/22
giving [4]   18/15 35/6
 35/12 35/14
go [16]   6/1 9/21 12/18
 18/5 23/23 24/25 28/3
 38/12 41/17 41/18 43/15
 49/22 50/1 50/17 50/19
 50/25
goes [1]   5/16
going [12]   5/7 9/15 17/18
 21/6 22/19 28/7 28/9 35/5
 37/5 43/7 44/10 48/23
good [11]   3/2 3/10 3/16
 3/22 3/24 27/8 35/20

40/15 48/14 52/1 52/2
goodness [1]   24/1
Gordon [10]   10/4 10/7
 11/12 11/21 11/22 11/23
 13/9 13/10 36/18 37/14
Gordon's [1]   37/18
got [4]   17/5 34/16 38/12
 43/20
governors [1]   30/24
great [1]   23/21
ground [2]   48/14 50/8
GSE [7]   38/18 39/7 39/10
 39/13 40/10 40/20 40/25
GSEs [7]   40/16 40/19
 40/23 40/24 41/10 41/10
 41/18
guess [1]   20/16
guy [1]   13/21
guys [1]   31/16

**H**

had [21]   4/10 11/4 11/23
 12/6 13/4 15/10 15/13
 21/2 23/6 25/5 25/8 25/11
 33/3 33/10 35/19 36/1
 38/7 41/23 48/13 51/4
 51/23
hallway [1]   44/13
hamstrung [1]   22/19
handful [2]   22/14 51/12
handled [2]   40/10 40/10
happen [2]   4/2 12/14
happened [1]   35/13
happens [1]   44/7
happy [1]   48/9
hard [3]   18/22 27/12
 33/17
has [35]   5/17 5/18 5/20
 5/23 6/21 7/1 7/17 8/18
 8/22 9/9 10/5 11/19 11/19
 12/15 18/11 18/12 23/22
 24/2 25/5 26/17 28/6
 31/19 31/23 32/18 33/14
 35/2 40/5 43/17 43/22
 45/15 46/4 46/8 47/4
 49/23 51/17
hasn't [4]   28/15 28/16
 28/16 48/3
hat [5]   24/15 24/16 35/19
 35/20 36/2
have [116]
haven't [2]   27/25 29/3
having [9]   26/3 28/8 30/8
 33/3 35/20 42/16 45/4
 45/25 48/8
he [85]
he's [6]   8/18 13/22 28/10
 39/19 39/22 47/10
hear [1]   12/14
heard [1]   50/9
hearing [2]   13/7 53/9
Hello [1]   3/2
help [1]   51/24
helping [1]   20/2
helps [1]   14/7
her [1]   24/18
here [11]   4/7 5/21 11/18
 19/11 21/4 30/10 35/5
 37/5 41/3 44/21 45/3
Here's [1]   44/11
high [1]   43/25

him [8]   10/14 12/7 20/4
 25/19 33/24 37/19 41/2
 48/6
himself [1]   31/5
hired [1]   44/24
his [44]   4/16 8/5 10/25
 11/13 12/7 13/5 13/12
 16/5 16/11 17/7 19/5
 20/13 20/18 21/1 21/24
 24/18 25/13 25/20 26/9
 27/18 27/21 27/25 31/6
 32/21 33/14 33/24 34/1
 34/20 35/7 35/14 36/1
 36/14 36/15 36/20 36/23
 38/17 39/6 39/20 39/20
 44/19 46/11 48/2 51/3
 51/5
history [1]   28/5
hold [2]   20/8 49/7
holding [1]   43/6
holes [1]   28/4
Honor [33]   3/16 3/24 4/4
 10/9 10/22 11/18 12/24
 15/20 18/21 19/15 20/22
 21/15 23/3 24/12 25/15
 28/12 29/10 31/3 32/5
 33/9 33/11 34/24 38/15
 40/5 41/5 45/22 47/6
 48/13 49/8 50/9 51/14
 52/3 52/5
Honor's [1]   19/21
HONORABLE [2]   1/11 52/6
house [8]   3/20 22/10
 22/11 24/12 27/4 35/13
 40/13 44/25
how [15]   10/13 12/19 15/1
 21/9 21/13 21/18 24/12
 27/23 31/4 34/8 41/9 43/6
 43/11 44/10 46/25
Hubbard [2]   1/19 3/11
Hughes [2]   1/19 3/11
human [1]   32/9
hundred [1]   45/10
hypothetical [6]   19/16
 19/21 20/8 20/10 25/4
 37/6

**I**

I'm [32]   4/1 5/7 8/9 8/10
 8/14 9/15 9/25 10/2 13/22
 17/18 17/22 17/23 18/24
 26/21 28/20 28/20 29/5
 29/6 31/18 34/11 35/16
 37/5 41/3 42/18 43/6 43/7
 47/7 47/7 48/9 48/23
 50/12 50/23
I've [3]   5/8 42/17 42/19
idea [1]   7/5
identical [1]   20/7
identified [1]   23/22
identifies [1]   18/25
identify [2]   3/8 34/7
identifying [1]   17/11
immediately [1]   50/24
impact [1]   31/19
implication [1]   29/15
implied [1]   32/8
important [7]   11/18 16/18
 17/1 21/2 30/1 41/9 49/17
impossible [1]   45/25
in-house [8]   3/20 22/10

**I**

in-house... [6]   22/11
 24/12 27/4 35/13 40/13
 44/25
inclined [1]   8/14
include [3]   7/8 8/4 47/21
including [1]   6/7
incorrect [2]   25/1 37/4
Indeed [1]   23/21
inextricably [1]   19/23
infinite [1]   49/24
information [47]   5/12
 5/14 6/11 6/25 10/15
 10/16 12/4 12/12 13/4
 16/4 18/11 18/16 18/16
 18/17 18/18 21/25 23/16
 23/19 25/20 26/6 29/24
 30/6 30/22 30/25 31/4
 31/20 32/2 32/13 32/14
 33/8 36/1 36/14 37/5
 37/16 37/17 40/16 40/22
 40/22 40/25 41/7 41/12
 41/15 41/19 46/1 47/3
 48/3 48/20
inherently [1]   33/19
initially [1]   36/13
inner [1]   43/10
innocent [1]   13/20
input [1]   30/7
inside [2]   20/19 20/21
insofar [1]   35/25
instance [3]   18/4 35/18
 46/10
instead [3]   27/23 41/17
 45/5
institution [1]   30/1
institutional [1]   30/19
INSURANCE [3]   1/7 2/3 3/6
intend [1]   29/11
intended [11]   19/25 22/1
 22/4 28/13 28/15 28/16
 28/18 33/18 35/8 45/16
 46/19
intending [2]   22/24 30/23
intention [16]   16/22 23/4
 29/18 47/15 47/21
intentions [1]   31/21
interaction [1]   19/7
interactions [7]   19/5
 20/14 20/15 40/16 40/18
 40/18 40/19
interested [2]   18/4 53/10
interesting [1]   6/20
interests [1]   42/24
interfere [1]   30/16
internal [1]   40/18
internally [1]   41/6
interpreted [1]   30/7
intertwined [1]   19/23
investigation [1]   18/6
involved [5]   24/9 42/7
 44/4 44/6 50/16
involves [2]   33/18 33/19
involving [2]   16/10 50/1
is [190]
isn't [3]   13/17 14/14
 29/6
issue [15]   4/14 16/25
 17/24 21/21 27/7 38/5
 38/18 38/22 38/23 39/6

39/13 41/24 46/14 46/15
51/19
issues [12]   4/8 14/12
 14/15 16/3 30/15 38/25
 39/17 41/6 41/12 41/21
 51/14 51/24
it [136]
it's [37]   3/17 3/24 4/20
 7/17 8/5 9/22 10/2 10/18
 11/1 11/18 12/14 12/16
 13/17 13/18 14/8 15/5
 18/15 23/1 24/12 26/24
 27/1 27/12 27/15 28/22
 31/2 31/14 31/3 35/8 35/8
 37/9 39/19 43/25 44/5
 44/6 45/7 46/20 47/23
item [1]   49/24
items [6]   13/15 15/10
 15/11 15/13 50/1 50/21
its [7]   3/12 18/5 28/12
 30/24 33/16 39/2 46/20
itself [1]   33/10

**J**

Joanna [1]   3/21
John [3]   12/21 18/9 39/15
JPMC [7]   23/5 31/21 34/10
 40/18 40/19 40/20 50/5
JPMC's [1]   37/12
JPMorgan [96]
JPMorgan's [1]   38/22
JUDGE [2]   1/12 3/3
juncture [3]   21/10 21/16
 23/10
just [22]   6/13 6/25 8/9
 12/12 12/14 20/10 23/1
 23/10 23/13 26/25 29/6
 30/1 31/18 35/22 37/3
 37/21 38/10 39/21 44/5
 44/7 46/22 48/23

**K**

KATHRYN [1]   2/2
Kathy [1]   3/14
kept [5]   22/1 22/4 33/19
 35/8 45/16
key [2]   20/1 22/12
kind [7]   6/16 12/16 17/3
 17/5 26/25 39/19 40/3
knew [2]   11/11 39/16
know [45]   7/4 7/20 9/11
 9/25 11/4 13/14 13/22
 13/24 14/9 14/14 14/22
 15/1 15/7 15/23 16/14
 17/6 17/14 25/6 27/3
 28/15 29/3 29/9 30/14
 31/16 34/4 34/11 34/16
 37/1 38/24 39/4 39/11
 39/15 39/21 42/2 43/3
 43/8 43/20 43/21 43/24
 44/1 44/15 44/17 46/25
 47/15 49/15
knowing [1]   33/11
knowingly [1]   30/12
knowledge [21]   7/7 7/22
 7/25 8/1 8/3 8/6 8/11
 9/23 12/2 14/22 15/10
 15/13 27/23 32/8 32/10
 32/18 32/21 36/23 50/18
 50/19 51/3
known [3]   40/22 41/19

Knows [7]   13/18 23/15
 24/20 24/22 37/8 37/16
 37/18

**L**

L-E-R [1]   4/5
labeled [1]   41/7
labor [1]   42/18
ladies [2]   17/25 18/20
language [2]   5/21 46/20
large [1]   19/14
last [4]   4/2 14/1 14/9
 49/15
later [2]   8/10 37/10
Laura [3]   3/19 14/12
 40/12
law [6]   3/19 24/16 25/2
 35/14 44/2 50/11
lawful [1]   34/9
lawyer [64]
lawyer's [2]   24/15 24/24
lawyers [16]   13/19 19/21
 20/25 21/21 22/14 22/16
 24/12 26/15 38/23 39/2
 40/7 40/9 42/6 44/8 48/16
 48/19
lead [1]   14/13
learn [1]   12/18
learned [19]   10/13 10/14
 13/2 13/4 13/9 19/17
 23/15 25/3 26/3 27/19
 34/22 34/25 35/18 35/22
 36/1 36/14 36/19 38/25
 41/13
learns [1]   12/12
least [11]   9/19 9/22 13/7
 14/8 33/6 35/11 39/5
 46/10 46/25 48/2 50/9
left [2]   30/25 46/20
legal [56]
legitimate [1]   32/23
less [1]   20/6
lesser [1]   42/6
let [5]   4/20 5/1 10/23
 28/3 37/13
let's [9]   17/20 25/4 33/2
 33/22 34/1 37/6 41/17
 49/5 51/16
letter [5]   4/16 6/1 21/5
 29/21 36/4
letters [1]   4/12
level [1]   6/8
liabilities [3]   8/12
 15/14 31/11
liability [5]   21/18 22/8
 22/21 41/24 46/15
lies [1]   46/17
life [2]   37/24 37/24
light [1]   51/12
like [8]   18/23 25/19
 31/11 34/10 39/3 39/5
 49/15 51/8
likes [1]   50/8
Likewise [1]   22/14
limitation [1]   20/17
limited [2]   19/15 40/9
limiting [1]   8/10
line [5]   3/15 8/9 13/19
 17/24 27/1
Lipsitz [4]   14/20 22/11

**L**      Case 1:09-cv-01656-RMC

Lipsitz... [2]   23/24 42/6
list [7]   9/4 9/7 9/12
  9/13 14/17 15/4 15/6
listed [1]   9/18
listing [2]   7/13 47/15
literal [1]   32/19
litigation [3]   14/12
  14/15 41/8
little [5]   4/10 9/3 16/10
  17/20 38/15
LLP [5]   1/15 1/19 1/22
  3/11 3/17
loan [1]   6/7
loans [2]   9/5 9/7
Lohman [1]   40/12
long [1]   35/5
longer [2]   9/1 51/22
look [4]   6/1 25/19 40/8
  52/1
looked [3]   4/12 17/3
  27/17
looking [1]   6/21
lot [4]   4/23 12/18 43/8
  46/24
lots [2]   39/14 43/5
loud [1]   50/9
luck [1]   52/1

**M**

Mac [4]   38/19 39/9 39/14
  39/25
machine [1]   2/10
made [11]   16/10 16/12
  16/14 18/19 19/20 27/13
  28/24 30/12 35/16 41/1
  48/21
Mae [4]   38/19 39/9 39/13
  39/25
mail [6]   15/11 15/22
  17/11 20/25 41/7 42/10
mails [4]   25/23 35/11
  35/11 40/23
main [2]   1/16 46/10
majority [2]   23/21 49/12
make [13]   10/21 24/21
  25/4 27/15 28/23 28/24
  34/8 35/5 43/7 45/8 45/11
  49/9 49/25
makers [3]   29/12 48/18
  48/21
makes [2]   27/8 38/9
making [5]   11/10 26/11
  26/18 34/11 40/4
man [1]   13/20
management [1]   42/19
manager [1]   24/2
many [9]   4/20 4/21 32/7
  32/25 39/13 42/18 42/19
  42/19 42/19
March [1]   53/12
matter [3]   6/4 35/14 53/6
matters [1]   29/2
may [15]   7/10 8/12 9/21
  15/4 15/5 16/14 17/9
  17/10 20/9 26/14 30/18
  30/18 37/23 49/9 49/14
maybe [3]   5/24 26/13
  27/13
MCINTOSH [22]   1/21 3/16

3/17 4/16 19/10-17/22
18/24 20/17 23/3 24/19 10/13
26/18 29/5 29/10 30/21
31/5 31/23 32/5 37/2
38/10 40/3 47/6 49/8
McIntosh's [2]   20/13 51/9
me [35]   3/12 3/19 4/2
  4/13 4/14 4/20 5/1 5/20
  6/2 6/21 6/25 7/20 10/23
  15/20 17/8 17/22 17/23
  28/3 32/23 35/5 36/3 37/3
  37/13 37/14 38/10 39/16
  39/22 44/11 44/11 49/11
  49/24 50/7 50/10 51/24
  53/4
mean [12]   12/18 12/21
  13/20 13/21 15/1 15/25
  16/23 26/24 27/12 27/24
  28/20 34/19 36/4 38/1
  40/1 40/18 40/24 42/17
  44/21 45/15 46/22 47/4
meaning [3]   8/19 8/25
  22/21
means [5]   8/23 16/11 20/6
  33/11 34/6
meant [1]   16/20 22/8
  46/20
meetings [1]   39/24
memory [1]   31/15
men [1]   17/25
mentioned [2]   20/24 49/11
met [1]   39/13
methodology [1]   14/2
MICHAEL [4]   1/15 3/24 4/4
  22/10
middle [1]   43/14
might [12]   4/18 4/23 5/5
  6/4 14/23 14/24 34/2 38/8
  42/12 49/25 51/10 51/13
minute [2]   11/9 36/5
minutes [1]   51/23
missed [2]   47/16 47/23
Mitch [1]   22/11
moment [5]   22/25 30/5
  33/3 46/8 48/9
money [2]   43/5 43/5
month [1]   23/13
Moon [1]   3/3
more [12]   4/10 4/15 17/20
  17/23 20/6 27/15 30/18
  31/5 32/4 38/11 38/15
  45/12
morning [7]   3/2 3/10 3/16
  3/22 3/24 35/21 42/23
mortgage [4]   3/19 14/12
  14/15 40/12
most [1]   43/10
mouth [1]   24/24
move [1]   4/13
MR [10]   3/16 10/14 25/24
  31/5 31/8 37/17 42/6
  42/13 42/16 50/3
Mr. [147]
Mr. Bessie [4]   37/6 37/10
  37/13 38/1
Mr. Bessie's [2]   37/7
  37/16
Mr. Chistensen [21]   4/16
  11/25 13/8 14/7 17/22
  18/25 19/13 20/12 21/3
  23/22 24/11 25/17 26/7

27/3 33/2 35/10 40/5 41/3
50/8 50/14 51/7
Mr. Chistensen's [1]   17/6
Mr. Christensen [2]   40/15
  40/17
Mr. Christian [2]   11/19
  31/3
Mr. Cooney [80]
Mr. Cooney's [6]   25/15
  34/12 49/25 50/13 50/18
  50/19
Mr. Gordon's [1]   37/18
Mr. Lipsitz [3]   14/20
  23/24 42/6
Mr. McIntosh [12]   4/16
  17/22 20/17 24/19 26/18
  29/5 30/21 31/5 31/23
  37/2 38/10 40/3
Mr. McIntosh's [2]   20/13
  51/9
Mr. Scharf [8]   23/13 25/4
  25/5 25/11 26/1 26/2 26/3
  49/19
Mr. Scharf's [1]   37/18
Mr. Smith [1]   20/4
MS [1]   3/14
Ms. [1]   3/3
Ms. Moon [1]   3/3
much [4]   4/8 27/15 32/2
  46/25
murky [1]   27/9
must [1]   41/23 42/3 45/13
Mutual [9]   3/13 3/18 18/5
  18/6 18/16 19/6 25/6 25/8
  25/12
my [31]   4/1 4/3 5/8 11/4
  11/5 12/1 12/2 14/18
  17/24 20/8 27/19 28/2
  28/3 32/14 33/5 34/16
  34/19 34/22 34/23 35/19
  35/19 35/22 43/1 43/6
  43/18 44/11 45/11 48/23
  49/2 49/7 53/3

**N**

NA [1]   3/18
name [3]   4/2 4/3 21/1
NATIONAL [2]   1/3 3/5
natural [1]   32/9
nature [4]   5/19 8/25
  31/19 36/7
nearly [1]   12/25
necessarily [2]   12/13
  48/18
necessary [2]   22/4 25/7
  25/9 28/12 34/8 35/7
  49/12 50/3 50/12 51/2
needs [3]   7/4 9/1 48/7
negotiated [2]   21/20
  22/16
negotiating [4]   22/15
  24/14 42/8 48/15
negotiation [1]   34/3
negotiations [10]   25/17
  42/2 42/18 42/20 42/22
  43/10 43/11 43/15 43/17
  44/10
negotiators [4]   42/4 42/5
  48/18 48/19
neither [3]   41/14 41/14

**N**

neither... [1]   53/7
next [13]   5/11 5/11 6/6
  7/12 7/19 7/22 9/3 13/14
  15/3 15/9 17/18 23/13
  49/5
no [81]
nobody [3]   6/21 15/18
  26/22
non [3]   24/20 37/8 40/18
non-internal [1]   40/18
non-lawyer [1]   24/20
non-privileged [1]   37/8
none [3]   4/17 18/23 50/19
nonetheless [2]   4/24
  35/14
NORCROSS [3]   2/2 3/14
  3/14
not [102]
notes [1]   53/4
nothing [1]   46/21
notice [1]   8/9
notion [1]   44/3
notwithstanding [2]   19/9
  47/7
now [29]   5/16 6/20 8/22
  13/14 13/15 13/24 14/20
  17/20 20/12 21/13 26/17
  27/22 28/3 29/5 34/7
  34/11 34/11 35/4 35/16
  36/5 36/9 36/23 37/8 38/3
  39/21 43/14 46/14 47/2
  52/6
number [17]   5/13 6/16
  6/20 6/22 7/7 8/2 8/15
  10/24 14/1 14/10 17/8
  18/7 21/10 21/10 32/13
  47/2 49/21
NW [3]   1/19 1/22 2/9
NY [1]   1/16

**O**

o'clock [2]   35/21 42/23
O'Hara [2]   14/13 40/13
objection [2]   10/12 36/19
obligation [1]   7/24
obligations [4]   16/23
  17/1 38/19 49/17
observe [1]   10/25
obtain [2]   28/6 28/12
obtaining [1]   18/3
obviously [4]   30/17 31/14
  31/21 41/1
off [2]   4/9 7/23
offer [1]   22/5
offered [2]   21/24 31/8
official [1]   2/7
oh [4]   4/1 14/18 32/1
  42/13
okay [10]   4/7 17/20 19/8
  20/5 20/5 20/23 21/2
  51/16 51/19 51/20
old [1]   42/18
one [32]   5/11 5/11 6/5
  6/6 7/12 7/22 9/3 12/12
  13/14 13/19 15/1 15/3
  15/9 17/1 17/13 19/10
  20/24 22/6 26/10 28/1
  30/1 33/3 36/23 36/25
  42/4 42/21 45/10 46/4

ones [3]   17/4 21/5 32/1
online [1]   6/7
only [14]   5/8 6/11 11/3
  11/11 13/9 13/11 13/19
  31/9 31/16 32/6 32/13
  34/22 35/25 44/17
oOo [1]   52/9
opening [2]   28/3 49/7
operates [1]   12/19
operating [2]   46/6 46/9
opinions [1]   31/21
opposing [1]   22/5
order [1]   30/4
other [25]   8/8 8/23 8/25
  12/5 14/22 17/10 19/2
  23/25 24/4 27/22 29/14
  30/17 30/19 32/18 36/25
  38/1 38/23 40/9 40/20
  40/23 41/11 41/21 43/3
  47/19 51/13
others [6]   20/15 20/16
  20/17 26/1 30/24 48/1
otherwise [4]   12/17 23/1
  42/10 53/10
our [2]   24/19 47/20
ourselves [1]   48/9
out [10]   8/10 14/24 20/19
  24/23 31/2 32/21 34/8
  45/25 46/2 46/24
outcome [1]   53/10
outloud [1]   33/4
outset [1]   16/22
outside [9]   10/25 22/12
  26/19 26/19 26/21 26/22
  27/4 27/9 40/2
outsiders [1]   39/20
outstanding [1]   16/3
over [11]   5/12 9/24 26/8
  31/9 34/3 38/19 42/22
  42/22 42/22 43/15 47/19
overarching [1]   39/17
oversight [1]   27/14
own [7]   10/25 19/5 20/14
  20/18 27/3 44/23 48/23

**P**

P-R-O-C-E-E-D-I-N-G-S [1]
  3/1
page [1]   38/15
pages [5]   31/6 31/6 31/10
  31/12 53/3
Palioni [1]   3/20
paper [2]   4/3 23/2
paragraphs [1]   38/21
parallel [1]   37/21
part [2]   6/18 23/16
participation [2]   5/4
  34/6
particular [8]   19/19
  24/20 30/15 37/15 41/24
  50/21 50/22 50/22
particularly [2]   14/7
  27/1
parties [6]   21/22 22/16
  22/18 40/20 40/24 53/8
partner [1]   45/2
party [7]   5/24 16/25 19/7
  45/22 45/23 46/7 49/16
path [1]   29/17
pattern [1]   20/7

Pennsylvania [1]   1/22
people [16]   18/7 20/14
  22/6 23/20 23/25 24/4
  26/10 26/14 37/7 40/10
  40/23 46/20 48/19 49/13
  50/2 51/4
percent [1]   45/10
perfectly [2]   27/5 30/19
performing [2]   14/3 14/6
perhaps [1]   47/16
period [2]   40/17 47/14
person [7]   36/24 36/24
  38/7 38/8 44/18 45/13
  46/22
personnel [3]   7/23 19/5
  22/12
persons [4]   19/2 24/9
  49/13 50/15
phone [3]   3/4 3/23 42/22
pick [1]   49/4
piece [5]   4/3 18/16 18/17
  18/18 23/1
PILGRIM [2]   2/7 53/12
plain [1]   12/12
plaintiff [3]   1/4 1/15
  3/25
planning [5]   21/11 22/2
  23/11 44/15 44/19
play [2]   10/4 11/22
played [7]   13/11 36/12
  36/18 36/18 38/22 38/23
  39/2
playing [3]   25/16 25/18
  43/23
please [2]   3/8 29/6
plenty [2]   22/3 22/3
point [13]   11/10 18/18
  24/19 26/16 26/18 28/4
  41/18 43/17 46/4 46/13
  46/21 47/19 50/6
pointed [2]   32/12 32/20
pointing [1]   31/2
points [2]   14/10 17/21
position [5]   17/6 29/12
  45/25 46/17 46/23
possibility [3]   35/15
  43/2 43/4
possible [2]   11/1 47/23
possibly [1]   16/24
potential [3]   7/8 8/3
  19/6
practice [1]   17/25
pre [1]   32/25
pre-supposes [1]   32/25
preclude [1]   47/8
precluded [2]   8/18 29/16
precludes [1]   30/22
preparatory [1]   18/15
preparing [1]   18/8
presence [1]   23/17
present [1]   39/24
presentation [2]   16/12
  16/14
presentations [2]   16/7
  16/9
presented [1]   30/4
pressed [2]   20/7 33/17
Presumably [1]   43/21
pretty [1]   43/25
prevent [1]   22/23
prevented [1]   29/20

previous [1]   9/24
previously [1]   53/6
primary [1]   48/15
principal [2]   42/4 42/5
prior [1]   50/13
priority [1]   9/18
privately [1]   44/13
privilege [38]   4/7 4/23
5/12 5/17 5/22 5/23 5/25
6/3 6/19 8/7 10/2 17/13
18/1 20/1 21/14 22/23
26/10 28/7 28/22 28/23
29/7 29/24 29/25 29/25
30/10 30/15 30/17 30/18
30/22 36/22 46/2 47/3
47/5 48/7 50/9 50/25
51/15 51/19
privileged [36]   4/18 5/12
9/1 10/6 11/2 12/4 12/13
14/16 16/15 16/15 18/10
18/18 23/19 24/18 24/23
26/6 32/16 32/16 32/17
32/21 33/1 36/25 37/5
37/8 37/17 40/2 41/15
41/22 42/11 42/12 43/15
44/3 44/7 45/3 48/8 48/20
privileges [2]   30/10
30/20
probably [6]   7/20 15/22
27/9 43/25 48/22 49/22
problem [3]   4/4 12/9 45/4
proceed [2]   51/10 51/13
proceeding [1]   33/21
proceedings [3]   2/10 52/8
53/5
process [3]   29/15 30/22
50/3
produce [1]   46/18
produced [4]   2/10 15/6
30/4 31/20
producing [1]   29/24
product [4]   14/25 15/5
16/19 17/13
properly [2]   24/7 24/8
proponent [2]   46/16 48/6
protected [2]   38/25 39/3
protective [1]   37/12
protects [1]   18/1
proves [1]   24/19
provide [3]   5/21 37/24
50/21
provided [4]   5/23 27/25
33/7 53/4
provides [2]   24/17 48/3
providing [12]   12/3 12/13
12/15 13/2 25/22 25/24
27/10 29/17 36/15 36/20
39/1 41/13
provisions [1]   8/16
public [3]   40/17 41/6
43/9
pull [1]   15/20
purchase [3]   21/17 22/9
48/16
purchased [2]   9/5 9/7
purely [1]   41/6
purpose [3]   12/17 18/2
23/17
purposes [1]   34/7

pursuant [1]   35/15
put [8]   20/17 21/22 25/21
34/8 35/9 45/25
puts [1]   22/23
putting [4]   4/8 19/17
44/19 46/11

## Q

question [83]
questions [49]   4/14 4/17
4/21 4/22 4/24 10/24
11/19 12/25 13/3 14/23
17/7 18/24 19/5 20/15
21/4 21/25 22/5 22/7
22/19 23/21 23/22 24/7
24/7 24/8 25/18 25/19
29/19 31/6 31/10 31/25
32/3 32/7 32/10 35/2 36/1
36/17 38/5 45/22 46/23
46/4 46/24 47/14 49/12
49/15 49/22 50/15 50/23
51/6 51/12
quiet [1]   45/16
quite [4]   9/25 10/2 15/7
17/4
quote [1]   22/20
quoted [1]   6/23

## R

raised [2]   29/21 46/4
random [1]   20/25
randomly [1]   25/23
rather [2]   26/25 49/24
rating [2]   16/7 16/9
ratings [1]   23/7
Re [1]   26/5
reached [1]   43/17
read [1]   33/4
ready [2]   3/3 43/14
real [3]   37/23 37/24
41/18
really [12]   12/10 18/3
26/24 28/16 31/17 32/2
34/4 34/23 39/16 39/19
45/1 51/23
reasked [1]   11/25
reason [3]   24/6 25/22
44/25
reasons [2]   28/21 30/19
received [2]   4/12 6/11
receiver [1]   3/13
recognize [2]   11/18 30/14
record [6]   3/9 9/8 9/21
31/16 31/22 41/2
recorded [1]   2/10
recourse [1]   8/16
Reed [2]   1/19 3/11
reengagement [5]   5/3
33/16 34/5 34/14 50/5
reference [1]   40/8
referenced [1]   6/22
referencing [1]   23/10
referred [3]   10/3 15/4
38/17
referring [3]   8/20 9/19
9/24
refused [2]   20/15 28/10
regard [1]   25/18
regarding [3]   24/4 50/1
50/23
regards [1]   37/11

regulatory [2]   27/14 34/9
rejected [1]   42/2
relate [4]   19/1 19/2 21/4
21/7
related [3]   41/12 51/14
53/7
relates [1]   37/15
relating [1]   22/7
relationship [3]   28/2
45/1 46/5
relationships [1]   40/11
reliant [1]   18/12
remaining [1]   41/25
remember [4]   15/16 20/20
21/1 48/17
remembers [1]   15/18
rendering [2]   11/13 12/17
rep [2]   8/20 8/22
replace [1]   44/23
replete [1]   24/16
report [1]   18/8
Reporter [2]   2/7 2/7
represent [1]   3/12
representation [1]   33/20
representatives [1]   50/2
representing [2]   3/18
42/18
repurchase [8]   9/17 9/24
14/2 14/5 16/23 16/25
38/19 49/17
request [4]   10/25 19/19
19/23 33/20
requested [1]   33/25
requesting [1]   13/5
required [3]   4/17 33/23
33/25
reserve [2]   14/2 14/5
resolved [1]   50/24
respectfully [1]   12/1
respective [1]   21/21
responding [2]   6/5 31/18
responds [1]   39/13
response [3]   15/17 19/12
32/7
responses [2]   20/8 32/7
rest [1]   9/21
result [2]   13/12 44/18
resume [1]   48/10
return [1]   51/14
reveal [13]   4/22 4/23
6/19 8/6 12/6 16/13 17/12
23/6 30/18 34/15 36/14
36/21 37/5
revealed [5]   14/23 26/17
26/19 37/19 45/17
revealing [3]   6/11 8/16
16/11
reveals [1]   7/10
review [2]   9/10 16/7
reviewed [7]   6/8 6/12
6/15 6/18 9/7 20/25 25/15
reviewing [8]   6/2 8/15
9/4 9/12 9/13 25/21 35/11
41/1
revisit [1]   51/19
right [18]   3/22 4/1 10/11
13/6 15/9 15/25 20/12
21/2 23/7 30/2 30/21
30/21 34/17 38/11 48/17
48/17 49/6 51/21
rights [1]   37/12

| | | |
|---|---|---|
| **R**   Case 1:09-cv-01656-RMC | 50/14 | 12/16 23/22 33/14 33/15 |
| ROBERT [2]   1/18 3/12 | seeking [10]   10/18 11/4 | 35/23 36/7 38/25 40/21 |
| role [33]   5/13 10/4 11/22 | 12/7 16/4 25/13 25/20 | 41/6 41/23 42/3 47/18 |
| 11/24 12/2 12/2 13/9 | 26/3 26/16 37/19 51/5 | 48/1 48/14 48/14 49/5 |
| 13/10 21/2 25/16 26/8 | seem [2]   50/7 50/10 | somebody [9]   5/14 5/19 |
| 32/14 33/24 34/16 34/22 | seems [7]   7/20 17/8 32/23 | 18/8 22/2 32/3 34/25 40/2 |
| 34/25 35/23 36/11 36/17 | 37/3 39/10 49/11 49/23 | 43/25 47/3 |
| 36/18 37/7 37/17 37/18 | seen [1]   42/1 | somehow [1]   47/17 |
| 37/18 38/12 38/17 38/22 | selected [1]   25/23 | someone [1]   44/23 |
| 38/23 39/2 39/6 39/12 | seller [1]   47/8 | something [15]   6/4 10/1 |
| 43/23 45/12 | senior [1]   11/16 | 12/10 16/11 20/9 24/21 |
| roles [2]   24/13 40/6 | sense [2]   27/8 49/25 | 24/23 25/3 27/19 28/8 |
| room [3]   2/4 6/7 44/7 | sent [2]   4/13 6/2 | 28/10 34/10 34/17 34/25 |
| ROSEMARY [1]   1/11 | sentence [1]   35/5 | 45/15 |
| RPR [2]   2/7 53/12 | separate [2]   27/12 46/3 | Sometimes [2]   43/1 43/2 |
| rule [2]   26/25 50/25 | September [6]   5/4 6/9 8/2 | sorry [2]   4/1 26/21 |
| rules [2]   48/14 50/8 | 21/10 33/16 44/16 | sort [2]   7/5 32/18 |
| ruling [2]   33/5 35/16 | series [1]   46/18 | sorts [2]   14/12 14/15 |
| run [1]   26/8 | services [23]   10/15 11/5 | sought [1]   25/19 |
| running [1]   38/2 | 12/3 12/7 12/13 12/15 | sounds [1]   38/10 |
| | 12/17 13/2 13/5 21/24 | source [1]   9/8 |
| **S** | 23/18 24/17 25/20 26/4 | speak [1]   48/19 |
| said [16]   4/16 6/13 11/3 | 33/20 36/15 36/20 37/19 | speaking [2]   35/4 43/21 |
| 18/9 23/15 26/15 28/4 | 39/1 41/13 44/19 50/20 | specific [4]   15/11 17/12 |
| 28/15 28/16 32/13 34/3 | 51/5 | 20/10 28/17 |
| 34/18 39/21 40/1 42/9 | set [1]   48/25 | specifically [2]   13/11 |
| 49/18 | Shanker [1]   40/11 | 17/21 |
| same [9]   6/16 10/20 17/16 | SHAPIRO [2]   1/18 3/12 | specified [1]   28/16 |
| 24/22 32/20 34/18 41/11 | share [1]   22/5 | spell [1]   4/2 |
| 42/15 48/18 | sheet [1]   7/23 | spoken [1]   5/8 |
| sample [1]   20/25 | shifting [1]   45/21 | spring [1]   13/20 |
| satisfaction [3]   32/3 | shoe [1]   29/14 | standard [1]   26/5 |
| 47/1 50/14 | shooting [1]   35/22 | standing [1]   29/25 |
| satisfied [1]   46/9 | shorthand [3]   2/10 18/3 | stark [1]   36/10 |
| satisfy [1]   28/12 | 35/4 | start [1]   17/5 |
| saw [2]   12/21 29/21 | should [6]   19/21 24/6 | started [1]   46/24 |
| say [25]   4/20 7/1 7/1 | 24/21 30/14 34/4 35/1 | stated [1]   53/6 |
| 10/23 11/8 12/22 13/21 | shouldn't [1]   36/8 | statement [7]   20/13 25/2 |
| 16/4 18/22 21/7 32/1 32/6 | showing [2]   46/5 46/9 | 27/21 28/3 29/23 37/22 |
| 32/9 32/19 32/20 33/11 | shown [3]   29/3 29/5 29/6 | 45/12 |
| 41/12 42/13 42/15 43/1 | shows [2]   9/20 9/21 | STATES [4]   1/1 1/12 2/8 |
| 43/18 44/11 44/11 44/23 | side [5]   22/5 22/13 22/14 | 53/4 |
| 48/7 | 40/11 43/3 | stay [1]   33/2 |
| saying [6]   17/14 28/20 | sides [1]   21/20 | stenographic [1]   53/4 |
| 28/20 29/5 29/6 34/20 | similar [1]   36/17 | still [1]   15/22 |
| says [19]   5/19 14/15 | simple [1]   19/10 | stonewalled [1]   51/18 |
| 14/18 23/1 25/7 28/17 | simply [8]   24/23 33/12 | stood [1]   36/19 |
| 29/8 30/6 35/18 37/13 | 36/18 36/23 37/3 38/24 | stop [1]   36/8 |
| 38/3 42/21 43/9 43/19 | 41/4 51/11 | strangers [1]   23/17 |
| 45/2 45/11 45/13 45/15 | since [1]   48/15 | Street [2]   1/16 1/19 |
| 45/18 | single [1]   35/17 | strike [2]   43/2 43/4 |
| Scharf [15]   10/21 11/12 | sir [3]   4/2 4/6 41/3 | strikes [1]   38/14 |
| 11/15 11/16 13/11 23/13 | sitting [1]   35/20 | strong [1]   28/21 |
| 25/4 25/5 25/11 26/1 26/2 | situation [1]   47/8 | struggling [1]   41/3 |
| 26/3 36/18 37/14 49/19 | situations [5]   11/3 11/5 | stuck [3]   23/1 29/8 30/6 |
| Scharf's [1]   37/18 | 13/3 18/23 18/24 | subject [2]   6/3 8/7 |
| schedule [2]   49/2 50/22 | Smith [1]   20/4 | submitted [2]   11/19 11/20 |
| schedules [1]   15/3 | so [49]   4/9 8/18 9/25 | subsequently [1]   19/20 |
| scheme [1]   34/9 | 11/11 11/14 12/20 12/22 | substance [2]   32/10 38/15 |
| Schiller [2]   1/15 3/25 | 13/7 14/22 15/6 16/14 | substantive [1]   50/1 |
| SCOTT [2]   1/18 3/11 | 16/17 17/3 18/18 19/9 | such [3]   17/10 18/15 23/4 |
| second [1]   9/18 | 20/2 20/6 20/8 20/11 21/3 | suffer [1]   28/8 |
| securing [1]   23/18 | 21/9 21/22 22/6 26/12 | sufficient [1]   45/24 |
| Securities [1]   3/19 | 26/14 27/19 31/12 32/12 | sufficiently [3]   5/20 |
| securitization [1]   18/9 | 32/19 34/6 35/5 36/5 36/8 | 37/12 46/13 |
| securitizations [4]   7/9 | 39/6 39/12 40/15 40/24 | suggest [4]   6/1 25/22 |
| 7/14 20/4 41/20 | 41/15 41/17 42/2 43/25 | 40/21 40/24 |
| see [5]   12/9 33/22 47/24 | 44/12 44/12 45/4 45/7 | suggested [2]   38/10 48/13 |
| 49/5 51/22 | 47/15 48/19 50/12 50/23 | suggestion [3]   36/4 41/2 |
| seeing [3]   17/5 45/5 | solely [1]   5/13 | 49/9 |
| | some [19]   4/15 5/22 10/5 | Sullivan [3]   1/22 3/17 |

**S**

Sullivan... [1]  10/10
summary [1]  18/3
support [2]  5/22 5/23
supports [1]  44/2
supposedly [1]  49/21
supposes [1]  32/25
sure [6]  9/25 10/2 15/24
 17/4 50/12 50/23
surely [1]  5/17
sustain [1]  45/24

**T**

table [1]  42/22
take [10]  11/21 12/19
 13/9 14/24 15/7 22/20
 25/4 29/11 34/3 51/22
taken [2]  53/5 53/9
taking [4]  12/20 14/13
 29/17 29/20
talk [12]  4/7 4/10 7/6
 12/10 17/20 17/21 17/23
 26/17 26/24 41/5 43/2
 47/14
talked [4]  18/7 39/14
 44/12 44/12
talking [12]  8/9 13/23
 15/15 27/2 34/1 39/11
 39/19 40/3 44/9 44/14
 47/19 52/1
tapes [1]  6/8
target [1]  27/8
telephone [3]  1/11 39/25
 48/25
tell [19]  5/7 5/8 5/9 8/1
 9/15 17/22 17/23 18/9
 33/8 34/21 37/13 37/14
 37/25 42/11 42/13 42/16
 47/13 47/16 48/23
telling [1]  35/16
terms [2]  16/17 37/15
test [1]  34/24
testified [12]  10/19
 11/23 12/1 19/7 31/9
 31/10 32/16 36/5 36/7
 40/6 40/25 49/13
testifies [1]  27/18
testify [20]  10/16 10/18
 11/6 20/13 23/8 23/9
 23/21 24/21 24/22 25/4
 25/11 26/2 26/13 26/21
 26/22 28/10 36/6 36/13
 40/15 50/4
testifying [3]  26/23
 29/13 36/9
testimony [3]  22/23 22/25
 30/3
than [8]  4/10 6/14 26/25
 30/18 31/5 45/12 49/24
 51/23
thank [6]  4/6 4/8 51/21
 52/3 52/4 52/5
that [368]
that's [31]  4/19 6/14
 6/22 7/5 7/24 8/21 9/9
 9/25 12/25 17/3 17/16
 18/3 18/10 18/22 25/1
 26/10 29/22 30/19 33/3
 34/23 36/3 38/1 38/2 38/5
 43/6 44/14 45/17 45/17

the [1124]  22/17 46/13
 28/23 29/25 30/7 30/16
 30/20 31/21 34/25 40/12
 42/11 46/9
them [14]  4/15 17/3 19/2
 21/6 25/7 25/9 28/24
 28/24 31/16 39/14 44/12
 48/20 50/19 51/25
then [34]  4/14 5/18 6/6
 6/23 7/19 9/10 11/5 11/25
 13/13 14/24 15/9 15/24
 18/7 22/18 22/25 25/7
 26/16 27/24 28/17 29/1
 29/8 30/1 30/5 30/25
 31/21 31/24 32/8 32/19
 43/15 46/20 50/6 51/5
 51/18 51/19
theory [1]  10/24
there [43]  3/22 5/22 6/4
 6/4 6/13 7/22 8/7 10/5
 10/13 10/23 16/3 17/10
 18/23 22/2 22/8 22/14
 23/8 23/9 23/20 25/17
 25/21 25/23 26/7 26/8
 26/19 28/4 28/21 28/22
 31/22 31/24 37/21 40/17
 42/2 45/15 46/3 46/3 47/9
 47/14 47/18 48/1 49/19
 50/11 52/2
there's [7]  19/24 24/5
 28/19 29/7 36/4 41/2 43/8
therefore [4]  12/3 27/20
 29/24 36/8
these [27]  10/24 17/8
 17/21 23/8 23/21 24/6
 24/7 25/17 25/18 27/23
 30/15 31/25 32/1 32/3
 32/4 35/2 41/21 43/15
 44/10 45/7 48/1 49/12
 49/21 50/15 50/17 51/12
 51/24
they [42]  4/23 7/16 7/18
 9/12 9/13 13/1 16/23 19/1
 21/7 21/22 23/6 24/3 24/4
 24/8 25/6 26/14 26/15
 26/16 28/22 28/24 28/25
 29/3 29/16 29/16 29/23
 30/3 30/3 30/13 30/14
 30/14 30/18 30/24 42/9
 42/15 42/15 44/25 44/25
 46/12 48/21 50/3 50/10
 51/2
they're [7]  22/4 28/9
 29/8 29/17 29/25 31/24
 32/20
thing [7]  7/5 11/3 17/16
 23/4 36/4 40/3 42/15
things [13]  8/25 10/20
 10/23 12/7 13/1 16/17
 23/8 27/23 36/5 36/7
 40/21 50/17 50/17
think [60]
thinking [24]  8/6 8/17
 18/20 21/22 22/17 22/18
 22/24 29/1 29/2 29/2
 30/23 38/22 38/25 39/2
 39/22 41/5 41/6 41/9
 41/11 41/20 43/10 43/16
 43/19 44/3
thinks [3]  43/4 48/8

this [91]
those [19]  11/5 11/6
 13/12 13/15 17/10 18/23
 19/7 26/11 29/19 31/9
 35/11 40/21 42/2 42/5
 43/11 43/15 46/1 47/13
 51/6
thought [10]  19/18 22/7
 22/24 30/4 30/24 41/24
 42/15 46/19 46/19 51/7
three [5]  22/12 35/21
 42/4 42/5 42/23
threshold [1]  34/24
through [6]  10/14 11/4
 16/9 21/6 31/6 51/25
Thursday [1]  1/6
time [14]  4/10 11/17
 11/23 15/10 18/19 19/6
 28/17 39/16 40/16 40/19
 41/11 49/5 51/22 53/5
times [3]  28/22 39/14
 42/18
to Mr. Cooney [1]  25/20
Todd [11]  10/4 10/7 11/11
 11/21 11/22 11/23 13/9
 13/10 36/17 37/14 38/12
Todd's [1]  12/2
together [5]  19/17 21/22
 34/8 44/20 46/11
told [15]  5/20 6/21 7/10
 12/7 20/4 23/16 25/20
 26/1 39/22 39/22 40/5
 42/13 43/18 43/22 51/22
tomorrow [1]  49/6
too [1]  45/14
totally [1]  14/21
tour [2]  12/19 12/20
transaction [15]  7/8 8/4
 19/17 21/11 22/5 22/13
 23/11 31/8 36/12 36/24
 37/8 37/15 41/12 44/15
 44/20
transactions [2]  18/1
 24/14
transcript [10]  1/11 2/10
 31/12 31/15 38/16 47/12
 47/18 47/22 47/24 53/3
transcription [1]  2/11
transferring [1]  41/25
trend [1]  14/4
trends [2]  9/18 9/24
trickier [1]  16/11
tried [1]  39/14
true [6]  4/19 4/20 4/20
 4/21 29/23 53/2
TRUST [2]  1/3 3/6
truthfully [1]  38/5
try [2]  42/1 49/4
trying [2]  39/17 42/24
Tuesday [1]  4/11
two [6]  10/23 13/15 14/10
 27/13 38/1 46/3
typically [1]  25/1

**U**

ultimately [1]  21/18
unattached [1]  20/10
undefined [1]  16/17
under [5]  9/18 14/10

**U**

under... [3]   22/21 34/9
 37/12
underlying [5]   37/24
 39/16 46/14 49/12 50/16
understand [11]   5/8 9/13
 9/14 9/14 14/1 16/1 17/17
 17/17 29/11 45/19 45/19
understanding [32]   5/2
 5/7 5/9 6/6 6/13 6/17
 6/23 7/2 7/2 7/3 7/12
 7/15 7/15 7/17 7/19 8/19
 9/4 9/15 9/17 12/20 14/2
 14/4 17/15 17/19 33/13
 33/15 34/13 34/21 34/22
 48/14 50/5 50/25
undertake [1]   34/4
undertook [7]   5/2 7/13
 7/16 7/18 33/15 34/13
 50/5
unique [2]   50/18 50/19
unit [2]   5/3 34/5
UNITED [4]   1/1 1/12 2/8
 53/4
unless [1]   8/7
unwilling [1]   30/3
up [14]   4/14 9/18 11/9
 14/17 15/9 22/23 25/4
 25/21 34/11 40/4 43/25
 45/21 48/25 49/7
us [3]   22/20 29/4 45/25
use [2]   6/5 51/18
useful [1]   51/11

**V**

VA [1]   2/5
value [1]   17/9
variety [1]   40/22
various [2]   30/10 40/7
vast [1]   49/11
versus [2]   3/6 36/24
very [15]   4/8 4/13 12/6
 13/18 13/20 21/1 22/6
 27/1 27/2 27/4 27/12
 28/11 43/1 43/8 50/17
violating [1]   21/14
vis [2]   38/20 38/20
vis-a-vis [1]   38/20
visible [1]   45/2
VS-D-7062 [1]   2/4

**W**

wait [2]   11/9 36/5
waive [2]   28/23 30/17
waived [2]   10/17 10/20
waiver [1]   11/7
WaMu [17]   7/8 7/9 8/3 9/5
 9/7 16/4 16/10 20/14
 20/16 21/12 23/12 34/3
 35/15 37/7 37/9 38/20
 44/16
WaMu's [3]   7/23 8/12 9/24
want [20]   12/10 17/7 20/9
 28/5 30/13 30/18 32/3
 35/9 38/11 43/3 44/11
 44/11 44/25 47/25 48/5
 48/10 48/21 48/25 49/4
 49/5
wanted [4]   4/13 26/24
 29/22 45/1

wants [2]   13/6 25/6
warrant [2]   8/20 8/23
was [124]
Washington [13]   1/5 1/20
 1/23 2/9 3/13 3/18 18/5
 18/6 18/16 19/6 25/6 25/8
 25/12
wasn't [6]   17/4 22/1
 34/19 35/20 45/15 45/16
way [5]   5/22 17/3 29/1
 37/9 51/16
we [63]
we'd [1]   10/16
we'll [2]   15/20 31/24
we're [10]   3/3 4/7 15/9
 20/7 30/6 30/25 38/2
 39/11 40/3 49/7
we've [1]   42/1
week [1]   49/5
weekend [1]   52/2
well [37]   5/7 5/19 6/14
 7/3 10/19 12/9 14/13 17/5
 17/21 21/1 22/22 24/15
 27/4 27/6 27/24 28/17
 29/8 31/14 32/23 33/22
 34/14 35/18 36/3 37/1
 37/23 39/4 39/13 42/9
 43/6 43/8 45/9 45/13 46/3
 47/10 47/20 47/25 51/16
went [5]   13/1 18/6 32/8
 32/19 38/21
were [35]   7/22 9/12 9/13
 10/16 11/6 12/7 13/3
 14/17 14/20 16/3 16/18
 18/4 21/21 22/12 22/17
 22/18 23/10 24/9 26/16
 28/18 29/1 30/24 33/11
 35/1 40/9 40/11 40/17
 40/24 41/10 42/5 42/7
 42/12 43/16 44/17 50/17
were capitalized [1]
 16/18
weren't [2]   16/18 35/21
what [133]
what's [2]   15/25 38/17
whatever [12]   9/23 14/23
 17/9 28/5 34/6 35/9 38/8
 39/6 40/1 42/23 44/25
 45/17
when [23]   11/8 12/10
 13/12 17/24 21/22 24/13
 26/1 27/1 27/7 27/13 28/4
 28/22 31/24 35/19 36/17
 38/9 39/3 41/11 43/16
 45/11 47/14 48/19 52/2
where [13]   10/8 11/3 13/3
 13/4 15/7 17/22 17/23
 17/24 34/7 38/2 46/17
 47/8 50/8
whether [43]   5/2 6/23 7/4
 7/12 7/16 7/17 7/18 8/5
 8/22 8/24 9/6 9/25 10/1
 10/20 12/16 13/14 13/17
 13/18 13/18 13/22 13/24
 13/25 14/9 15/21 16/13
 17/14 17/14 17/15 23/6
 25/6 27/7 27/10 33/11
 33/12 33/15 34/13 34/25
 37/11 41/24 44/21 46/14
 50/5 50/14
which [21]   6/18 8/6 16/3

16/25 17/25 18/6 20/1
 22/20 29/9 29/16 25/19
 31/25 34/17 35/18 38/18
 46/6 46/16 49/15 49/16
 50/14 53/8
while [2]   36/1 36/13
whips [1]   27/14
who [29]   5/24 10/7 11/15
 16/20 19/16 20/2 22/6
 22/10 22/11 22/11 22/15
 22/16 23/8 23/9 24/9
 24/20 24/22 35/13 40/9
 40/9 40/10 40/13 40/23
 43/20 43/23 46/4 48/19
 48/22 49/13
who's [1]   46/22
whole [3]   4/23 12/18 35/5
whom [3]   27/16 35/13
 43/21
whose [4]   20/25 20/25
 35/6 46/16
whosoever [1]   26/11
why [29]   8/15 9/4 9/13
 12/25 14/17 16/13 23/5
 24/16 26/24 28/20 28/21
 36/5 37/2 37/25 41/19
 41/21 48/21 50/12
Wigand [2]   31/5 31/9
will [8]   18/22 23/21 24/3
 29/12 29/16 49/12 49/19
 50/15
win [1]   28/18
winds [1]   45/21
wishes [1]   5/24
withheld [1]   31/4
within [8]   8/11 10/7 10/9
 20/18 24/13 27/18 27/19
 50/17
without [9]   6/10 8/13
 13/7 21/6 21/14 23/17
 30/7 32/7 32/19
witness [4]   31/20 38/13
 46/18 48/15
witnesses [2]   31/20 46/18
won't [2]   20/8 29/5
word [1]   32/20
words [3]   12/5 12/16
 32/18
wore [1]   24/15
work [8]   12/22 14/20
 14/25 15/5 16/19 17/13
 27/23 44/24
world [1]   45/18
worth [3]   10/18 31/2 31/6
would [68]
wouldn't [7]   12/22 14/24
 16/13 23/5 26/13 30/16
 34/17
wrong [2]   17/22 17/23

**Y**

year [1]   9/24
yes [52]   5/5 5/10 5/18
 7/1 7/3 7/14 7/14 7/16
 7/24 8/13 8/21 9/5 9/13
 9/19 9/22 10/1 11/10
 13/15 13/25 14/3 14/6
 14/10 15/12 15/23 16/8
 17/9 17/17 21/1 21/15
 28/14 32/1 32/8 32/18
 32/19 33/1 33/6 33/7

**Y**

yes... [15]   33/11 33/14
 34/20 39/8 39/10 39/10
 46/25 48/2 48/4 49/10
 50/4 50/6 51/3 51/5 51/12
yet [1]   26/23
you [198]
you're [13]   6/21 11/10
 17/25 22/2 27/8 30/2
 30/21 31/16 35/5 42/23
 44/14 45/4 46/22
you've [3]   15/5 30/11
 43/20
your [84]
yourselves [1]   3/8